**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| | : | |
| THOMAS ABELL | | |
| 2063 W. Rousseau Drive | : | |
| Coeur D'Alene, ID  83815 | | |
| | : | Civil Action No.  _____ |
| KATHARINE ADAMS-LOVE | | |
| 5327 Siesta Cove Drive | : | |
| Sarasota, FL  34242 | | |
| | : | **COMPLAINT** |
| JOHN P. AELLEN, III | | |
| 180 Wroxeter Road | : | JURY TRIAL DEMANDED |
| Arnold, MD  21012 | | |
| | : | |
| CLYDE WILLARD ALLEN | | |
| 1317B German Driveway | : | |
| P.O. Box 709 | | |
| Hanover, MD 21076 | : | |
| | | |
| JOSEPH ALLEY | : | |
| 2386 Poors Ford Road | | |
| Rutherfordton, NC  28139 | : | |
| | | |
| THOMAS PAUL ALLISON | : | |
| 682 Maricopa Dr. | | |
| Canyon Lake, TX  78133 | : | |
| | | |
| RICHARD G. ALTIERI | : | |
| 82 Doreen Drive | | |
| Fairfield, CT  06824 | : | |
| | | |
| ANDREW ALAN ANDERSON | : | |
| 5880 Barrett Road | | |
| Colorado Springs, CO  80926 | : | |
| | | |
| CARL ANGELL | : | |
| 3909 Canby Ct. | | |
| Bellingham, WA  98229 | : | |
| | | |
| EUGENIA ANNINO STEGER, as personal | : | |
| representative of the Estate of Robert S. | | |
| Annino | : | |
| 23 Mum Grace | | |
| Beaufort, SC  29906 | : | |
| DANIEL ANULARE | | |
| 907 Ball Drive | | |

COMPLAINT                                    - 1 -

Nokomis, FL  34275                           :

LINDA A. ANULARE                             :
907 Ball Drive
Nokomis, FL  34275                           :

BRUCE WILLIAM ASHLEY                          :
65 Cornell Drive
Woodland Park, CO  80863                      :

RICHARD AURAND                               :
559 Howland Wilson NE
Warren, OH  44484                            :

MAXINE BACHICHA                              :
980 Robbie View #2014
Colorado Springs, CO  80921                  :

HAROLD BAKER                                 :
116 Amherst Lane
Sebastian, FL  32958                         :

ROBERT G. BARZELAY                           :
3508 Hollow Oak Place
Brandon, FL  33511                           :

GARY L. BAUMGARDNER                          :
1632 Bexhill Drive
Knoxville, TN  37922                         :

JAMES A. BEARD                               :
1635 Manning Way
Colorado Springs, CO  80919                  :

DEBORAH BECKER                               :
8003 E. Heaven Hill Lane
Mooresville, IN  46158                       :

RICHARD C. BENNETT                           :
2020 80th Ave E
Parrish, FL  34219                           :

COLIN BENT                                   :
1209 E. Yakima Street
Broken Arrow, OK  74012                      :

VERNON BENTLEY

COMPLAINT                    - 2 -

2409 W. Driftwood Drive
Claremore, OK  74017

         :

         :

HAROLD D. BERNSTEIN
3875 Legacy Drive
Mason, OH  45040

         :

         :

HAROLD D. BERNSTEIN, as personal
representative of the Estate of Sandi
Bernstein
3875 Legacy Drive
Mason, OH  45040

         :

         :

         :

MONTELL BERRY
1115 Village Court
Palm Springs, CA  92262

         :

         :

WALLACE BERRY
3055 W. 30th Court
PO Box 15637
Panama City, FL  32406-5637

         :

         :

LINDA BEUCHER
PO Box 129
Howey in the Hills, FL  34737

         :

         :

STANLEY R. BINDER
920 Birchwood Court
Newport News, VA  23608

         :

         :

ANDREW BLANCHETTE
217 Karen Drive
Orange, CT  06477

         :

         :

CRAIG A. BOCK
54178 Sherwood Lane
Shelby Township, MI  48315

         :

         :

GARY L. BOCK
1005 Wood Haven Ln. SW
Vero Beach, FL  32962

         :

         :

DAVID P. BOHAN
11399 Spyglass Hill Circle
Anchorage, AK  95515

         :

         :

ROLAND BOISIS

COMPLAINT

250 S.E. 7th Street                                :
Dania Beach, FL  33004
                                                   :

JANICE BOND                                        :
9115 Clearhill Rd
Boynton Beach, FL  33473
                                                   :

DWIGHT CHARLES BONDY                               :
161 N. 222nd Drive
Buckeye, AZ  85326
                                                   :

ROBERT F. BORTELL, JR.                             :
6676 Easton Drive
Sarasota, FL  34238
                                                   :

DANIEL BOSSIO                                      :
2367 West Gate Dr.
Pittsburgh, PA  15237
                                                   :

JAMES L. BRACHFELD                                 :
11669 SW Apple Blossom Trail
Port St. Lucie, FL  34987
                                                   :

ROBERTA L. BRACHFELD                               :
11669 SW Apple Blossom Trail
Port St. Lucie, FL  34987
                                                   :

EUGENE BRANDON                                     :
4010 River Falls
San Antonio, TX  78259
                                                   :

MICHAEL J. BRANTMEIER                              :
1114 Whiting Court
Neenah, WI  54956
                                                   :

JAY BROKER                                         :
17 Presidio Road
Montgomery, TX  77356
                                                   :

NEAL SWANK BROOKS                                  :
83 Wood Lily Place
Spring, TX 77382
                                                   :

FAYE D. BROWN                                      :
4614 Alabama Hwy 227
Crossville , AL  35962

COMPLAINT                          - 4 -

RICHARD A. BROWN                          :
1471 Carnaby Court
Dunwoody, GA  30338                       :

LESTER BROWN, SR.                         :
8219 47th Street Circle E
Palmetto, FL  34221                       :

WILLIAM L. BROWN, JR.                     :
19 Stefano Way Drive
Missouri City, TX 77459                   :

RICHARD A. BROWNSON                       :
1511 Walnut Street
Grand Forks, ND 58201                     :

CHARLES R. BURNS III                      :
950 McDonald Lakes Road
Springville, AL  35146                    :

THOMAS C. BUSHEY                          :
100 Mark Lane
Unit L-2                                  :
Waterbury, CT 06704-2459
                                          :
DAVE BUSSELL
8409 Granite Street                       :
Wheelersburg, OH  45694
                                          :
GARY CALLAWAY
801 De La Bosque                          :
Longwood, FL  32779
                                          :
GEORGIANA CALLAWAY
801 De La Bosque                          :
Longwood, FL  32779
                                          :
ALBERT J. CANNIZZARO
225 West Talcott Road                     :
Park Ridge, IL  60068-5531
                                          :
LAWRENCE J. CAPOUCH
1173 143rd Ave NE                         :
Hatton, ND  58240
                                          :
RICHARD CARTER
29324 N.E. 16th Place

Carnation, WA  98014                                    :

VICTOR M. CATARISANO                                    :
7711 Black Willow
Liverpool, NY  13090                                    :

                                                        :

PORTIA M. CHAMBLISS                                     :
8 Ewell Court
Hampton, VA  23669                                      :

MARK CHASE                                              :
20 Louisiana Drive
Palm Coast, FL  32137                                   :

AMY CHERRNAY                                            :
2806 Lake Brook Court
Highland Village, TX  75077                             :

JIMMY C. CHIN                                           :
16 Kendrick Lane
Dix Hills, NY  11746                                    :

DON C. CHRISTENSEN                                      :
5600 Mt. Solo Road, #133
Longview, WA  98632                                     :

JAMES CIRILLO                                           :
4481 Eleuthera Court
Sarasota, FL  34233                                     :

BRUCE W. CLOTFELTER                                     :
P.O. Box 5038
Athens, GA  30604                                       :

IRA CLOUD                                               :
3527-4 Trail Ridge Road
Middleburg, FL  32068                                   :

MILTON COBB                                             :
P.O. Box 1082
Moxee, WA  98936                                        :

MARK C. COLLIER                                         :
2111 Desert Woods Dr.
Henderson, NV 89012

WANDA COLLINS-SMITH                             :
26282 Buckthorn Road
Oakwood, OH  44146                              :

JOSEPH P. CONBOY                                :
P.O. Box 449
Shoreham, NY  11786                             :

RICHARD F. COOK                                 :
2537 Kinnard Avenue
Henderson, NV  89074                            :

JANET COOLEY                                    :
14000 McKinley Road
Chelsea, MI  48118                              :

JAMES CORNETT                                   :
13505 Will Rogers Lane
Austin, TX  78727                               :

CHARLES E. CORRY                                :
7706 Hayfield Road
Alexandria, VA  22315-4052                      :

BRUCE R. CRALLEY                                :
3825 N Ramsey Rd, Apt. 1901
Coeur d Alene, ID  83815                        :

JACK J. CRAPARO, JR.                            :
17016 Paula Lane
Lutz, FL  33558                                 :

JAY CRYSTAL                                     :
18227 Brighton Green
Dallas, TX  75252                               :

JAY CRYSTAL, as personal representative         :
of the Estate of Diane Crystal
18227 Brighton Green                            :
Dallas, TX  75252
                                                :

LONNIE MICHAEL CURTIS
3537 Fieldcrest Drive                           :
Bowling Green, KY  42104
                                                :

BRENT L. DANNER
2810 Ramona Road

Reno, NV  89521          :

JOHN DARWISH      :
3044 Coral Park Drive
Cincinnati, OH  45211    :

HAROLD E. DASKAM    :
14319 106th Ave Ct E
Puyallup, WA  98374     :

JOHN DAVENPORT     :
1930 E Edison
South Bend, IN  46617    :

LESLIE K. DAVIDSON    :
114 Royal Palm Blvd
Panama City Beach, FL  32408 :

ZACHARIAH M. DAVIDSON III :
P.O. Box 369
Hiram, GA  30141       :

MICHAEL L. DAVIS       :
109 Jacaranda Ct
Royal Palm Beach, FL  33411  :

MARGARET DEAN, personal   :
representative of the Estate of Robert T.
Dean                    :
6044 Andros Way
Naples, FL  34119-7515    :

STEPHEN W. DELLAPINA  :
287 Flamingo Point South
Jupiter, FL  33458       :

ERNEST JACK DEMONTE   :
237 Melrose Drive
New Stanton, PA  15672    :

JAMES DEPIZZO        :
270 N. Bayshore Drive
Columbiana, OH  44408    :

JOHN ANTHONY DEVITO   :
1719 Pineland Court
Orange City, FL  32763

GAIL DICKMAN                                          :
778 Elizabeth Drive
Florence, KY  41042                                   :

                                                     :

MARK L. DIVINCENZO                                   :
3154 Deerfield Court
Murrysville, PA  15668                               :

                                                     :

MICHAEL DOHENY                                       :
845 Victoria Lane
Elk Grove Village, IL  60007                         :

                                                     :

JEFFREY M. DOMBECK                                   :
10559 Whitewind Cir.
Boynton Beach, FL 33473                              :

                                                     :

TERRANCE DONOGHUE                                    :
1619 Battery Circle
Hebron, KY  41048                                    :

                                                     :

VALERY DORSHIMER                                     :
13645 Deering Bay Dr. Ph 163
Coral Gables, FL 33158                               :

                                                     :

JOYCE DOUGLAS                                        :
10521 S Hale Ave Apt 1C
Chicago, IL  60643                                   :

                                                     :

RUFUS C. DOWELL                                      :
2309 River Road
Jacksonville, FL 32207                               :

                                                     :

SUSAN DRAPEAU                                        :
P.O. Box 716
Peru, NY  12972                                      :

                                                     :

RICHARD DROE                                         :
3154 Coleridge Road
Cleveland Heights, OH 44118                          :

                                                     :

GEORGE F. DRUMMOND                                   :
156 Indian Circle
Williamsburg, VA  23185                              :

                                                     :

WALTER J. DUBIEL
353 Main Street

COMPLAINT                        - 9 -

Farmington, CT  06032                    :

THOMAS R. DURAN                          :
15255 W. Auburn Avenue
Lakewood, CO  80228                      :

DENNIS R. DYKE                           :
38458 Renwood Avenue
Avon, OH  44011                          :

LARRY R. DYKSTRA                         :
8500 Golden Valley Drive
Maple Falls, WA  98266                   :

RICHARD MORRISON EARL, JR.               :
405 S. Cedar Bluff Road
Knoxville, TN  37922                     :

RONALD F. EATON                          :
4435 Black Diamond Drive
Sparks, NV  89436                        :

MICHAEL ECONOMOS                         :
2046 Otter Way
Palm Harbor, FL  34685                   :

RONALD R. EDWARDS                        :
6810 Japura Court NE
Rio Rancho, NM  87144-6239               :

RICHARD EIRICH                           :
1919 4th St.
Kirkland, WA  98033                      :

ROSLYN EISENSTARK                        :
9660 Isles Cay Drive
Delray Beach, FL  33437-5560             :

BRUCE ENGERT                             :
58 Roads End Rd.
Boothbay Harbor, ME  04538               :

JANE ESCHRICH-WALSH                      :
16105 Dunblaine
Beverly Hills, MI  48025                 :

WILLIAM F. ESTES

8035 53rd Ave. West, Unit B
Mukilteo, WA  98275                    :

                                       :

STEVEN EVANS
319 Mackenzie Dr.                      :
West Chester, PA  19380

                                       :

SANDY K. FABRICATORE
PO Box 593                             :
Eastport, NY  11941

                                       :

JOSEPH FALCONI III
31 Arkansas Avenue                     :
Ocean City, NJ  8226

                                       :

CHRISTIAN FARLEY
2 Raphael Court                        :
Clifton Park, NY  12065

                                       :

SHEILA FARMER
893 Sherwood Dr.                       :
Macedonia, OH  44056

                                       :

CURTIS FARRAR
920 Doral Drive                        :
Fort Worth, TX  76112

                                       :

RALPH V. FAULK
251 Story Road                         :
Export, PA 15632

                                       :

PHILIP D. FEISAL
2705 N Meridian Place                  :
Oklahoma City, OK  73127

                                       :

CARL FIELDER
4650 Van Kleeck Drive                  :
New Smyrna Beach, FL  32169

                                       :

DORIS FIELDS
7226 S Lafayette Ave                   :
Chicago, IL  60621

                                       :

LARRY D. FINLEY
12509 Gaston Court                     :
Oklahoma City, OK 73107

COMPLAINT                    - 11 -

WILLIAM FLOOD                                    :
P.O. Box 5403
Sun City Center, FL  33571                       :

GERALD L. FLORES                                 :
2381 Matthew John Drive
Dubuque, IA  52002                               :

ERIC A. FORD                                     :
917 Field Street
Hammond, IN  46320                               :

JOHN R. FORREST                                  :
6330 Star Grass Lane
Naples, FL  34116-6737                           :

ALLEN F. FOSTER                                  :
750 Silver Cloud Circle #104
Lake Mary, FL  32746                             :

ROBERT FRANZ                                     :
520 Valley Stream Drive
Gevena, FL  32732                                :

BOSS ROBERT FRIES, III                           :
807 S. Gray
Stillwater, OK  74074                            :

JODENE GARDNER                                   :
15126 Douglas Circle
Omaha, NE  68154                                 :

ROBERT E. GARY                                   :
2811 E. 84th St.
Tulsa, OK  74137                                 :

LARRY O. GENTRY                                  :
625 Lakehaven Cr
Decatur, TN  37322                               :

SAMUEL E. GILLETTE                               :
8435 SW 48 St.
Miami, FL 33155                                  :

GARY GOELZ                                       :
621 Country Vue Ct.
Cranberry Twp., PA 16066

COMPLAINT                          - 12 -

RANDOLPH GOODWIN, JR.    :
78 Highcrest Road        :
Wethersfield, CT  06109

                         :

JAMES A. GRADY           :
2233 Spring Creek Cir NE :
Palm Bay, FL  32905

                         :

WILLIAM D. GREENE        :
2390 Mid Pine Ct         :
Oviedo, FL  32765

                         :

SANDRA GUTHRIE           :
5 Hunt Drive             :
Belleville, IL  62226

                         :

GERALD GUTZEIT           :
6423 Parkwood Place      :
Florence, KY  41042

                         :

FRANKLIN P. HALL         :
4337 Sawmill Trace Drive :
Charlotte, NC  28213

                         :

BRENDA C. HAMMOND        :
4670 Diann Drive         :
College Park, GA  30349

                         :

LORETTA CAUSEY HANNON     :
8930 Equus Circle        :
Boynton Beach, FL  33472

                         :

FRANCIS HANRATTY         :
8917 Litchfield Avenue   :
Las Vegas, NV  89134

                         :

JAN HANSON               :
2707 Huron Street        :
Bellingham, WA  98226

                         :

CHRIS HARDESTY           :
P.O. Box 652             :
Astatula, FL  34705

                         :

RONALD C. HARRISON, JR
3537 Pinehurst Drive

Plano, TX   75075                                    :

JOHN W. HEASLEY                                      :
4069 Highlander Avenue
Lake Havasu City, AZ  86406                          :

CONI HEIDLE                                          :
130 Campbell Lane
Clinton, TN  37716                                   :

DARLENE HEINEN                                       :
N2970 River Ridge Road
Waldo, WI  53093                                     :

GERALD HEINEN                                        :
N. 2970 River Ridge Road
Waldo, WI  53093                                     :

ROBERT HELSEL                                        :
2902 Village Square Drive
Dover, PA  17315                                     :

JAMES LOUIS HEMPHILL                                 :
1300 Melrose Drive
Norman, OK  73069                                    :

GAIL ROGERS HIBBLER                                  :
1000 S. Cuyler
Oak Park, IL  60304                                  :

LARRY W. HICE                                        :
7910 SW 103rd Avenue
Gainesville, FL  32608-6208                          :

DANNY HIGDON                                         :
1526 Circle Drive
Guntersville, AL  35976                              :

PATRICIA A. HILL                                     :
8439 S. Constance Avenue
Chicago, IL  60617                                   :

RICHARD D. HILL                                      :
225 Leland St.
Bloomington, IL  61701                               :

JAMES HILLAN

4986A S. Nelson Street                :
Littleton, CO  80127

                                      :

LEANNE HINKLE (FORMERLY
MCCURLEY)                             :
110 Stage Coach St
Hemphill, TX 75948                    :


JOHN HLOHINEC                         :
4331 Sunniland St.
Sarasota, FL  64233                   :


JIMMY D. HOCK                         :
10300 Katy Line Ct.
Yukon, OK  73099                      :


CHARMAIN A. HORVATH                   :
464 Barwell Street
Akron, Ohio  44303                    :


DAN P. HOURIHANE                      :
484 Ferndale Lane
Prospect Heights, IL 60070            :


STEVE HOWELL                          :
6932 Petworth Rd
Memphis, TN  38119                    :


GEORGE HUYE                           :
11604 Villa Ave
Baton Rouge, LA  70810                :


JOHN IAPOCE                           :
10 Talbot Court
Bluffton, SC  29909                   :


SANDRA INMAN                          :
1305 Bradford Lane
Knoxville, TN  37919                  :


CHARLES S. JACKSON                    :
PO Box 611
White Marsh, VA  23183                :


RICK JAHNS                            :
1427 W. Windhaven Avenue
Gilbert, AZ  85233-5143

COMPLAINT                             - 15 -

ROBERT JAYSON
14612 Barletta Way
Delray Beach, FL  33446

LELAND JELINEK
2476 Lawndale Road
Grand Forks, ND  58201

CHARLES JOHNSON
7652 Doe View Drive
West Chester, OH  45069

REECE JOHNSON
7030 S.W. 82nd Avenue
Miami, FL  33143

LARRY JONES
17604 Durbin Park Rd
Edmond, OK  73012

RONALD R .JONES
739 N. Pendleton Avenue
Pendelton, IN  46064

KAREN JUNEMAN, as personal
representative of the Estate of Roger
Juneman
902 Persimmon Lane - Unit B
Mount Prospect, IL  60056

DAVID N. KAPEC
8436 NW 6th Avenue
Gainesville, FL  32607-1406

KATHLEEN KENNEY
1147 Oak Ridge Drive
Streamwood, IL  60107

ROBERT KILLEEN
334 Rue St. Peter
Metairie, LA  70005

ROBERT E. KIMBLE
P.O. Box 847
Cleveland, MS 38732

COMPLAINT

THOMAS KROHNER                                    :
P.O. Box 269
Torrington, CT 06790                             :


MARIA KRUMM, as personal                         :
representative of the Estate of Gary J.
Krumm                                            :
41062 E. Rosewood
Clinton Township, MI 48038                       :


AMOS KUYKENDOLL                                  :
15123 Oak Street
Dolton, IL  60419                                :


WILLIAM LANDMARK                                 :
146 Arthur Avenue
Thornwood, NY  10594                             :


GREGORY LANE                                     :
P.O. Box 1676
Meridian, PA 39302                               :


BRUCE LARRABEE                                   :
27 Erland Road
Stoney Brooke, NY  11790                         :


JENNIFER LATHAM, as personal                     :
representative of the Estate of Charles E.
Latham                                           :
3585 Weeping Willow Lane
Loganville, GA  30052                            :


CAROL E. LEBLANC                                 :
14260 W Newberry Rd STE 233
Newberry, FL  32669                              :


JOSEPH LEE                                       :
4675 South Valleyview Drive
West Bloomfield, MI  48323                       :


SHARON E. LIBBRA                                 :
1815 Penina Dr.
Crosby, TX  77532                                :


TERRY GENE LIBBRA                                :
1815 Penina Dr.
Crosby, TX  77532

JANET LINDSAY, as personal                        :
representative of the Estate of Ronald            :
Lindsay
404 Larson Dr.                                    :
Danbury, CT 06810
                                                  :
JAMES W. LONGMAN
2214 Teal Ct.                                     :
Bellingham, WA  98229
                                                  :
JOHN LUCAS
9 Mohegan Lane                                    :
Rye Brook, NY  10573
                                                  :
JAMES E. LYNCH
3910 Donegal Drive                                :
Bethlehem, PA  18020
                                                  :
MICHAEL MACISCO
745 Nichols Avenue                                :
Stratford, CT  06614
                                                  :
JOHN MALEK
781 Doctor Ave                                    :
Sebastian, FL  32958
                                                  :
STEVEN MALLORY
10256 Huntington Avenue                           :
Omaha, NE  68122
                                                  :
JOHN MALLOY
2913 Cheyenne Drive                               :
Bowling Green, KY  42104
                                                  :
PATRICIA MARAZO
120 N. Hisbiscus Ct.                              :
Plantation, FL  33317
                                                  :
NICHOLAS S. MARINOS
248 Melrose Drive                                 :
New Stanton, PA  15672
                                                  :
EUGENE MARONEY
1219 Sleepy Hollow Road - Unit 1197               :
Athens, NY  12015

COMPLAINT                          - 18 -

JOHN MARSH                          :
1054 Mildred Avenue
Lorain, OH  44052-1218              :

RICHARD MASI                        :
13837 76th Terrace North
Seminole, FL  33776                 :

GLEN MASON                          :
4001 Sunflower Road
New Brighton, PA  15066             :

SCOTT A. MATTINGLY                  :
2297 Burns Road
Rineyville, KY  40162               :

THOMAS W. MATYJASIK                 :
1180 Cedar
Birmingham, MI  48009               :

THOMAS MCCALL                       :
1050 Starkey Rd Apt 2503
Largo, FL  33771                    :

RUDOLPH MCCLINON JR.                :
550 Alton Way, Unit 7154
Denver, CO  80230                   :

CASEY MCCOY                         :
508 East Noble Ave.
Guthrie, OK  73044                  :

SHERRY MCDONALD                     :
PO Box 1396
Ocean Park, WA  98640               :

THOMAS MCEVANS III                  :
22617 Avon Lane
Southfield, MI  48075               :

JAMES P. MCGUIRE                    :
3933 Forest Avenue
Western Springs, IL  60558          :

JOHN F. MCKENZIE                    :
172 Williamsburg Drive
Monroe, CT  06468

COMPLAINT                        - 19 -

ANTHONY MCMURRAY
21373 S. Boschome Circle
Kildeer, IL  60047

:

:

PETER S. MCVITTIE
56 Chestnut
Chelsea, MI  48118

:

:

JERREL L. MEAD
56426 Elmer Ave
South Bend, IN  46619

:

:

MARY MENDOZA
410 Isolde Drive
Houston, TX  77024

:

:

ORTON W. MESSENGER
92 Bay Tree Drive
Miramar Beach, FL  32550

:

:

SUSAN E. MESSINA
10974 Porto Foxi Street
Las Vegas, NV  89141

:

:

PHILLIP N. METCALFE
1093 Balfour Circle
Phoenixville, PA  19460

:

:

RONALD METZGER
517 Winkworth Parkway
Syracuse, NY  13215

:

:

PAMELA MEYER, as personal
representative of the Estate of Michael
Meyer
2324 San Gabriel Drive
Plano, TX  75074

:

:

:

ARTHUR R. MILES, JR.
2711 Wynfield Road
West Friendship, Maryland  21794

:

:

JAMES T. MILLER
1700 Helena Avenue
Hartland, MI  48353

FRANK E. MILLER, JR.                          :
1 Orinco Court
Port St. Lucie, FL  34952                     :


JEAN MINAL                                    :
819 River Forest Court
Bensenville, IL  60106                        :


FRIEDA MINGA                                  :
5073 Club Vista Point
Stone Mountain, GA  30088                     :


BARBARA ANN MINK, as personal                 :
representative of the Estate of Daniel Mink
P.O. Box 861                                  :
Crystal Beach, FL  34681

                                              :

ROBERT MINTON                                 :
615 20th Avenue West
Bradenton, FL  34205                          :

                                              :

JOE MONTANARO                                 :
457 Dayton Road
Trumbell, CT  06611                           :

                                              :

RICHARD MOORE                                 :
5507 W Comanche Ave
Spokane, WA  99208                            :

                                              :

STAFFORD W. MOORE                             :
546 Coble Ave
Albemarle, NC  28001                          :

                                              :

DINAH MORGAN                                  :
277 Honor Drive
Kerrville, TX 78028                           :

                                              :

SYLVIA E. MOSLEY                              :
P.O. Box 3214
Suwanee, GA  30024                            :

                                              :

D. CRAIG MULLEN                               :
14364 Autumns Avenue, SE
Monroe, WA  98272                             :

                                              :

KELLY PATRICK MULLIGAN
9585 Highview Drive

COMPLAINT                    - 21 -

Eden Prairie, MN  55347                          :

DARRELL NAMIE                                    :
1280 Chapel Road
Monaca, PA  15061                                :

HERBERT A. NEWMAN                                :
2448 Charney Road
University Heights, OH  44118                     :

CHESTER NOWAK                                    :
75 Cami Court Apt. 207
Walton, KY  41094                                :

RICHARD PAUL NYDEGGER                            :
11224 SE 172nd Avenue
Happy Valley, OR 97086                           :

THOMAS A. O'DELL                                 :
5877 White Tail Drive
Ooltewah, TN  37363                              :

WALTER ORR                                       :
9 Sandlewood Circle
Madison, WI  53716                               :

JIM OVERMILLER                                   :
1095 Millcreek Road
York, PA 17404                                   :

BARBARA OXNER (previously Jones)                 :
837 North Cowboy Canyon Drive
Green Valley, AZ  85614                          :

MARTHA PARRY                                     :
139 Lincoln Drive
Oakdale, NY  11769                               :

FRANK M. PATTERSON                               :
914 S Lombard
Oak Park, IL  60304                              :

TERRY PAULK                                      :
4317 Avenue O
Galveston, TX  77550                             :

DANIEL T. PERRY

4794 Timberline Drive
North Street, MI  48049

      :

      :

KEN PHILBRICK
13300 Indian Rocks Rd #102
Largo, FL  33774

      :

      :

FRANK L. PHILLIPS
563 Cook Rd
Aynor, SC  29511

      :

      :

STEPHEN WAYNE PIGG
12345 Highway 601
Midland, NC  28107

      :

      :

CLIFFORD L. PINCKNEY
8 Hilton Glen Ct
Chapin, SC  29036

      :

      :

RITA E. PINO
7655 West 67th Avenue, #312
Arvada, CO  80004

      :

      :

RONALD M. PINSONEAULT
129 Nicole Drive
Brooklyn, MI  49230

      :

      :

JOHNNY A. PLEMONS
2218 Canterbury Ct.
Deer Park, TX  77536

      :

      :

ROBERT POLLOCK
324 Amundson Parkway
Stoughton, WI  53589

      :

      :

DENNIS H. PORTER
702 N. Wilson St.
Greenfield, IN  46140

      :

      :

DENNIS POWERS
139 Preston Circle
Jacksboro, TN  37757

      :

      :

BLAIR QUASNITSCHKA, as personal
representative of the Estate of Linda Kirbus
(formerly Quasnitschka)
14 Applewood Ln.

      :

Avon, CT 06001                                    :

PAUL QUATTRONE                                    :
2146 Winsley Street
Clermont, FL  34711                               :

MARZIANO P.  RAGNONE                              :
4709 Myra Lee Dr.
Auburn, MI  48611                                 :

JAMES RAUEN                                       :
1280 Lynrose Lane
Neenah, WI  54956                                 :

DONALD P. REIMER                                  :
3005 Tudor Way S.E.
Albany, OR  97322                                 :

MARIA G. RESNICK                                  :
12 Washington Lane
Clifton Park, New York  12065                     :

LINDA REYNOLDS                                    :
824 Earhart Road
Ann Arbor, MI  48105                              :

STAN RICKS                                        :
PO Box 2524
Hammond, LA  70404                                :

DICK ROBERTS                                      :
4677 Aero Drive
Lewiston, ID  83501                               :

THOMAS ROBY                                       :
40 Bay Path Way
Branford, CT  06405                               :

DAVID ROMAN                                       :
4506 17th Street W.
Palmetto, FL  34221                               :

LLOYD T. ROSENSTEEL                               :
23 Breezy Point Way
Argyle, NY  12809                                 :

RICHARD K. ROSKOWE

2751-1 E. Aragon Blvd
Sunrise, FL  33313                         :

                                           :

RICHARD ROSSELL
1432 Marlane Drive                         :
Girard, OH  44420

                                           :

RONALD J. RUBIN
1784 Bayshore Drive                        :
Englewood, FL  34223

                                           :

ROBERT RUSSO
9822 W Indore Drive                        :
Littleton, CO  80128

                                           :

KAREN RYAN-WHITE
7901 S. Richmond Avenue                    :
Tulsa, OK  74136-8169

                                           :

EDWARD M. SAAD
988 Chateau Drive                          :
Marion, OH  43302

                                           :

JOHN J. SANCHEZ
3219 Rustic Oak                            :
San Antonio, TX  78261

                                           :

JACK SANDERS
19793 Casa Verde Way                       :
Fort Myers, FL  33967

                                           :

MICHAEL L. SANDERS
13817 West 54th Terrace                    :
Shawnee, KS  66216-5106

                                           :

SHEILA SANDERS
4756 Derbyshire Drive                      :
North Randall, OH  44128

                                           :

GAIL C. SANTALUCIA-DALY
938 Wilson Drive                           :
Lancaster, SC  29720

                                           :

PHILIP J. SARCONE
23 Framingham Lane                         :
Shoreham, NY 11786

COMPLAINT                           - 25 -

RICHARD SAULLE                          :
404 Rachael Court
Gibsonia, PA  15044                     :


MARCOS E. SAYAGO                        :
625 Tam O Shanter Dr.
Orlando, FL  32803-6928                 :


GERALD H. SCHIELE                       :
3462 East 62nd Street
Kansas City, MO  64130                  :


DOUGLAS SCHIFFMILLER                    :
2795 Strickland Avenue
Brooklyn, NY  11234                     :


TIMOTHY L. SCHWARTZ                     :
6472 Marshall
Canton, MI 48187                        :


DAVID L. SEIDEL                         :
1795 Gervais Ave. #6
Maplewood, MN  55109                    :


ROGER SEROLA                            :
6261 SE Winged Foot Dr.
Stuart, FL 34997                        :


LEONARD SHAW                            :
4152 King Richard Dr.
Sarasota, FL   34232                    :


ROBERT G. SHEA JR.                      :
908 McKinley
Bay City, MI  48708                     :


SHELDON F. SHEFF                        :
9472 Southgate Drive
Cincinatti, OH  45241                   :


WOODROW SHELTON JR.                     :
117 Calloway Lane
Hendersonville, TN  37075               :


DARRYL SHERMAN                          :
1011 Horseshoe Drive
Sugar Land, TX  77478

COMPLAINT

MIKE SHOBE                                          :
PO Box 577                                          :
Ft. White, FL  32038-0577

                                                    :

LAWRENCE J. SIMMS                                   :
5325 NW 51st Street                                 :
Coconut Creek, FL  33073

                                                    :

DOUGLAS A. SIMS                                     :
3755 Brandi Ln.                                     :
Paris, TX  75462

                                                    :

ERIC B. SIMS                                        :
705 Melissa Drive                                   :
Bolingbrook, IL  60440

                                                    :

CHINESTA SKIPPER SMITH                              :
249 Ivan Church Road                                :
Crawfordville, FL  32327

                                                    :

MARIE SMITH, as personal representative
of the Estate of David William Smith                :
3802 Spruce Glen Drive
Kingwood, TX  77339                                 :

DENNIS Z. SMITH                                     :
3681 Cheltenham Road                                :
York, PA  17402

                                                    :

RONALD W.  SMITH                                    :
5843 South 1050 West                                :
Owensville, IN  47665

                                                    :

ARMANDO D. SOLER                                    :
7061 SW 99th Avenue                                 :
Miami, FL  33173

                                                    :

DEBORAH ANN SORRELL-ULRICH                          :
673 Wellerburn Avenue                               :
Severna Park, MD  21146

                                                    :

DAVID ST. JOHN                                      :
13306 E. 94th Place North                           :
Owasso, OK  74055

                                                    :

SARAH ST. JOHN

13306 E. 94th Place North                          :
Owasso, OK  74055
                                                    :

THOMAS STEIN                                        :
1241 Big Oak Lane
Sarasota, FL  34242                                 :

MICHAEL M. STERN                                    :
406 Briarcliff Cir.
Sebastian, FL  32958                                :

CAROL STEVENS (formerly Stehle)                     :
605 Kenwood Drive
Vero Beach, FL  32968                               :

JOHN STOUT                                          :
1534 Kennellworth Place
Bronx, NY  10465                                    :

DONALD STRIPLIN                                     :
1426 W. Castle Mesa Drive
Castle Rock, CO  80109-9504                         :

CELESTE M. SULLIVAN                                 :
755 Pine Run Drive
Osprey, FL 34229                                    :

KURT A.  SUMMERS                                    :
5421 East Harmon Apt K14
Las Vegas, NV  89122                                :

STANLEY  SUWALA                                     :
2582 Mallard Ln.
Gillbertsville, PA  19525-9200                      :

PAUL SVABEK                                         :
12800 Hibiscus Avenue
Seminole, FL  33776                                 :

EDWARD SWANSON                                      :
807 Gascon Place
Temple Terrace, FL  33617                           :

MARILYN SWANSON
4914 Ravine Court
Ann Arbor, MI  48105

COMPLAINT                          - 28 -

MICHELLE TABLER                    :
11417 Discovery Park Drive
Anchorage, AK  99515               :


RUSSELL A. TAPIE                   :
1608 Disney Drive
Metairie, LA  70003                :


WANDA TATUM                        :
580 Ridgeway Rd
Jackson, GA 30233                  :


CHARLES TAYLOR                     :
1702 Onon Daga Drive
Geneva, FL  32732                  :


WRIGHT B. TAYLOR, III              :
8913 Highway 36
Jones Creek, TX  77541             :


ROBERT W. TELKINS                  :
158 Stoney Creek
Houston, TX  77024                 :


STEPHEN THOENNES                   :
5918 Pearson Drive
Brooklyn Center, MN  55429         :


GARY THOMAS                        :
8421 Lainie Lane
Orlando, FL  32818                 :


MONTAGUE A. THOMAS III             :
5663 Lakeshore Village Circle
Lake Worth, FL  33463              :


JEFFREY TOBIN                      :
3017 SE 5th Ave.
Cape Coral, FL 33904               :


JOSEPH TOMEC                       :
23080 W. Villa Rica Road
Antioch, IL  60002                 :


MARY TURLEY, as personal           :
representative of the Estate of Robert H.
Turley

COMPLAINT                    - 29 -

34251 N. Homestead Road                    :
Gurnee, IL  60031
                                           :

ALBERT TURNER                              :
9754 S. Winston Avenue                     :
Chicago, IL  60643
                                           :

DAVID J. TUSKEY                            :
380 Westchester Road                       :
Saginaw, MI 48603
                                           :

GEORGE TWOHIG                              :
430 Lowick Drive                           :
Colorado Springs, CO  80906
                                           :

CORNELL G. VANDEGRIFT                      :
7955 W. Evelyn Ct.                         :
Cape Canaveral, FL  32920-5129
                                           :

MILFORD T. VAUGHT, JR.                     :
175 Sims Circle                            :
Waynesville, NC  28786
                                           :

LOUIS VEAL                                 :
5126 Springfield Ct                        :
Westerville, OH  43081
                                           :

DALE A. VILLEMAIN                          :
3501 Amberly Trail                         :
Evans, GA  30809
                                           :

CLETA VINING                               :
641 Romohr Acres                           :
Cincinatti, OH  45244
                                           :

JOSEPH J. VIOLA SR.                        :
2448 N. Neva                               :
Chicago, IL  60707
                                           :

RONALD WANEK                               :
6024 South 93rd Street                     :
Omaha, NE  68127
                                           :

BRIAN J. WANLESS                           :
4078 Delmar View Drive                     :
Grandville,MI  49418

COMPLAINT                          - 30 -

ARTHUR WASHINGTON                    :
253 Belton Road
Ruston, LA  71270                    :

TIMOTHY JACKSON WATWOOD              :
10465 AL Highway 168
Boaz, AL 35957                       :

MARK E. WEGNER                       :
10680 S Shore Dr
Lake, MI  48632                      :

FINDLEY WEST                         :
8719 Golden Chord Circle
Houston, TX  77040                   :

NEIL WHICKER                         :
113 Nicoletti Drive
Midvale, UT  84047                   :

CHARLES L. WILLIAMS                  :
1015 Starling Way
Viera, FL  32955                     :

WALKER WILLIAMS                      :
1820 King James Road
Kissimmee, FL  34744                 :

RODNEY W. WILLIAMS SR.               :
1383 Gasparilla Drive
Fort Myers, FL  33901                :

BARRY WILSON                         :
7 Brookside Dr.
Traveleres Rest, SC  29690           :

ROBIN WILSON                         :
1101 Winterhawk Drive
St. Augustine, FL  32084             :

FRANCES WISNIEWSKI                   :
358 Woodhill Drive
Carol Stream, IL  60188              :

JAMES  MICHAEL WOOD                  :
125 Williamsburg Lane
Athens, GA  30605

LINDA WOSHNER
137 South Euclid Avenue
Pittsburgh, PA 15202

ROBERT A WRIGHT, JR.
1841 Imperial Golf Course Blvd.
Naples, FL 34110

BARBARA D. WRIGHT, as personal
representative of the Estate of Kevin A.
Wright
117 Crooked Creek Road
Troy, MO 63379

LEONARD YARBROUGH
33003 Pecan Hill Drive
Brookshire, TX 77423

DONALD YOUNG
1147 Oak Ridge
Streamwood, IL 60107

JAMES M. ZAHNER
1211 Covington Drive
Saline, MI 48176

RONALD D. ZARBAUGH
8426 Chamberlain Place
Oviedo, FL 32765

ROSE ZUMWINKLE, as personal
representative of the Estate of William
Zumwinkle
46 Glenview Loop
St. Cloud, MN 56303

MANUEL ZUNIGA
9707 Penn Avenue N
Brooklyn Park, MN 55444

CHARLES DENNIS ZYBURO
7 Monterey Land
Yaphank, NY 11980

Plaintiffs,

COMPLAINT                                    - 32 -

| | |
|---|---|
|           v. | : |
| | |
| ALLSTATE INSURANCE COMPANY, | : |
| 2775 Sanders Road | |
|  Northbrook, IL  60062 | : |
| | |
| THE ALLSTATE CORPORATION | : |
| 2775 Sanders Road | |
|  Northbrook, IL  60062 | : |
| | |
| AGENTS PENSION PLAN | : |
| 2775 Sanders Road | |
| Northbrook, IL  60062 | : |
| | |
| ADMINISTRATIVE COMMITTEE, in its | : |
| capacity as administrator of the Agents | |
| Pension Plan, | |
| 2775 Sanders Road | |
| Northbrook, IL  60062 | |
| | |
| EDWARD M. LIDDY, in his capacity as | |
| former President and Chief Executive | |
| Officer of The Allstate Corporation and | |
| Allstate Insurance Company, | |
| 900 N. Ringwood Rd. N. | |
| Lake Forest, IL  60045 | |
| | |
|           Defendants. | |

## **INTRODUCTION**

1.      This action is based on a series of events by which Allstate Insurance Company

and its parent, The Allstate Corporation (referred to collectively herein as "Allstate"), violated

the rights of thousands of "captive" insurance sales agents whom Allstate employed during the

1990's and whose "R830" or "R1500" employment contracts it terminated *en masse* in 2000

through the "Preparing for the Future" Group Reorganization Program (the "Program").  During

the course of their longstanding contractual relationships with Allstate, these employee agents

had brought enormous value to the company by investing at least about a decade of exclusive

service to Allstate and, at its behest, substantial personal resources to expand the company's

COMPLAINT                                          - 33 -

customer and revenue base.  They made these investments in a "book of business" that Allstate maintains they did not own, based upon the promise Allstate would provide them with a "guaranteed income" and lifetime "financial security," principally through a "superior" compensation package that included substantial benefits under the company's pension, profit sharing and other employee benefit plans (collectively, the "Plans") touted as the best the industry had to offer.

2.    Among other things, in order to induce employee agents to devote their careers to selling insurance and financial services products exclusively on behalf of Allstate, the company made them participants in the Agents Pension Plan after one year of service and they became fully vested after five (5) years.  The early retirement provisions of the Agents Pension Plan were one of the most attractive features.  In addition to the fact any individual having at least twenty (20) years of "continuous service" was eligible for early retirement benefits at age 55, the amount of the benefit was enhanced or "beefed-up" in order to create a further incentive for early retirement.

3.    During the 1990's, Allstate began to pull the rug from under its employee agents. First, in November 1991, it unlawfully attempted to amend the Agents Pension Plan retroactively to phase out the "beefed up" early retirement benefit over several years, with the benefit completely eliminated for agents who elected early retirement subsequent to December 31, 1999.

4.    Second, through amendments adopted over several years, Allstate attempted to amend the Agents Pension Plan further to exclude a particular form of "service"—that is, service in a capacity denominated as "Exclusive Agent independent contractor"—from being counted as "service" for purposes of accruing additional retirement benefits and determining eligibility for early retirement benefits.

COMPLAINT                                    - 34 -

5.    Third, to get out from under the burden of its promise of financial security to R830 and R1500 employee agents, Allstate strove throughout the 1990's to persuade these employee agents to convert to so-called "Exclusive Agent independent contractor" status by telling them that such status would give them even more "entrepreneurial freedom" and a capacity for much greater earning power.  Those agents who "converted" to "Exclusive Agents," however, continued to perform the same job that they had always performed as employee agents and were, in reality, subject to no less control than they had been subject to prior to their conversion, but they no longer enjoyed the protections against termination provided by their R830 or R1500 employment contract nor the generous employee benefits that came with their classification by Allstate as employees.  Moreover, by characterizing them as "independent contractors" and by amending the Agents Pension Plan to deny them credit for the service they gave Allstate as Exclusive Agents, Allstate was able, in effect, to deprive these agents of their early retirement subsidies under the Agents Pension Plan.

6.    Despite Allstate's efforts to induce employee agents to voluntarily convert to Exclusive Agents, approximately 6,200 employee agents—including the plaintiffs named herein or the deceased former agents whose Estates are represented by named plaintiffs (collectively referred to as "Plaintiffs")—remained under an R830 or R1500 employment contract as of November 1999.  Having failed in a decade-long effort to persuade these employee agents to voluntarily relinquish their job security and employee benefits, Allstate and its then-President and Chief Executive Officer, Edward M. Liddy, decided to dictate that result through coercive and unlawful measures.  To this end, Allstate announced in November 1999 that it was instituting the Program, under which Plaintiffs and virtually all other employee agents would

have their R830 or R1500 employment contracts involuntarily terminated by June 30, 2000,[1] and would be permitted to retain their Allstate careers only if they converted to purported independent contractor "Exclusive Agents" under Allstate's non-negotiable terms. To ensure that the employee agents would not be able to reacquire their pension and other benefits by obtaining reemployment with the company in some other capacity, Allstate designed and later imposed a moratorium on rehiring employee agents subject to the Program, regardless of their ample qualifications.

7.     In its public pronouncements, Allstate justified the Program as a measure designed to promote "productivity" and "entrepreneurial freedom," and thus "re-energize" its insurance sales force. Allstate also claimed the Program was intended to eliminate the complexity of having multiple agent programs and contracts. Yet Allstate continued to have the same number of different agent programs and contracts after the Program.

8.     The true reasons underlying Allstate's decision to terminate Plaintiffs and substantially all of its other long-service employee agents were different. Allstate wished to rob its employee agents of the pension and other benefits to which they were or might in the future become entitled under the Plans. Indeed, the Program was the central feature of a "field realignment" designed to save approximately $325 million in annual expenses, a significant portion of which consisted of annual savings arising out of eliminating the cost of providing pension, profit sharing and other benefits to more than 6,000 employee agents.

9.     Allstate also instituted the Program was to replace older employee agents with younger hires. Because Allstate had ceased hiring new R830 or R1500 employee agents by 1990, that segment of its workforce had grown progressively older such that, by October 1999, approximately 90 percent of those remaining employee agents were over the age of 40 and the

---

[1]     Employee agents in Montana were to be terminated as of September 30, 2000, and

average age of the remaining employee agents had risen to 50.  Allstate and its senior management stereotypically viewed these older agents as lacking in energy, drive, initiative and entrepreneurial spirit, and they were referred to variously as a "problem," as creating a "toxic environment" and as "bad for the morale of the younger agents."

10.    Correctly reckoning that about 2,000 employee agents would leave the company rather than accept something they had continually spurned over the preceding decade, Allstate's management saw the Program as a singular opportunity to replace upwards of twenty percent of its older agents and distribute the sizable books of business these agents had been developing and servicing over the period of about a decade or more to new hires who were thought to be more "energetic" and "productive."

11.    In phasing out the "beef-up" and altering the eligibility requirements for obtaining early retirement benefits, Allstate violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and, in particular, ERISA Section 204(g)(2) (codified as 29 U.S.C. § 1054(g)(2)), which prohibits any plan amendment that has the effect of "cutting back" on early retirement benefits or subsidies.

12.    In severing the employment contracts of Plaintiffs and the other employee agents to deprive them of benefits under the Plans and purge hundreds of older workers from the ranks of its sales force, Allstate acted in blatant violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and ERISA, as well as its myriad of contractual and fiduciary obligations.

13.    As a result of the Program, Plaintiffs and other similarly-situated employee agents experienced a sudden and dramatic decline in income.  Many were forced to abandon their professions, deplete their life savings, sell or mortgage their homes and/or file for bankruptcy.

---

employee agents in Delaware were to be terminated as of December 31, 2000.

Others have suffered from anxiety, depression, loss of self-worth and such severe emotional distress that they have required medical treatment or hospitalization, and in some instances, have died.

14.    To evade accountability for conduct that it well understood to be unlawful, Allstate presented Plaintiffs and the other employee agents with the following ultimatum:  if they did not sign the standardized General Release and Waiver Agreement (the "Release") that purported to waive their right to challenge the legality of the company's conduct, as well as the Release itself, they would not be permitted to continue in the service of the company, albeit as a so-called "Exclusive Agent independent contractor," or to attempt to sell the profitable books of business they had developed over many years of dedicated service.  In other words, Allstate would sever its ties completely with employee agents who did not sign the Release and would confiscate their books of business, including the substantial investments employee agents had been pressured or induced to make therein.  Faced with this "Hobson's choice," Plaintiffs (and virtually all other employee agents subject to the Program) signed the Release.

15.    In successfully strong-arming over 99 percent of the employee agents (including all Plaintiffs) into signing the Release, Allstate exploited their financial vulnerability and betrayed the confidence they had reposed in the company during relationships that spanned upwards of a decade.  Not only had Allstate aggressively encouraged these employee agents to invest their own financial resources for the purpose of building the company's business, it also had prohibited them from selling any competing insurance and financial products, pursuing any other business venture or earning other income for retirement.  Moreover, Allstate imposed severe restrictions on the ability of its employee agents to develop any competing business upon the termination of their Allstate employment.  Thus, when confronted with the Release, Plaintiffs—like virtually all other employee agents—were left so vulnerable to overreaching by

COMPLAINT                                    - 38 -

Allstate and were under such extreme duress, they had no other choice but to sign. Recognizing those pressures, the United States Equal Employment Opportunity Commission ("EEOC") issued a determination in which it characterized Allstate's conduct as "threats, coercion, and intimidation" and found that the Release was in violation of the ADEA and, hence, unenforceable. Not content with merely applying such coercive pressure on the agents, however, Allstate also made repeated misrepresentations about the Release and the consequences of signing or not signing it, with the purpose or effect of reasonably inducing employee agents to sign the Release.

16.      In August 2001, a group of former employee agents, who were subjected to the same Program and Release requirement as Plaintiffs, filed suit against Allstate and defendant Edward M. Liddy on behalf of themselves and the other 6,000-plus similarly situated employee agents to have the Release declared invalid and to otherwise vindicate their rights under the ADEA, Section 510 of ERISA, 29 U.S.C. § 1140, and the common law on a class-wide and collective-action basis. *See Romero, et al. v. Allstate Ins. Co., et al.*, Civ. No. 01-3894 (E.D. Pa.) ("*Romero I*"). In December 2001, the Equal Employment Opportunity Commission ("EEOC") brought its own action against Allstate similarly seeking a declaratory judgment that the Release is invalid. *See EEOC v. Allstate Ins. Co.,* Civ. No. 01-7042 (E.D. Pa.), consolidated with Nos. 01-3894 and 01-6764, and referred to herein as the "Consolidated EEOC action." Additionally, in December 2001, the *Romero I* plaintiffs and four other former employee agents filed a second lawsuit against Allstate, the Agents Pension Plan and the Administrative Committee for violations of ERISA arising from defendants' unlawful cutback of early retirement benefits and subsidies under the Pension Plan and related misrepresentations made to employee agents in connection with the Program. *See Romero, et al. v. Allstate Ins. Co., et al.*, Civ. No. 01-6764

(E.D. Pa.) ("*Romero II*").  The *Romero I* and *Romero II* cases are collectively, referred to as "*Romero*".

17.    Plaintiffs in this action are putative members of one or more of the classes and/or collective action asserted in *Romero*.  On January 6, 2015, however, the Court in *Romero* entered an order providing that its October 6, 2014 denial of certification of a class that sought to invalidate the Release on various grounds "put putative class members on unequivocal notice" that they must invalidate the Release in order to participate in any potential class on the *Romero* substantive claims.  Accordingly, Plaintiffs bring this "related" action to invalidate the Release and otherwise preserve their claims or vindicate their rights under the ADEA, ERISA and the common law.

## JURISDICTION AND VENUE

18.    This is a civil action over which original jurisdiction is vested in this Court by 28 U.S.C. §§ 1331 and 1343(a), and 29 U.S.C. § 626(f)(3).   This Court also is vested with exclusive subject matter jurisdiction over Plaintiffs' claims under ERISA pursuant to 29 U.S.C. § 1132(e)(1) and (f).

19.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims that are so related to claims within its original or exclusive jurisdiction that they form part of the same "case or controversy" under Article III of the United States Constitution.

20.    This Court has personal jurisdiction over the defendants pursuant to 29 U.S.C. § 1132(e)(2) as Allstate may be found in the Commonwealth of Pennsylvania and the other defendants have the requisite contacts with the United States and the Commonwealth of Pennsylvania.

21.    Venue is appropriate in the Eastern District of Pennsylvania under 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) as this action is brought in a judicial district in which a

defendant resides or may be found at the time the action was commenced.  Further, a number of the Plaintiffs reside in the Commonwealth of Pennsylvania, including in counties comprising the Eastern District of Pennsylvania, and the related *Romero* cases are pending in the Eastern District of Pennsylvania.  The unlawful employment and other practices alleged herein were committed in the Commonwealth of Pennsylvania and throughout the United States.

## THE PARTIES

A.    PLAINTIFFS

    1.    **General Allegations As To All Plaintiffs**

22.    Each of the Plaintiffs in this action was employed by Allstate as of November 1999 as an insurance agent under a R830 Allstate Agent Compensation Agreement ("R830 contract") or a R1500 Agent Employment Agreement ("R1500 contract") and had his/her classification by Allstate as an employee and his/her employment contract terminated by Allstate as part of the Program.  Plaintiffs who were employed under the R830 contract and R1500 contract at the time of the Program are referred to herein as "R830 Plaintiffs" and "R1500 Plaintiffs," respectively.

23.    All of the Plaintiffs—except for Stephen Dellapina, Mark DiVincenzo, Sandy K. Fabricatore, Christian G. Farley, Samuel E. Gillette, Gail Rogers Hibbler, D. Craig Mullen, Eric B. Sims, and Dennis Z. Smith—had attained the age of 40 prior to the termination of their employment contracts.  Plaintiffs age 40 or older are collectively referred to herein as the "ADEA Plaintiffs."

24.    At all times pertinent hereto, each of the Plaintiffs was an "employee" of Allstate within the meaning of 29 U.S.C. § 1002(6) and a vested "participant" in and/or "beneficiary" of the Agents Pension Plan within the meaning of 29 U.S.C. § 1002(7) and (8).

25.     As an integral part of the Program, Allstate presented Plaintiffs (along with substantially all of its employee agents in the United States) with the Release and instructed that the company would sever their employment and agency relationships entirely on or before June 30, 2000, if they did not sign and return it.  Allstate further instructed that employee agents who signed the Release could select from three so-called "options," two of which required the agent to convert to "Exclusive Agent independent contractor" status by entering into an "R3001S Allstate Exclusive Agent Agreement" or "R3001C Allstate Exclusive Agency Agreement" (collectively, the "R3001S contract"):

- "Option 1" or the "Forced Conversion Option":  enter into the R3001S contract and continue in the service of Allstate as a so-called "Exclusive Agent independent contractor" (the "Forced Conversion Option");

- "Option 2" or the "Forced Sale Option":  enter into the R3001S contract for a period of at least one month and then sell their entire book of business to a buyer approved by Allstate, before separating from the company's service; or

- "Option 3" or the "Forced Severance Option":  separate from the service of Allstate and receive what the company characterized as "enhanced" severance payments (under the "Agent Transition Severance Plan" adopted for the Program), totaling one year's pay, but paid out over a two-year period in 24 equal monthly installments.

Employee agents who did not sign the Release were instructed they only would be eligible to receive "base" severance payments (under the Agent Transition Severance Plan), based on the number of years of service provided to Allstate (up to a maximum of 13 weeks' pay) paid out in six (6) equal monthly installments.

26.     Approximately 400 Plaintiffs or other employee agents put Allstate on notice of allegations of class-wide age discrimination and/or retaliation by filing timely charges with the EEOC and/or equivalent state agencies.

27.     All administrative prerequisites for maintaining the ADEA Plaintiffs' ADEA claims have been met.  Any efforts by other ADEA Plaintiffs to exhaust administrative remedies would have been futile because the decision to terminate the ADEA Plaintiffs and virtually all other employee agents through the Program was an integral part of a company-wide program authorized at the highest level of Allstate's management, including Richard (Rick) Cohen and defendant Edward M. Liddy and because Allstate refused to resolve the issues raised by the ADEA Plaintiffs and others who did file timely charges.

28.     Upon termination of his or her employment contract through the Program, each of the Plaintiffs either continued to provide compensated service to Allstate as a so-called "Exclusive Agent independent contractor" under the Forced Conversion Option ("Converted Plaintiffs") or retired from the service of Allstate under the Forced Sale or Forced Severance Option ("Retired Plaintiffs").   Those Converted Plaintiffs and Retired Plaintiffs who had completed less than twenty (20) years of continuous service as employees at the time their R830 or R1500 contract was terminated under the Program are collectively referred to herein as "ERISA Converted Agent Plaintiffs" and "ERISA Retired Agent Plaintiffs," respectively.

29.     As of December 31, 1991, each of the Plaintiffs—except for Harold E. Baker, John R. Forrest, Francis H. Hanratty, Robert J. Killeen, Jean Minal, John Stout, George F. Twohig, and Joseph J. Viola Sr.— was under the age of 55.  These Plaintiffs who were under age 55 as of December 31, 1991, are collectively referred to herein as the "ERISA § 204(g)(2) Plaintiffs."

30.     Many former employee agents of Allstate have pursued all administrative remedies available to them under the Agents Pension Plan by writing to the Administrator protesting and appealing the decision of Allstate to deny them the full benefits to which they are and had been entitled under the Agents Pension Plan.  These efforts have been unsuccessful and any other efforts would be futile in view of the fact that in each case, the decision to deny such pension benefits was a policy decision authorized at the highest level of Allstate's management and was the product of careful planning and deliberation.

**2.     Specific Allegations As To Individual Plaintiffs**

31.     Plaintiff Thomas Abell ("Abell") was employed by Allstate for more than sixteen (16) years under an R1500 contract.  Abell signed the Release and left the service of Allstate under the Forced Sale Option.

32.     Plaintiff Abell was born in 1951 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

33.      Plaintiff Katharine Adams-Love (formerly Katharine Kroner) ("Adams-Love") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Plaintiff Adams-Love signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

34.     Plaintiff Adams-Love was born in 1957 and has at least thirty-nine (39) years of continuous service.   Plaintiff Adams-Love remains in the service of Allstate.

35.     Plaintiff John Aellen III ("Aellen") was employed by Allstate for more than ten (10) years under an R1500 contract.  Aellen signed the Release and left the service of Allstate under the Forced Sale Option.

36.     Plaintiff Aellen was born in 1953 and had at least ten (10) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

37.     Plaintiff Clyde Allen Jr. ("Allen") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Plaintiff Allen signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

38.     Plaintiff Allen was born in 1950 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2002.

39.     Plaintiff Joseph Alley ("Alley") was employed by Allstate for more than fifteen (15) years under an R830 contract.  Plaintiff Alley signed the release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

40.     Plaintiff Alley was born in 1952 and had at least twenty (20) years of continuous service at the time he retired from Allstate's service in 2004.

41.     Plaintiff Thomas Allison ("Allison") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Allison signed the release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

42.     Plaintiff Allison was born in 1953 and has at least thirty (30) years of continuous service.  Plaintiff Allison remains in the service of Allstate.

43.     Plaintiff Richard Altieri ("Altieri") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Altieri signed the Release and left the service of Allstate under the Forced Sale Option.

44.     Plaintiff Altieri was born in 1941 and had at least fifteen (15) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

45.     Plaintiff Andrew Anderson ("Anderson") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Anderson signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

COMPLAINT                                   - 45 -

46.    Plaintiff Anderson was born in 1954 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2007.

47.    Plaintiff Carl Angell ("Angell") was employed by Allstate for more than twenty-eight (28) years under an R830 contract.  Angell signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

48.    Plaintiff Angell was born in 1947 and had at least thirty-six (36) years of continuous service with Allstate at the time he retired from the company's service in 2007.

49.    Plaintiff Eugenia Annino is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Robert S. Annino.  Robert S. Annino was employed by Allstate for more than fourteen years under an R1500 contract.  He signed the Release and left the service of Allstate under the Forced Sale Option.

50.    Robert S. Annino was born in 1943 and had at least fourteen years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

51.    Plaintiff Daniel Anulare ("D. Anulare") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  D. Anulare signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

52.    Plaintiff D. Anulare was born in 1945 and had at least twenty-eight (28) years of continuous service with Allstate at the time he retired from the company's service in 2004.

53.    Plaintiff Linda A. Anulare ("L. Anulare") was employed by Allstate for approximately nineteen (19) years under an R830 contract.  L. Anulare signed the Release and left the service of Allstate under the Forced Sale Option.

54.    Plaintiff L. Anulare was born in 1956 and had approximately nineteen (19) years of continuous service as an agent with Allstate at the time she left the company's service in 2000 as a result of the Program.

COMPLAINT                                    - 46 -

55.    Plaintiff Bruce William Ashley ("Ashley") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Ashley signed the Release and left the service of Allstate under the Forced Severance Option.

56.    Plaintiff Ashley was born in 1958 and had at least thirteen (13) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

57.    Plaintiff Richard L. Aurand ("Aurand") was employed by Allstate for more than twenty (20) years under an R830 contract.  Aurand signed the Release and left the service of Allstate under the Forced Sale Option.

58.    Plaintiff Aurand was born in 1942 and had at least twenty (20) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

59.    Plaintiff Maxine Bachicha ("Bachicha") was employed by Allstate for more than ten (10) years under an R1500 contract.  Bachicha signed the Release and left the service of Allstate under the Forced Sale Option.

60.    Plaintiff Bachicha was born in 1951 and had at least ten (10) years of continuous service with Allstate at the time she left the company's service in 2000 as a result of the Program.

61.    Plaintiff Harold E. Baker ("Baker") was employed by Allstate for more than thirty-five (35) years under an R830 contract.  Baker signed the Release and left the service of Allstate under the Forced Sale Option.

62.    Plaintiff Baker was born in 1936 and had at least thirty-five (35) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

COMPLAINT                                            - 47 -

63.     Plaintiff Robert G. Barzelay ("Barzelay") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Barzelay signed the Release and left the service of Allstate under the Forced Sale Option.

64.     Plaintiff Barzelay was born in 1951 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

65.     Plaintiff Gary Baumgardner ("Baumgardner") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Baumgardner signed the Release and continued to provide services to Allstate under the Forced Conversion Program subsequent to June 30, 2000.

66.     Plaintiff Baumgardner was born in 1949 and had provided at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2009.

67.     Plaintiff James A. Beard ("Beard") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Beard signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

68.     Plaintiff Beard was born in 1943 and provided at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2010.

69.     Plaintiff Deborah S. Becker ("Becker") was employed by Allstate for more than twelve years under an R1500 contract.  Becker signed the Release and left the service of Allstate under the Forced Severance Option.

70.     Plaintiff Becker was born in 1951 and had at least twelve (12) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

71.     Plaintiff Richard C. Bennett ("Bennett") was employed by Allstate for more than twenty-six (26) years under an R830 or R1500 contract.  Bennett signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

72.     Plaintiff Bennett was born in 1948 and provided at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2008.

73.     Plaintiff Colin T. Bent ("Bent") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Bent signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

74.     Plaintiff Bent was born in 1948 and has provided at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2011.

75.     Plaintiff Vernon Bentley ("Bentley") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Bentley signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

76.     Plaintiff Bentley was born in 1943 and had provided at least thirty (30) years of continuous service to Allstate at the time he retired from the company's service in 2010.

77.     Plaintiff Harold Bernstein ("H. Bernstein") was employed by Allstate for more than ten (10) years under an R1500 contract.  H. Bernstein signed the Release and left the service of Allstate under the Forced Severance Option.

78.     Plaintiff H. Bernstein was born in 1943 and had provided at least ten (10) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

79.     Plaintiff H. Bernstein is also suing in his capacity as personal representative for the Estate of deceased former Allstate agent Sandra Bernstein.  Sandra Bernstein was employed

by Allstate for more than twenty-two (22) years under an R830 contract. She signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

80.    Sandra Bernstein was born in 1943 and had provided at least twenty-two (22) years of continuous service to Allstate at the time she retired from the company's service in 2000. .

81.    Plaintiff Montell Berry ("M. Berry") was employed by Allstate for more than twenty-one (21) years under an R830 contract. M. Berry signed the Release and left the service of Allstate under the Forced Sale Option.

82.    Plaintiff M. Berry was born in 1954 and had provided at least twenty-one (21) years of continuous service at the time he retired from the company's service in 2000 as a result of the Program.

83.    Plaintiff Wallace Berry ("W. Berry") was employed by Allstate for more than twenty-two (22) years under an R830 or R1500 contract. W. Berry signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

84.    Plaintiff W. Berry was born in 1947 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2003.

85.    Plaintiff Linda Glass Beucher ("Beucher") was employed by Allstate for more than seventeen (17) years under an R830 contract. Beucher signed the Release and continued to provide services to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

86.    Plaintiff Beucher was born in 1948 and has at least thirty-one (31) years of continuous service with Allstate. Beucher remains in the company's service.

COMPLAINT                                    - 50 -

87.    Plaintiff Stanley R. Binder ("Binder") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Binder signed the Release and left the service of Allstate under the Forced Sale Option.

88.    Plaintiff Binder was born in 1943 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

89.    Plaintiff Andrew Blanchette ("Blanchette") was employed by Allstate for more than twenty-nine (29) years under an R830 contract.  Blanchette signed the Release and left the service of Allstate under the Forced Sale Option.

90.    Plaintiff Blanchette was born in 1943 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service as a result of the Program.

91.    Plaintiff Craig Bock ("C. Bock") was employed by Allstate for more than twenty-four (24) years under an R830 contract.  C. Bock signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

92.    Plaintiff C. Bock was born in 1953 and had at least thirty-five (35) years of continuous service to Allstate at the time he retired from the company's service in 2010.

93.    Plaintiff Gary L. Bock ("G. Bock") was employed by Allstate for more than nineteen (19) years under an R830 or R1500 contract.  G. Bock signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

94.    Plaintiff G. Bock was born in 1959 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2007.

95.    Plaintiff David P. Bohan ("Bohan") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Bohan signed the Release and left the service of Allstate under the Forced Sale Option.

96.     Plaintiff Bohan was born in 1955 and had at least fifteen (15) years of continuous service to Allstate when he left the company's service as a result of the Program.

97.     Plaintiff Roland Boisis ("Boisis") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Boisis signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

98.     Plaintiff Boisis was born in 1944 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2002.

99.     Plaintiff Janice D. Bond ("Bond") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Bond signed the Release and left the company's service under the Forced Sale Option.

100.    Plaintiff Bond was born in 1949 and had at least fourteen (14) years of continuous service to Allstate at the time she left the company's service as a result of the Program.

101.    Plaintiff Dwight C. Bondy ("Bondy") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  Bondy signed the Release and left the company's service under the Forced Sale Option.

102.    Plaintiff Bondy was born in 1943 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service as a result of the Program.

103.    Plaintiff Robert Francis Bortell ("Bortell") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Bortell signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

104.    Plaintiff Bortell was born in 1952 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2002.

105.    Plaintiff Daniel Bossio ("Bossio") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  Bossio signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

106.    Plaintiff Bossio was born in 1952 and had at least thirty (30) years of continuous service to Allstate at the time he retired from the company's service in 2008.

107.    Plaintiff James Brachfeld ("J. Brachfeld") was employed by Allstate for more than thirty-two (32) years under an R830 contract.  J. Brachfeld signed the Release and left the company's service under the Forced Sale Option.

108.    Plaintiff Brachfeld was born in 1945 and had at least thirty-two (32) years of continuous service to Allstate at the time he retired from the company's services in 2000 as a result of the Program.

109.    Plaintiff Roberta L Brachfeld ("R. Brachfeld") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  R. Brachfeld signed the Release and left the company's service under the Forced Sale Option.

110.    Plaintiff R. Brachfeld was born in 1947 and had at least thirteen (13) years of continuous service to Allstate at the time she left the company's service as a result of the Program.

111.    Plaintiff Eugene Brandon ("Brandon") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Brandon signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

112.    Plaintiff Brandon was born in 1945 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2004.

113.    Plaintiff Michael J. Brantmeier ("Brantmeier") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Brantmeier signed the Release and

continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

114.    Plaintiff Brantmeier was born in 1946 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2003.

115.    Plaintiff Jay Broker ("Broker") was employed by Allstate for more than twenty-eight (28) years under an R1500 contract. Broker signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

116.    Plaintiff Broker was born in 1944 and had provided at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2001.

117.    Plaintiff Neal Swank Brooks ("Brooks") was employed by Allstate for more than twenty-eight (28) years under an R830 contract. Brooks signed the Release and left the service of Allstate under the Forced Sale Option.

118.    Plaintiff Brooks was born in 1942 and had at least twenty-eight (28) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

119.    Plaintiff Faye Brown (F. Brown) was employed by Allstate for more than sixteen (16) years under an R830 contract. F. Brown signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

120.    Plaintiff F. Brown was born in 1947 and had at least twenty-two (22) continuous years in the service of Allstate at the time she retired from the company's service in 2006.

121.    Plaintiff Lester Brown Sr. ("L. Brown") was employed by Allstate for more than twenty (20) years under an R830 contract. L. Brown signed the Release and left the company's service under the Forced Sale Option.

122.     Plaintiff L. Brown was born in 1943 and had provided at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service as a result of the Program.

123.     Plaintiff Richard A. Brown ("R. Brown") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  R. Brown signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

124.     Plaintiff R. Brown was born in 1952 and had provided at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2012.

125.     Plaintiff William Brown Jr. ("W. Brown") was employed by Allstate for more than seventeen (17) years under an R830 contract.  W. Brown signed the Release and left the company's service under the Forced Severance Option.

126.     Plaintiff W. Brown was born in 1944 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

127.     Plaintiff Richard A. Brownson ("Brownson") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Brownson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

128.     Plaintiff Brownson was born in 1944 and had at least thirty-six (36) years of continuous service to Allstate at the time he retired from the company's service in 2010.

129.     Plaintiff Charles R. Burns III ("Burns") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Burns signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

130.     Plaintiff Burns was born in 1952 and has at least thirty-two (32) years of continuous service to Allstate.  Burns remains in the company's service.

COMPLAINT                                      - 55 -

131.    Plaintiff Thomas Bushey ("Bushey") was employed by Allstate for more than twelve (12) years under an R1500 contract.  Bushey signed the Release and left the service of Allstate under the Forced Sale Option.

132.    Plaintiff Bushey was born in 1958 and had provided at least twelve (12) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

133.    Plaintiff David Ross Bussell ("Bussell") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Bussell signed the Release and left the company's service under the Forced Sale Option.

134.    Plaintiff Bussell was born in 1954 and had at least thirteen (13) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

135.    Plaintiff Gary F. Callaway ("G. F. Callaway") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  G. F. Callaway signed the Release and left the company's service under the Forced Sale Option.

136.    Plaintiff G. F. Callaway was born in 1960 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

137.    Plaintiff Georgiana Callaway ("G. Callaway") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  G. Callaway signed the Release and left the company's service under the Forced Sale Option.

138.    Plaintiff G. Callaway was born in 1956 and had at least fourteen (14) years of continuous service to Allstate at the time she left the company's service as a result of the Program.

COMPLAINT                                    - 56 -

139.    Plaintiff Albert J. Cannizzaro ("Cannizzaro") was employed by Allstate for more than thirty-three (33) years under an R830 contract. Cannizzaro signed the Release and left the company's service under the Forced Sale Option.

140.    Plaintiff Cannizzaro was born in 1944 and had at least thirty-three (33) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

141.    Plaintiff Lawrence J. Capouch ("Capouch") was employed by Allstate for more than thirty (30) years under an R830 or R1500 contract. Capouch signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

142.    Plaintiff Capouch was born in 1945 and had at least forty-one (41) years of continuous service to Allstate at the time he retired from the company's service in 2010.

143.    Plaintiff Richard E. Carter ("Carter") was employed by Allstate for more than twenty-three (23) years under an R830 contract. Carter signed the Release and left the Allstate's service under the Forced Sale Option.

144.    Plaintiff Carter was born in 1946 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service as a result of the Program.

145.    Plaintiff Victor M. Catarisano ("Catarisano") was employed by Allstate for more than twenty-seven (27) years under an R830 contract. Catarisano signed the Release and continued in Allstate's service under the Forced Conversion Option subsequent to June 30, 2000.

146.    Plaintiff Catarisano was born in 1946 and had at least thirty-seven (37) years of continuous service to Allstate at the time he retired from the company's service in 2010.

COMPLAINT                          - 57 -

147.    Plaintiff Portia M. Chambliss ("Chambliss") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Chambliss signed the Release and left the company's service under the Forced Sale Option.

148.    Plaintiff Chambliss was born in 1948 and had at least twenty-one (21) years of continuous service to Allstate at the time she retired from the company's service as a result of the Program.

149.    Plaintiff Mark D. Chase ("Chase") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Chase signed the Release and left the company's service under the Forced Sale Option.

150.    Plaintiff Chase was born in 1952 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

151.    Plaintiff Amy R. Cherrnay ("Cherrnay") was employed by Allstate for over seventeen (17) years under an R830 contract.  Cherrnay signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

152.    Plaintiff Cherrnay was born in 1954 and had at least eighteen (18) years of continuous service to Allstate at the time she left the company's service in 2001.

153.    Plaintiff Jimmy Chin ("Chin") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Chin signed the Release and left the company's service under the Forced Sale Option.

154.    Plaintiff Chin was born in 1954 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

155.    Plaintiff Don C. Christensen ("Christensen") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Christensen signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

156.    Plaintiff Christensen was born in 1940 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

157.    Plaintiff James M. Cirillo ("Cirillo") was employed by Allstate for more than twelve (12) years under an R1500 contract.  Cirillo signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

158.    Plaintiff Cirillo was born in 1954 and had at least eighteen (18) years of continuous service with Allstate at the time he left the company's service in 2006.

159.    Plaintiff Bruce W. Clotfelter ("Clotfelter") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Clotfelter signed the Release and left the company's service under the Forced Sale Option.

160.    Plaintiff Clotfelter was born in 1955 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

161.    Plaintiff Ira Cloud ("Cloud") was employed as an agent by Allstate for more than twenty-one (21) years under an R830 contract.  Cloud signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

162.    Plaintiff Cloud was born in 1949 and had at least twenty-three (23) years of continuous service to Allstate as an agent at the time he retired from the company's service in 2002.

163.    Plaintiff Milton C. Cobb ("Cobb") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Cobb signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

164.    Plaintiff Cobb was born in 1947 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2006.

165.    Plaintiff Mark Clemens Collier ("Collier") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Collier signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

166.    Plaintiff Collier was born in 1941 and had at least eighteen (18) years of continuous service to Allstate at the time he left the company's service in 2004.

167.    Plaintiff Wanda Collins-Smith (Collins-Smith) was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Collins-Smith signed the Release and left the service of Allstate under the Forced Sale Option.

168.    Plaintiff Collins-Smith was born in 1943 and had at least twenty-six (26) years of continuous service to Allstate at the time she retired from the company's service as a result of the Program.

169.    Plaintiff Joseph P. Conboy ("Conboy") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Conboy signed the Release and left the service of Allstate under the Forced Sale Option.

170.    Plaintiff Conboy was born in 1946 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

171.    Plaintiff Richard F. Cook ("Cook") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Cook signed the Release and left the service of Allstate under the Forced Sale Option.

172.    Plaintiff Cook was born in 1945 and had at least thirteen (13) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

173.    Plaintiff Janet M. Cooley ("Cooley") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  Cooley signed the Release and left the company's service under the Forced Sale Option.

174.    Plaintiff Cooley was born in 1942 and had at least twenty-two (22) years of continuous service to Allstate at the time she retired from the company's service as a result of the Program.

175.    Plaintiff James Reavis Cornett ("Cornett") was employed by Allstate for more than ten (10) years under an R1500 contract.  Cornett signed the Release and left the company's service under the Forced Sale Option.

176.    Plaintiff Cornett was born in 1947 and had at least ten (10) years of continuous service to Allstate as an agent at the time he left the company's service as a result of the Program.

177.    Plaintiff Charles E. Corry ("Corry") was employed by Allstate for more than twenty-five years (25) under an R830 contract.  Corry signed the Release and left the company's service under the Forced Sale Option.

178.    Plaintiff Corry was born in 1950 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

179.    Plaintiff Bruce R. Cralley ("Cralley") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Cralley signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

180.    Plaintiff Cralley was born in 1946 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2003.

181.    Plaintiff Jack J. Craparo, Jr. ("Craparo") was employed by Allstate for more than twelve years under an R1500 contract.  Craparo signed the Release and left the service of Allstate under the Forced Sale Option.

182.    Plaintiff Craparo was born in 1956 and had at least twelve (12) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

183.    Plaintiff Jay Andrew Crystal ("J.A. Crystal") was employed by Allstate for more than twenty (20) years under an R830 contract.  J.A. Crystal signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

184.    Plaintiff J.A. Crystal was born in 1958 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2006.

185.    Plaintiff J.A. Crystal is also suing in his capacity as personal representative for the Estate of deceased former Allstate agent Diane L. Crystal.  Diane L. Crystal was employed by Allstate for more than fifteen (15) years under an R830 contract.  She signed the Release and left the company's service under the Forced Sale contract.

186.    Diane D. Crystal was born in 1958 and had at least fifteen (15) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

187.    Plaintiff Lonnie Michael Curtis ("Curtis") was employed by Allstate for more than eighteen (18) years under an R830 contract. Curtis signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

188.    Plaintiff Curtis was born in 1956 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2010.

189.    Plaintiff Brent L. Danner ("Danner") was employed by Allstate for more than twenty-two (22) years under an R830 contract. Danner signed the Release and left the service of Allstate under the Forced Sale Option.

190.    Plaintiff Danner was born in 1947 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

191.    Plaintiff John Darwish ("Darwish") was employed by Allstate for more than twenty-three (23) years under an R830 contract. Darwish signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

192.    Plaintiff Darwish was born in 1946 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2002.

193.    Plaintiff Harold E. Daskam ("Daskam") was employed by Allstate for more than eighteen (18) years under an R830 contract. Daskam signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

194.    Plaintiff Daskam was born in 1947 and had at least thirty (30) years of continuous service to Allstate at the time he retired from the company's service in 2012.

195.    Plaintiff John Davenport ("Davenport") was employed by Allstate for more than seventeen (17) years under an R830 contract. Davenport signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

196.     Plaintiff Davenport was born in 1954 and has at least thirty-two (32) years of continuous service to Allstate.  Davenport remains in the company's service.

197.     Plaintiff Leslie K. Davidson ("L. Davison") was employed by Allstate for more than eighteen (18) years under an R830 contract.  L. Davidson signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

198.     Plaintiff L. Davison was born in 1959 and had at least twenty (20) years of continuous service to Allstate at the time she retired from the company's service in 2002.

199.     Plaintiff Zachariah Davidson III (Z. Davidson) was employed by Allstate for more than ten (10) years under an R1500 contract.  Z. Davidson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

200.     Plaintiff Z. Davidson was born in 1957 and has at least twenty-five (25) years of continuous service to Allstate.  Davidson remains in the company's service.

201.     Plaintiff Michael L. Davis ("Davis") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Davis signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

202.     Plaintiff Davis was born in 1952 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2007.

203.     Plaintiff Margaret Dean is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Robert T. Dean.  Robert T. Dean was employed by Allstate approximately thirty-four (34) years under an R830 or R1500 contract.  He signed the Release and left the service of Allstate under the Forced Sale Option.

204.    Robert T. Dean was born in 1943 and had at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service as a result of the Program.

205.    Plaintiff Stephen W. Dellapina ("Dellapina") was employed by Allstate for more than nine (9) years under an R1500 contract.  Dellapina signed the Release and left the service of Allstate under the Forced Sale Option.

206.    Plaintiff Dellapina was born in 1966 and had at least nine (9) years of continuous service to Allstate at the time he left the company's service as a result of the Program.

207.    Plaintiff Ernest Jack DeMonte ("DeMonte") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  DeMonte signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

208.    Plaintiff DeMonte was born in 1947 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2007.

209.    Plaintiff James L. DePizzo ("DePizzo) was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  DePizzo signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

210.    Plaintiff DePizzo was born in 1947 and had at least thirty-seven (37) years of continuous service to Allstate at the time he retired from the company's service in 2010.

211.    Plaintiff John Anthony Devito ("Devito") was employed by Allstate for more than fifteen (15) years under an R830 contract.  Devito signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

212.    Plaintiff Devito was born in 1948 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service in 2002.

213.    Plainitff Mark DiVincenzo ("DiVincenzo") was employed by Allstate for more than eleven (11) years under an R1500 contract.  DiVincenzo signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

214.    Plaintiff DiVincenzo was born in 1962 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2003.

215.    Plaintiff Gail D. Dickman ("Dickman") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Dickman signed Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

216.    Plaintiff Dickman was born in 1956 and had at least twenty (20) years of continuous service with Allstate at the time she retired from the company's service in 2002.

217.    Plaintiff Michael L. Doheny ("Doheny") was employed by Allstate for more than thirty-six (36) years under an R830 contract.  Doheny signed the Release and left the service of Allstate under the Forced Sale Option.

218.    Plaintiff Doheny was born in 1939 and had at least thirty-six (36) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

219.    Plaintiff Jeffery M. Dombeck ("Dombeck") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Dombeck signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

220.    Plaintiff Dombeck was born in 1947 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2007.

221.    Plaintiff Terrance P. Donoghue ("Donoghue") was employed by Allstate for more than twenty-nine (29) years under an R830 contract.  Donoghue signed the Release and left the service of Allstate under the Forced Sale Option.

222.    Plaintiff Donoghue was born in 1947 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service as a result of the Program.

223.    Plaintiff Valery Dorshimer (previously Valery Sandler) ("Dorshimer") was employed by Allstate for more than thirteen (13) years under an R1500 contract. Dorshimer signed the Release and left the service of Allstate under the Forced Sale Option.

224.    Plaintiff Dorshimer was born in 1959 and had at least thirteen (13) years of continuous service to Allstate at the time she left the company's service as a result of the Program.

225.    Plaintiff Joyce F. Douglas ("Douglas") was employed by Allstate for more than twelve (12) years under an R1500 contract. Douglas signed the Release and left the service of Allstate under the Forced Severance Option.

226.    Plaintiff Douglas was born in 1957 and had at least twelve (12) years of continuous service to Allstate at the time she left the company's service as a result of the Program.

227.    Plaintiff Rufus C. Dowell ("Dowell") was employed by Allstate for more than twenty-seven (27) years under an R830 contract. Dowell signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

228.    Plaintiff Dowell was born in 1946 and had at least thirty-two (32) years of continuous service to Allstate at the time he retired from the company's service in 2005.

229.    Plaintiff Susan P. Drapeau ("Drapeau") was employed by Allstate for more than seventeen (17) years under an R830 or R1500 contract. Drapeau signed the Release and left the service of Allstate under the Forced Severance Option.

230.    Plaintiff Drapeau was born in 1944 and had at least seventeen (17) years of continuous service to Allstate as an agent at the time she left the company's service in 2000 as a result of the Program.

231.    Plaintiff Richard L. Droe ("Droe") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Droe signed the Release and left the service of Allstate under the Forced Sale Option.

232.    Plaintiff Droe was born in 1949 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

233.    Plaintiff George F. Drummond ("Drummond") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  Drummond signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

234.    Plaintiff Drummond was born in 1949 and had at least thirty (30) years of continuous service to Allstate at the time he retired from the company's service in 2007.

235.    Plaintiff Walter Dubiel ("Dubiel") was employed by Allstate for more than twenty-five (25) years under an R830 contract.  Dubiel signed the Release and left the service of Allstate under the Forced Sale Option.

236.    Plaintiff Dubiel was born in 1945 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

237.    Plaintiff Thomas R. Duran ("Duran") was employed by Allstate for more than sixteen years under an R1500 contract.  Duran signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

COMPLAINT                                    - 68 -

238.    Plaintiff Duran was born in 1947 and had at least twenty-six years of continuous service to Allstate at the time he retired from the company's service in 2010.

239.    Plaintiff Dennis R. Dyke ("Dyke") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  Dyke signed the Release and left the service of Allstate under the Forced Sale Option.

240.    Plaintiff Dyke was born in 1948 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

241.    Plaintiff Larry R. Dykstra ("Dykstra") was employed by Allstate for more than ten (10) years under an R1500 contract.  Dykstra signed the Release and left the service of Allstate under the Forced Sale Option.

242.    Plaintiff Dykstra was born in 1948 and had at least ten (10) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

243.    Plaintiff Richard Morrison Earl, Jr. ("Earl") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Earl signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

244.    Plaintiff Earl was born in 1950 and had at least twenty-eight (28) years of continuous service to Allstate at the time he retired from the company's service in 2002.

245.    Plaintiff Ronald F. Eaton ("Eaton") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Eaton signed the Release and left the company's service under the Forced Sale Option.

246.    Plaintiff Eaton was born in 1946 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

COMPLAINT                              - 69 -

247.    Plaintiff Michael T. Economos ("Economos") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Economos signed the Release and left the service of Allstate under the Forced Sale Option.

248.    Plaintiff Economos was born in 1959 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

249.    Plaintiff Ronald R. Edwards ("Edwards") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Edwards signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

250.    Plaintiff Edwards was born in 1950 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2010.

251.    Plaintiff Richard F. Eirich ("Eirich") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Eirich signed the Release and left the company's service under the Forced Sale Option.

252.    Plaintiff Eirich was born in 1952 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

253.    Plaintiff Roslyn K. Eisenstark ("Eisenstark") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Eisenstark signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

254.    Plaintiff Eisenstark was born in 1945 and had at least twenty-five (25) years of continuous service to Allstate at the time she retired from the company's service in 2011.

255.    Plaintiff Bruce Engert ("Engert") was employed by Allstate for more than thirty-three (33) years under an R830 contract.  Engert signed the Release and left the company's service under the Forced Sale Option.

256.    Plaintiff Engert was born in 1944 and had at least thirty-three (33) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

257.    Plaintiff Jane Eschrich-Walsh ("Eschrich-Walsh") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Eschrich-Walsh signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

258.    Plaintiff Eschrich-Walsh was born in 1958 and had at least thirty-one (31) years of continuous service to Allstate at the time she retired from the company's service in 2014.

259.    Plaintiff William F. Estes ("Estes") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Estes signed the Release and left the company's service under the Forced Sale Option.

260.    Plaintiff Estes was born in 1944 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

261.    Plaintiff Steven Evans ("Evans") was employed by Allstate for more than twenty-eight (28) years under an R830 contract.  Evans signed the Release and continued in the company's service under the Forced Conversion Option subsequent to June 30, 2000.

262.    Plaintiff Evans was born in 1947 and had at least forty (40) years of continuous service to Allstate at the time he retired from the company's service in 2012.

263.    Plaintiff Sandy K. Fabricatore ("Fabricatore") was employed by Allstate for more than ten (10) years under an R1500 contract.  Fabricatore signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

264.    Fabricatore was born in 1962 and had at least twenty (20) years of continuous service to Allstate at the time she retired in 2009.

265.    Plaintiff Joseph Falconi III ("Falconi") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  Falconi signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

266.    Plaintiff Falconi was born in 1949 and had at least thirty-three (33) years of continuous service to Allstate at the time he retired from the company's service in 2011.

267.    Plaintiff Christian G. Farley ("Farley") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Farley signed the Release and left the service of Allstate under the Forced Severance Option.

268.    Plaintiff Farley was born in 1964 and had at least eleven (11) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

269.    Plaintiff Sheila Farmer ("Farmer") was employed by Allstate for more than ten (10) years under an R1500 contract.  Farmer signed the Release and left the service of Allstate under the Forced Sale Option.

270.    Plaintiff Farmer was born in 1956 and had at least ten (10) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

271.    Plaintiff Curtis G. Farrar ("Farrar") was employed by Allstate for more than twenty-five (25) years under an R830 contract.  Farrar signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

272.    Plaintiff Farrar was born in 1952 and had at least twenty-seven (27) years of continuous service to Allstate at the time he retired from the company's service in 2002.

273.    Plaintiff Ralph V. Faulk ("Faulk") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Faulk signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

274.    Plaintiff Faulk was born in 1956 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2007.

275.    Plaintiff Philip Dean Feisal ("Feisal") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Feisal signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

276.    Plaintiff Feisal was born in 1957 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2003.

277.    Plaintiff Carl E. Fielder ("Fielder") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Fielder signed the Release and left the service of Allstate under the Forced Sale Option.

278.    Plaintiff Fielder was born in 1953 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

279.    Plaintiff Doris Jean Fields ("Fields") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Fields signed the Release and left the service of Allstate under the Forced Sale Option.

280.    Plaintiff Fields was born in 1949 and had at least eighteen (18) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

281.    Plaintiff Larry D. Finley ("Finley") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Finley signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

282.    Plaintiff Finley was born in 1954 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2008.

283.    Plaintiff William J. Flood ("Flood") was employed by Allstate for more than thirty-one (31) years under an R830 contract.  Flood signed the Release and left the service of Allstate under the Forced Severance Option.

284.    Plaintiff Flood was born in 1943 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

285.    Plaintiff Gerald L. Flores ("Flores") was employed by Allstate for more than twenty-eight (28) years under an R830 contract.  Flores signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

286.    Plaintiff Flores was born in 1943 and had at least thirty-six (36) years of continuous service to Allstate at the time he retired from the company's service in 2008.

287.    Plaintiff Eric A. Ford ("Ford") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Ford signed the Release and left the service of Allstate under the Forced Sale Option.

288.    Plaintiff Ford was born in 1950 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

289.    Plaintiff John R. Forrest ("Forrest") was employed by Allstate for more than thirty-four (34) years under an R830 contract.  Forrest signed the Release and left the service of Allstate under the Forced Sale Option.

290.    Plaintiff Forrest was born in 1932 and had at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

291.    Plaintiff Allen Foster ("Foster") was employed by Allstate for over thirty-one (31) years under an R830 contract.  Foster signed the Release and left the service of Allstate under the Forced Sale Option.

292.    Plaintiff Foster was born in 1945 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

293.    Plaintiff Robert G. Franz ("Franz") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Franz signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

294.    Plaintiff Franz was born in 1960 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2002.

295.    Plaintiff Boss R. Fries III ("Fries") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Fries signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

296.    Plaintiff Fries was born in 1955 and has at least thirty-five (35) years of continuous service to Allstate.  Fries remains in the company's service.

297.    Plaintiff Jodene S. Gardner ("Gardner") was employed by Allstate for more than twenty (20) years under an R830 contract.  Gardner signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

298.    Plaintiff Gardner was born in 1949 and had at least twenty-nine (29) years of continuous service to Allstate at the time she retired from the company's service in 2009.

299.    Plaintiff Robert E. Gary ("Gary") was employed by Allstate for more than twelve (12) years under an R1500 contract.  Gary signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

COMPLAINT                                    - 75 -

300.    Plaintiff Gary was born in 1949 and had at least twenty-four (24) years of continuous service to Allstate at the time he retired from the company's service in 2011.

301.    Plaintiff Larny O. Gentry ("Gentry") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Gentry signed the Release and left the service of Allstate under the Forced Sale Option.

302.    Plaintiff Gentry was born in 1945 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

303.    Plaintiff Samuel Gillette (formerly known as Samuel Gillott) ("Gillette") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Gillette signed the Release and left the service of Allstate under the Forced Sale Option.

304.    Plaintiff Gillette was born in 1961 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

305.    Plaintiff Gary J. Goelz ("Goelz") was employed by Allstate for more than twenty-one (21) years under an R830 or R1500 contract.  Goelz signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

306.    Plaintiff Goelz was born in 1951 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2004.

307.    Plaintiff Randolph Goodwin Jr. ("Goodwin") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Goodwin signed the Release and left the service of Allstate under the Forced Sale Option.

308.    Plaintiff Goodwin was born in 1952 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

COMPLAINT                                    - 76 -

309.     Plaintiff James A. Grady ("Grady") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Grady signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

310.     Plaintiff Grady was born in 1947 and had at least sixteen (16) years of continuous service at the time he left the company's service in 2002.

311.     Plaintiff William D. Greene ("Greene") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Greene signed the Release and left the service of Allstate under the Forced Sale Option.

312.     Plaintiff Greene was born in 1952 and had at least eighteen (18) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

313.     Plaintiff Sandra M. Guthrie ("Guthrie") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  Guthrie signed the Release and left the service of Allstate under the Forced Sale Option.

314.     Plaintiff Guthrie was born in 1950 and had at least twenty-three (23) years of continuous service to Allstate as an agent at the time she retired from the company's service in 2000 as a result of the Program.

315.     Plaintiff Gerald W. Gutzeit ("Gutzeit") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Gutzeit signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

316.     Plaintiff Gutzeit was born in 1958 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2007.

317.     Plaintiff Franklin P. Hall ("Hall") was employed by Allstate for more than thirty-one (31) years under an R830 or R1500 contract.  Hall signed the Release and left the service of Allstate under the Forced Sale Option.

318.     Plaintiff Hall was born in 1943 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

319.     Plaintiff Brenda C. Hammond ("Hammond") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Hammond signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

320.     Plaintiff Hammond was born in 1946 and had at least thirteen (13) years of continuous service to Allstate at the time she retired from the company's service.

321.     Plaintiff Loretta Causey Hannon ("Hannon") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Hannon signed the Release and left the service of Allstate under the Forced Sale Option.

322.     Plaintiff Hannon was born in 1939 and had at least sixteen (16) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

323.     Plaintiff Francis H. Hanratty ("Hanratty") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Hanratty signed the Release and left the service of Allstate under the Forced Sale Option.

324.     Plaintiff Hanratty was born in 1936 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

325.    Plaintiff Jan E. Hanson ("Hanson") was employed by Allstate for more than ten (10) years under an R1500 contract.  Hanson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

326.    Plaintiff Hanson was born in 1954 and has at least twenty-four (24) years of continuous service to Allstate.  Hanson remains in the company's service.

327.    Plaintiff Christopher A. Hardesty ("Hardesty") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Hardesty signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

328.    Plaintiff Hardesty was born in 1952 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2001.

329.    Plaintiff Ronald C. Harrison Jr. ("Harrison") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Harrison signed the Release and left the service of Allstate under the Forced Sale Option.

330.    Plaintiff Harrison was born in 1952 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

331.    Plaintiff John W. Heasley ("Heasley") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Heasley signed the Release and left the service of Allstate under the Forced Sale Option.

332.    Plaintiff Heasley was born in 1951 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

COMPLAINT                                - 79 -

333.    Plaintiff Coni Heidle ("Heidle") was employed by Allstate for more than nineteen (19) years under an R830 contract. Heidle signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

334.    Plaintiff Heidle was born in 1952 and had at least thirty (30) years of continuous service to Allstate at the time she retired from the company's service in 2011.

335.    Plaintiff Darlene J. Heinen ("Heinen") was employed by Allstate for more than thirteen (13) years under an R1500 contract. Heinen signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

336.    Plaintiff Heinen was born in 1946 and had at least twenty (20) years of continuous service to Allstate at the time she retired from the company's service in 2007.

337.    Plaintiff Gerald W. Heinen ("G. Heinen") was employed by Allstate for more than thirty-one (31) years under an R830 contract. G. Heinen signed the Release and left the service of Allstate under the Forced Sale Option.

338.    Plaintiff G. Heinen was born in 1944 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

339.    Plaintiff Robert Helsel ("Helsel") was employed by Allstate for more than fourteen (14) years under an R1500 contract. Helsel signed the Release and left the service of Allstate under the Forced Sale Option.

340.    Plaintiff Helsel was born in 1944 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

341.    Plaintiff Louis J. Hemphill ("Hemphill") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Hemphill signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

342.    Plaintiff Hemphill was born in 1953 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2012.

343.    Plaintiff Gail Rogers Hibbler ("Hibbler") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Hibbler signed the Release and left the service of Allstate under the Forced Severance Option.

344.    Plaintiff Hibbler was born in 1963 and had at least thirteen (13) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

345.    Plaintiff Larry W. Hice ("Hice") was employed by Allstate for more than nineteen (19) years under an R830 or R1500 contract.  Hice signed the Release and left the service of Allstate under the Forced Sale Option.

346.    Plaintiff Hice was born in 1945 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

347.    Plaintiff Danny R. Higdon ("Higdon") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  Higdon signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

348.    Plaintiff Higdon was born in 1954 and had at least thirty-nine (39) years of continuous service to Allstate as an agent at the time he retired from the company's service in 2012.

349.    Plaintiff Patricia A. Hill ("P. Hill") was employed by Allstate for more than eleven (11) years under an R1500 contract.  P. Hill signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

350.    Plaintiff P. Hill was born in 1951 and had at least twenty (20) years of continuous service to Allstate at the time she retired from the company's service in 2009.

351.    Plaintiff Richard D. Hill ("R. Hill") was employed by Allstate for more than ten (10) years under an R1500 contract.  R. Hill signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

352.    Plaintiff R. Hill was born in 1951 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2005.

353.    Plaintiff James E. Hillan ("Hillan") was employed by Allstate for more than nineteen (19) years under an R830 or R1500 contract.  Hillan signed the Release and left the service of Allstate under the Forced Sale Option.

354.    Plaintiff Hillan was born in 1943 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

355.    Plaintiff Leanne Hinkle (formerly McCurley) ("Hinkle") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Plaintiff Hinkle signed the Release and left the service of Allstate under the Forced Severance Option.

356.    Plaintiff Hinkle was born in 1948 and had at least fifteen (15) years of continuous service with Allstate at the time she left the company's service in 2000 as a result of the Program.

357.    Plaintiff John Hlohinec ("Hlohinec") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Hlohinec signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

358.    Plaintiff Hlohinec was born in 1955 and had at least eighteen (18) years of continuous service to Allstate at the time he left the company's service in 2004.

359.    Plaintiff Jimmy D. Hock ("Hock") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Hock signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

360.    Plaintiff Hock was born in 1941 and had at least nineteen (19) years of continuous service to Allstate at the time he retired from the company's service in 2003.

361.    Plaintiff Sandra Inman (previously Sandra L. Holloway) ("Inman") was employed by Allstate for over ten (10) years under an R1500 contract.  Inman signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

362.    Plaintiff Inman was born in 1956 and had at least thirteen (13) years of continuous service to Allstate at the time she retired from the company's service in 2003.

363.    Plaintiff Charmain A. Horvath ("Horvath") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Horvath signed the Release and left the service of Allstate under the Forced Sale Option.

364.    Plaintiff Horvath was born in 1952 and had at least thirteen (13) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

365.    Plaintiff Daniel P. Hourihane ("Hourihane") was employed by Allstate for more than sixteen (16) years under an R830 contract. Hourihane signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

366.    Plaintiff Hourihane was born in 1941 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2010.

367.    Plaintiff Steven H. Howell ("Howell") was employed by Allstate for more than seventeen (17) years under an R830 contract. Howell signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

368.    Plaintiff Howell was born in 1946 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's servie in 2005.

369.    Plaintiff George A. Huye ("Huye") was employed by Allstate for more than twelve (12) years under an R1500 contract. Huye signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

370.    Plaintiff Huye was born in 1954 and has at least twenty-six (26) years of continuous service to Allstate. Huye remains in the company's service.

371.    Plaintiff John A. Iapoce ("Iapoce") was employed by Allstate for more than thirty-four (34) years under an R830 contract. Iapoce signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

372.    Plaintiff Iapoce was born in 1940 and had at least thirty-six (36) years of continuous service to Allstate at the time he retired from the company's service in 2002.

373.    Plaintiff Sandra Inman (previously Sandra L. Holloway) ("Inman") was employed by Allstate for over ten (10) years under an R1500 contract. Inman signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

374.    Plaintiff Inman was born in 1956 and had at least thirteen (13) years of continuous service to Allstate at the time she left the company's service in 2003.

375.    Plaintiff Charles S. Jackson ("C. Jackson") was employed by Allstate for more than thirty-two (32) years under an R830 contract.  C. Jackson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

376.    Plaintiff C. Jackson was born in 1943 and had at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2002.

377.    Plaintiff Rick Jahns ("R. Jahns") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  R. Jahns signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

378.    Plaintiff R. Jahns was born in 1946 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2002.

379.    Plaintiff Robert Jayson ("Jayson") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Jayson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

380.    Plaintiff Jayson was born in 1946 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2005.

381.    Plaintiff Leland T. Jelinek ("Jelinek") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Jelinek signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

382.    Plaintiff Jelinek was born in 1948 and has at least twenty-five (25) years of continuous service to Allstate.  Jelinek remains in the company's service.

383.    Plaintiff Charles ("Chuck") Johnson ("C. Johnson") was employed by Allstate for more than nineteen (19) years under an R830 contract.  C. Johnson signed the Release and

COMPLAINT                                   - 85 -

continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

384.    Plaintiff C. Johnson was born in 1946 and had at least thirty (30) years of continuous service to Allstate at the time he retired from the company's service in 2011.

385.    Plaintiff Reece Thomas Johnson ("R. Johnson") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  R. Johnson signed the Release and left the service of Allstate under the Forced Sale Option.

386.    Plaintiff R. Johnson was born in 1947 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

387.    Plaintiff Larry Dan Jones ("L. Jones") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  L. Jones signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000..

388.    Plaintiff L. Jones was born in 1944 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2002 as a result of the Program.

389.    Plaintiff Ronald R. Jones ("R. Jones") was employed by Allstate for more than nineteen (19) years under an R830 contract.  R. Jones signed the Release and left the service of Allstate under the Forced Sale Option.

390.    Plaintiff R. Jones was born in 1949 and had at least nineteen (19) years of service to Allstate at the time he left the company's service in 2000 as a result of the Program.

391.    Plaintiff Karen Juneman is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Roger Michael Juneman.  Roger Juneman was employed by Allstate for more than twenty-nine (29) years under an R830 or R1500 contract.

COMPLAINT                                    - 86 -

He signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

392.    Roger Juneman was born in 1941 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2002.

393.    Plaintiff David N. Kapec ("Kapec") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Kapec signed the Release and left the service of Allstate under the Forced Sale Option.

394.    Plaintiff Kapec was born in 1954 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

395.    Plaintiff Kathleen Kenney ("Kenney") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Kenney signed the Release and left the service of Allstate under the Forced Sale Option.

396.     Plaintiff Kenney was born in 1954 and had at least eighteen (18) years of continuous service with Allstate at the time she left the company's service in 2000 as a result of the Program.

397.    Plaintiff Robert J. Killeen ("Killeen") was employed by Allstate for more than thirty-six (36) years under an R830 contract.  Plaintiff Killeen signed the Release and left the service of Allstate under the Forced Sale Option.

398.    Plaintiff Killeen was born in 1934 and had at least thirty-six (36) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

399.    Plaintiff Robert E. Kimble ("Kimble") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Kimble signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

COMPLAINT                                    - 87 -

400.    Plaintiff Kimble was born in 1958 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2010.

401.    Plaintiff Thomas E. Krohner ("Krohner") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  Plaintiff Krohner signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

402.    Plaintiff Krohner was born in 1945 and had at least forty-three (43) years of continuous service with Allstate at the time he retired from the company's service in 2010.

403.    Plaintiff Maria Krumm is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Gary Krumm.  Gary Krumm was employed by Allstate for more than twenty-two (22) years under an R830 contract.  He signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

404.    Gary Krumm was born in 1943 and had at least thirty-one (31) years of continuous service with Allstate at the time he retired from the company's service in 2008.

405.    Plaintiff Amos Kuykendoll ("Kuykendoll") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Plaintiff Kuykendoll signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

406.    Plaintiff Kuykendoll was born in 1946 and had at least thirteen (13) years of continuous service with Allstate at the time he left the company's service in 2001

407.    Plaintiff William Landmark ("Landmark") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Landmark signed the Release and

continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

408.    Plaintiff Landmark was born in 1954 and had at least twenty-seven (27) years of continuous service with Allstate at the time he retired from the company's service in 2010.

409.    Plaintiff Gregory Lane ("Lane") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Lane signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

410.    Plaintiff Lane was born in 1952 and had at least eighteen (18) years of continuous service with Allstate at the time he left the company's service in 2002.

411.    Plaintiff Bruce Larrabee ("Larrabee") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Plaintiff Larrabee signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

412.    Plaintiff Larrabee was born in 1948 and had at least twenty-eight (28) years of continuous service with Allstate at the time he retired from the company's service in 2011.

413.    Plaintiff Jennifer Latham is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Charles Latham.  Charles Latham was employed by Allstate for more than thirty-one (31) years under an R830 contract.  Plaintiff Latham signed the Release and left the service of Allstate under the Forced Sale Option.

414.    Charles Latham was born in 1944 and had at least thirty-one (31) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

415.     Plaintiff Carol LeBlanc ("LeBlanc") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  LeBlanc signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

416.     Plaintiff LeBlanc was born in 1947 and had at least twenty-seven (27) years of continuous service to Allstate at the time she retired from the company's service in 2002.

417.     Plaintiff Joseph Lee ("Lee") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff Lee signed the Release and left the service of Allstate under the Forced Severance Option.

418.      Plaintiff Lee was born in 1953 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

419.     Plaintiff Sharon E. Libbra ("S. Libbra") was employed by Allstate for more than twelve (12) years under an R1500 contract.  Plaintiff S. Libbra signed the Release and left the service of Allstate under the Forced Sale Option.

420.     Plaintiff S. Libbra was born in 1952 and had at least twelve (12) years of continuous service with Allstate at the time she left the company's service in 2000 as a result of the Program.

421.     Plaintiff Terry Libbra ("T. Libbra") was employed by Allstate for more than fifteen (15) years under an R830 contract.  Plaintiff T. Libbra signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

422.     Plaintiff T. Libbra was born in 1958 and had at least twenty-seven (27) years of continuous service with Allstate at the time he retired from the company's service in 2011.

423.     Plaintiff Janet Lindsay is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Ronald Lindsay.  Ronald Lindsay was employed by

Allstate for more than nineteen (19) years under an R830 contract.  He signed the Release and left the service of Allstate under the Forced Sale Option.

424.    Ronald Lindsay was born in 1939 and had at least nineteen (19) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

425.    Plaintiff James Longman ("Longman") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Longman signed the Release and left the service of Allstate under the Forced Sale Option.

426.    Plaintiff Longman was born in 1946 and had at least eighteen (18) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

427.    Plaintiff John Lucas ("Lucas") was employed by Allstate for more than thirty-one (31) years under an R830 contract.  Plaintiff Lucas signed the Release and left the service of Allstate under the Forced Sale Option.

428.    Plaintiff Lucas was born in 1937 and had at least thirty-one (31) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

429.    Plaintiff James E. Lynch ("Lynch") was employed by Allstate for more than thirty-three (33) years under an R830 or R1500 contract.  Plaintiff Lynch signed the Release and left the service of Allstate under the Forced Sale Option.

430.    Plaintiff Lynch was born in 1938 and had at least thirty-three (33) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

COMPLAINT                                  - 91 -

431.    Plaintiff Michael Macisco ("Macisco") was employed by Allstate for more than seventeen (17) years under the R830 contract. Plaintiff Macisco signed the Release and left the service of Allstate under the Forced Sale Option.

432.    Plaintiff Macisco was born in 1945 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service in 2000.

433.    Plaintiff John G. Malek ("Malek") was employed by Allstate for more than eleven (11) years under an R1500 contract. Plaintiff Malek signed the Release and left the service of Allstate under the Forced Sale Option.

434.    Plaintiff Malek was born in 1947 and had at least eleven (11) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

435.    Plaintiff Steven Mallory ("Mallory") was employed by Allstate for more than sixteen (16) years under an R830 contract. Plaintiff Mallory signed the Release and left the service of Allstate under the Forced Sale Option.

436.    Plaintiff Mallory was born in 1951 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

437.    Plaintiff John Malloy ("Malloy") was employed by Allstate for more than fourteen (14) years under an R1500 contract. Plaintiff Malloy signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

438.    Plaintiff Malloy was born in 1952 and had at least twenty-one (21) years of continuous service with Allstate at the time he retired from the company's service in 2006.

439.    Plaintiff Patricia Marazo was employed by Allstate for more than seventeen (17) years under an R830 contract. Plaintiff Marazo signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

COMPLAINT                                    - 92 -

440.    Plaintiff Marazo was born in 1944 and has at least twenty-seven (27) years of continuous service to Allstate at the time she retired from the company's service in 2010.

441.    Plaintiff Nicholas Marinos ("Marinos") was employed by Allstate for more than ten (10) years under an R1500 contract.  Plaintiff Marinos signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

442.    Plaintiff Marinos was born in 1952 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2006.

443.    Plaintiff Eugene Maroney ("Maroney") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Maroney signed the Release and left the service of Allstate under the Forced Severance Option.

444.    Plaintiff Maroney was born in 1940 and had at least eighteen (18) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

445.    Plaintiff John Marsh Jr. ("Marsh") was employed by Allstate for more than fifteen (15) years under an R830 contract.  Plaintiff Marsh signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

446.    Plaintiff Marsh was born in 1948 and had at least seventeen (17) years of continuous service with Allstate at the time he left the company's service in 2002.

447.    Plaintiff Richard Masi ("Masi") was employed by Allstate for more than twenty-five (25) years under an R830 contract.  Plaintiff Masi signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

448.    Plaintiff Masi was born in 1952 and had at least twenty-five (25) years of continuous service with Allstate at the time he retired from the company's service in 2010.

449.    Plaintiff Glen Mason ("Mason") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Plaintiff Mason signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

450.    Plaintiff Mason was born in 1956 and had at least twenty-four (24) years of continuous service with Allstate at the time he retired from the company's service in 2011.

451.    Plaintiff Scott Mattingly ("Mattingly") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Mason signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

452.    Plaintiff Mattingly was born in 1955 and had at least twenty-eight (28) years of continuous service with Allstate at the time he retired from the company's service in 2011.

453.    Plaintiff Thomas Matyjasik ("Matyjasik") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  Plaintiff Matyjasik signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

454.    Plaintiff Matyjasik was born in 1944 and had at least thirty-six (36) years of continuous service with Allstate at the time he retired from the company's service in 2009.

455.    Plaintiff Thomas McCall ("McCall") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff McCall signed the Release and continued in the service of Allstate under the Forced Conversion Option.

456.    Plaintiff McCall was born in 1954 and had at seventeen (17) years of continuous service with Allstate at the time he left the company's service in 2001.

457.    Plaintiff Rudolph McClinon, Jr. ("McClinon") was employed by Allstate for more than sixteen (16) years under an R1500 contract.  Plaintiff McClinon signed the Release and left the service of Allstate under the Forced Sale Option.

458.    Plaintiff McClinon was born in 1952 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

459.    Plaintiff Casey McCoy ("McCoy") was employed by Allstate for approximately twenty (20) years under an R1500 contact.  Plaintiff McCoy signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

460.    Plaintiff McCoy was born in 1949 and had at least twenty-two (22) years of continuous service to Allstate at the time he left the company's service in 2002..

461.    Plaintiff Sherry McDonald ("McDonald") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Plaintiff McDonald signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

462.    Plaintiff McDonald was born in 1954 and has at least twenty-three (23) years of continuous service at the time she retired and/or left the company's service in 2010.

463.     Plaintiff Thomas McEvans, III ("McEvans") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff McEvans signed the Release and left the service of Allstate under the Forced Severance Option.

464.    Plaintiff McEvans was born in 1937 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

465.     Plaintiff James McGuire ("McGuire") was employed by Allstate for more than twenty (20) years under an R830 contract.  Plaintiff McGuire signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

466.    Plaintiff McGuire was born in 1949 and had at least twenty-three (23) years of continuous service with Allstate at the time he retired from the company's service in 2003.

467.    Plaintiff John F. McKenzie ("McKenzie") was employed by Allstate for more than ten (10) years under an R1500 contract.  McKenzie signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

468.    Plaintiff McKenzie was born in 1943 and had at least seventeen (17) years of continuous service to Allstate at the time he retired from the company's service in 2007.

469.    Plaintiff Anthony McMurray ("McMurray") was employed by Allstate for more than thirty-six (36) years under an R830 contract.  McMurray signed the Release and left the service of Allstate under the Forced Sale Option.

470.     Plaintiff McMurray was born in 1941 and had at least thirty-six (36) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

471.    Plaintiff Peter McVittie ("McVittie") was employed by Allstate for more than thirty (30) years under an R830 contract.  Plaintiff McVittie signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

472.    Plaintiff McVittie was born in 1946 and had at least forty-one (41) years of continuous service to Allstate at the time he retired from the company's service in 2011.

473.    Plaintiff Jerrel L. Mead ("Mead") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Mead signed the Release and left the service of Allstate under the Forced Sale Option.

474.    Plaintiff Mead was born in 1959 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

475.    Plaintiff Mary Mendoza ("Mendoza") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Plaintiff Mendoza signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

476.    Plaintiff Mendoza was born in 1943 and has at least twenty-five (25) years of continuous service.   Plaintiff Mendoza remains in the service of Allstate.

477.    Plaintiff Orton W. Messenger ("Messenger") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Plaintiff Messenger signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

478.    Plaintiff Messenger was born in 1954 and had at least nineteen (19) years of continuous service with Allstate at the time he left the company's service in 2006.

479.    Plaintiff Susan Messina ("Messina") was employed by Allstate for more than twenty (20) years under an R830 contract.  Plaintiff Messina signed the Release and left the service of Allstate under the Forced Sale Option.

480.    Plaintiff Messina was born in 1948 and had at least twenty (20) years of continuous service with Allstate at the time she retired from the company's service in 2000 as a result of the Program.

481.    Plaintiff Philip Metcalfe ("Metcalfe") was employed by Allstate for more than eighteen (18) years under an R830 or R1500 contract.  Plaintiff Metcalfe signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

482.    Plaintiff Metcalfe was born in 1942 and had at least twenty-five (25) years of continuous service with Allstate at the time he retired from the company's service in 2008.

483.     Plaintiff Ronald Metzger ("Metzger") was employed by Allstate for more than twenty-four (24) years under an R830 contract. Plaintiff Metzger signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

484.     Plaintiff Metzger was born in 1947 and had at least thirty-two (32) years of continuous service with Allstate at the time he retired from the company's service in 2009.

485.     Plaintiff Michael Meyer ("Meyer") was employed by Allstate for more than twenty-six (26) years under an R830 contract. Plaintiff Meyer signed the Release and left the service of Allstate under the Forced Sale Option.

486.     Plaintiff Meyer was born in 1950 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

487.     Plaintiff Arthur Miles ("Miles") was employed by Allstate for more than eighteen (18) years under an R830 or R1500 contract. Plaintiff Miles signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

488.     Plaintiff Miles was born in 1949 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2008.

489.     Plaintiff Frank Miller, Jr. ("F. Miller") was employed by Allstate for more than ten (10) years under an R1500 contract. Plaintiff F. Miller signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

490.     Plaintiff F. Miller was born in 1951 and had at least thirteen (13) years of continuous service with Allstate at the time he left the company's service in 2003.

491.    Plaintiff James Thomas Miller ("J. Miller") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff J. Miller signed the Release and left the service of Allstate under the Forced Severance Option.

492.    Plaintiff J. Miller was born in 1946 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

493.    Plaintiff Jean Minal ("Minal") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Minal signed the Release and left the service of Allstate under the Forced Sale Option.

494.    Plaintiff Minal was born in 1936 and had at least eighteen (18) years of continuous service with Allstate at the time she left the company's service in 2000 as a result of the Program.

495.    Plaintiff Frieda Minga ("Minga") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Minga signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

496.    Plaintiff Minga was born in 1946 and had at least nineteen (19) years of continuous service with Allstate as an agent at the time she left the company's service in 2003.

497.    Plaintiff Barbara Ann Mink is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Daniel Mink.  Daniel Mink was employed by Allstate for more than sixteen (16) years under an R830 contract.  He signed the Release and left the service of Allstate under the Forced Sale Option.

498.    Daniel Mink was born in 1944 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

499.    Plaintiff Robert Minton ("R. Minton") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff R. Minton signed the Release and left the service of Allstate under the Forced Sale Option.

500.    Plaintiff R. Minton was born in 1943 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

501.    Plaintiff Joseph Montanaro ("Montanaro") was employed by Allstate for more than thirty-three (33) years under an R830 contract.  Plaintiff Montanaro signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

502.     Plaintiff Montanaro was born in 1943 and had at least forty-four (44) years of continuous service with Allstate at the time he retired from the company's service in 2012.

503.    Plaintiff Richard Moore ("R. Moore") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  Plaintiff R. Moore signed the Release and left the service of Allstate under the Forced Sale Option.

504.    Plaintiff R. Moore was born in 1939 and had at least twenty-seven (27) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

505.    Plaintiff Stafford Walter Moore ("S. Moore") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Plaintiff S. Moore signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

506.    Plaintiff S. Moore was born in 1952 and had at least nineteen (19) years of continuous service with Allstate at the time he left the company's service in 2002.

COMPLAINT    - 100 -

507.    Plaintiff Dinah Morgan ("D. Morgan") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff D. Morgan signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

508.    Plaintiff D. Morgan was born in 1947 and had at least twenty-seven years (27) of continuous service at the time she retired from the company's service in 2001.

509.    Plaintiff Sylvia Mosley ("Mosley") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  Plaintiff Mosley signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

510.    Plaintiff Mosley was born in 1955 and had at least twenty-five (25) years of continuous service with Allstate at the time she retired from the company's service in 2002.

511.    Plaintiff D. Craig Mullen ("Mullen") was employed by Allstate for more than twelve (12) years under an R1500 contract.  Plaintiff Mullen signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

512.    Plaintiff Mullen was born in 1961 and had at least thirteen (13) years of continuous service with Allstate at the time he left the company's service in 2001.

513.    Plaintiff Kelly Patrick Mulligan ("Mulligan") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Mulligan signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

514.    Plaintiff Mulligan was born in 1957 and had at least twenty-nine (29) years of continuous service with Allstate at the time he retired from the company's service in 2012.

515.    Plaintiff Darrell Namie ("Namie") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Plaintiff Namie signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

516.    Plaintiff Namie was born in 1955 and had at least twenty-four (24) years of continuous service with Allstate at the time he retired from the company's service in 2011.

517.    Plaintiff Herbert Newman ("Newman") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Plaintiff Newman signed the Release and left the service of Allstate under the Forced Sale Option.

518.    Plaintiff Newman was born in 1939 and had at least twenty-one (21) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

519.    Plaintiff Chester Nowak ("Nowak") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  Plaintiff Nowak signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

520.    Plaintiff Nowak was born in 1948 and had at least twenty-five (25) years of continuous service with Allstate at the time he retired from the company's service in 2001.

521.    Plaintiff Richard Nydegger ("Nydegger") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Plaintiff Nydegger signed the Release and left the service of Allstate under the Forced Sale Option.

522.    Plaintiff Nydegger was born in 1952 and had at least fifteen (15) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

COMPLAINT                                    - 102 -

523.    Plaintiff Thomas O'Dell ("O'Dell") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff O'Dell signed the Release and left the service of Allstate under the Forced Sale Option.

524.    Plaintiff O'Dell was born in 1945 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

525.    Plaintiff Walter Orr ("Orr") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Plaintiff Orr signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

526.    Plaintiff Orr was born in 1950 and had at least twenty-eight (28) years of continuous service with Allstate at the time he retired from the company's service in 2011.

527.    Plaintiff James Overmiller ("Overmiller") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Plaintiff Overmiller signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

528.    Plaintiff Overmiller was born in 1951 and had at least twenty-five (25) years of continuous service with Allstate at the time he retired from the company's service in 2011.

529.    Plaintiff Barbara Oxner (previously Barbara Jones) ("Oxner") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Oxner signed the Release and left the service of Allstate under the Forced Sale Option.

530.    Plaintiff Oxner was born in 1942 and had at least fifteen (15) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

COMPLAINT

531.    Plaintiff Martha Parry ("Parry") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Plaintiff Parry signed the Release and left the service of Allstate under the Forced Sale Option.

532.    Plaintiff Parry was born in 1937 and had at least fifteen (15) years of continuous service with Allstate at the time she retired from the company's service in 2000 as a result of the Program.

533.    Plaintiff Frank Patterson ("Patterson") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Plaintiff Patterson signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

534.    Plaintiff Patterson was born in 1947 and had at least twenty-three (23) years of continuous service with Allstate at the time he retired from the company's service in 2002.

535.    Plaintiff Terry Paulk ("Paulk") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Paulk signed the Release and left the service of Allstate under the Forced Sale Option.

536.    Plaintiff Paulk was born in 1955 and had at least eighteen (18) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

537.    Plaintiff Daniel Perry ("Perry") was employed by Allstate for at least twenty (20) under an R830 contract.  Plaintiff Perry signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

538.    Plaintiff Perry was born in 1957 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2007.

539.    Plaintiff Kenneth Philbrick ("Philbrick") was employed by Allstate for more than fifteen (15) years under an R1500 contract. Plaintiff Philbrick signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

540.    Plaintiff Philbrick was born in 1941 and had at least twenty-two (22) years of continuous service with Allstate at the time he retired from the company's service in 2007.

541.    Plaintiff Frank Leslie Phillips, Jr. ("Phillips") was employed by Allstate for more than sixteen (16) years under an R830 contract. Plaintiff Phillips signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

542.    Plaintiff Phillips was born in 1948 and had at least eighteen (18) years of continuous service at the time he left the company's service in 2002.

543.    Plaintiff Stephen Pigg ("Pigg") was employed by Allstate for more than twenty-six (26) years under an R830 contract. Plaintiff Pigg signed the Release and left the service of Allstate under the Forced Severance Option.

544.    Plaintiff Pigg was born in 1939 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service as a result of the Program.

545.    Plaintiff Clifford Pinckney ("Pinckney") was employed by Allstate for more than twenty-eight (28) years under an R830 contract. Plaintiff Pinckney signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

546.    Plaintiff Pinckney was born in 1949 and had at least thirty-four (34) years of continuous service with Allstate at the time he retired from the company's service in 2006.

547.    Plaintiff Rita Pino ("Pino") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Plaintiff Pino signed the Release and left the service of Allstate under the Forced Sale Option.

548.    Plaintiff Pino was born in 1941 and had at least fifteen (15) years of continuous service with Allstate at the time she left the company's service in 2000 as a result of the Program.

549.    Plaintiff Ronald Pinsoneault ("Pinsoneault") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Plaintiff Pinsoneault signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

550.    Plaintiff Pinsoneault was born in 1946 and had at least twenty-seven (27) years of continuous service with Allstate at the time he retired from the company's service in 2009.

551.    Plaintiff Johnny Plemons ("Plemons") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Plemons signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

552.    Plaintiff Plemons was born in 1956 and had at least thirty (30) years of continuous service with Allstate at the time he retired from the company's service in 2011.

553.    Plaintiff Robert Pollock ("Pollock") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Plaintiff Pollock signed the Release and left the service of Allstate under the Forced Sale Option.

554.    Plaintiff Pollock was born in 1944 and had at least twenty-two (22) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

555.    Plaintiff Dennis Porter ("Porter") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff Porter signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

556.    Plaintiff Porter was born in 1942 and had at least twenty-nine (29) years of continuous service with Allstate at the time he retired from the company's service in 2003.

557.    Plaintiff Dennis Powers ("Powers") was employed by Allstate for more than ten (10) years under an R1500 contract.  Plaintiff Powers signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

558.    Plaintiff Powers was born in 1953 and had at least twenty-one (21) years of continuous service with Allstate at the time he retired from the company's service in 2011.

559.    Plaintiff Blair Quasnitschka is suing in his capacity as personal representative for the Estate of deceased former Allstate agent Linda Kirbus (formerly Linda Quasnitschka).  Linda Kirbus was employed by Allstate for more than twenty-two (22) years under an R830 contract. She signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

560.    Linda Kirbus was born in 1949 and had at least twenty-nine (29) years of continuous service with Allstate at the time she retired from the company's service in 2007.

561.    Plaintiff Paul Quattrone ("Quattrone") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  Plaintiff Quattrone signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

562.    Plaintiff Quattrone was born in 1947 and had at least twenty-nine (29) years of continuous service with Allstate at the time he retired from the company's service in 2002.

563.    Plaintiff Marziano Ragnone ("Ragnone") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Plaintiff Ragnone signed the Release and left the service of Allstate under the Forced Sale Option.

564.    Plaintiff Ragnone was born in 1942 and had at least eighteen (18) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

565.    Plaintiff James Rauen ("Rauen") was employed by Allstate for more than twenty-four (24) years under an R830 contract.  Plaintiff Rauen signed the Release and left the service of Allstate under the Forced Sale Option.

566.    Plaintiff Rauen was born in 1948 and had at least twenty-four (24) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

567.    Plaintiff Donald Reimer ("Reimer") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Plaintiff Reimer signed the Release and left the service of Allstate under the Forced Severance Option.

568.    Plaintiff Reimer was born in 1948 and had at least seventeen (17) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

569.    Plaintiff G. Maria Resnick ("Resnick") was employed by Allstate for more than twenty-three (23) years under an R830 contract.  Plaintiff Resnick signed the Release and left the service of Allstate under the Forced Sale Option.

570.    Plaintiff Resnick was born in 1949 and had at least twenty-three (23) years of continuous service with Allstate at the time she retired from the company's service in 2000 as a result of the Program.

COMPLAINT                                    - 108 -

571.     Plaintiff Linda Reynolds ("Reynolds") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Reynolds signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

572.     Plaintiff Reynolds was born in 1948 and had at least twenty-six (26) years of continuous service with Allstate at the time she retired from the company's service in 2010.

573.     Plaintiff Stan Ricks ("Ricks") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Plaintiff Ricks signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

574.     Plaintiff Ricks was born in 1951 and had at least nineteen (19) years of continuous service with Allstate at the time he left the company's service in 2005.

575.     Plaintiff Dick Roberts ("D. Roberts") was employed by Allstate for more than twenty-five (25) years under an R830 contract.  Plaintiff D. Roberts signed the Release and left the service of Allstate under the Forced Sale Option.

576.      Plaintiff D. Roberts was born in 1946 and had at least twenty-five (25) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

577.     Plaintiff Thomas Roby ("Roby") was employed by Allstate for more than twenty-six (26) years under an R830 contract.  Plaintiff Roby signed the Release and left the service of Allstate under the Forced Sale Option.

578.     Plaintiff Roby was born in 1944 and had at least twenty-six (26) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

579.     Plaintiff David Louis Roman ("Roman") was employed by Allstate for more than twenty-one (21) years under an R830 or R1500 contract.  Plaintiff Roman signed the Release and

continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

580.    Plaintiff Roman was born in 1955 and had at least thirty-three (33) years of continuous service with Allstate at the time he retired from the company's service in 2009.

581.    Plaintiff Lloyd Rosensteel ("Rosensteel") was employed by Allstate for more than twenty-eight (28) years under an R830 contract.  Plaintiff Rosensteel signed the Release and left the service of Allstate under the Forced Sale Option.

582.    Plaintiff Rosensteel was born in 1938 and had at least twenty-eight (28) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

583.    Plaintiff Richard K. Roskowe ("Roskowe") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Plaintiff Roskowe signed the Release and left the service of Allstate under the Forced Sale Option.

584.    Plaintiff Roskowe was born in 1949 and had at least sixteen (16) years of continuous service with Allstate at the time he left the company's service in 2000 as a result of the Program.

585.    Plaintiff Richard Rossell ("Rossell") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Plaintiff Rossell signed the Release and left the service of Allstate under the Forced Sale Option.

586.    Plaintiff Rossell was born in 1947 and had at least twenty-one (21) years of continuous service with Allstate at the time he retired from the company's service in 2000 as a result of the Program.

587.    Plaintiff Ronald Rubin ("Rubin") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Plaintiff Rubin signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

588.    Plaintiff Rubin was born in 1943 and had at least twenty (20) years of continuous service with Allstate at the time he retired from the company's service in 2001.

589.    Plaintiff Robert P. Russo ("Russo") was employed by Alltsate for more than thirty-three (33) years under an R830 contract.  Russo signed the Release and left the service of Allstate under the Forced Sale Option.

590.    Plaintiff Russo was born in 1944 and had at least thirty-three (33) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

591.    Plaintiff Karen Ryan-White ("Ryan-White") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Ryan-White signed the Release and continued to provide service to Allstate under the Forced Conversion Option subsequent to June 30, 2000.

592.    Plaintiff Ryan-White was born in 1954 and had at least eighteen (18) years of continuous service to Allstate at the time she left the company's service in 2002.

593.    Plaintiff Edward Saad ("Saad") was employed by Allstate for more than twenty (20) years under R830 contract.  Saad signed the Release and left the service of Allstate under the Forced Severance Option.

594.    Plaintiff Saad was born in 1943 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

COMPLAINT                                      - 111 -

595.    Plaintiff John Sanchez ("Sanchez") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Sanchez signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

596.    Plaintiff Sanchez was born in 1958 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2002.

597.    Plaintiff Jack M. Sanders ("J. Sanders") was employed by Allstate for more than thirty-four (34) years under an R830 contract.  J. Sanders signed the Release and left the service of Allstate under the Forced Sale Option.

598.    Plaintiff J. Sanders was born in 1941 and had at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

599.    Plaintiff Michael L. Sanders ("M. Sanders") was employed by Allstate for more than sixteen (16) years under an R830 contract.  M. Sanders signed the Release and left the service of Allstate under the Forced Sale Option.

600.    Plaintiff M. Sanders was born in 1947 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

601.    Plaintiff Sheila L. Sanders ("S. Sanders") was employed by Allstate for more than eighteen (18) years under an R830 contract.  S. Sanders signed the Release and left the service of Allstate under the Forced Sale Option.

602.    Plaintiff S. Sanders was born in 1956 and had at least eighteen (18) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

603.    Plaintiff Gail Santalucia-Daly ("Santalucia-Daly") was employed by Allstate for more than twenty (20) years under an R830 contract. Santalucia-Daly signed the Release and left the service of Allstate under the Forced Severance Option.

604.    Plaintiff Santalucia-Daly was born in 1949 and had at least twenty (20) years of continuous service to Allstate at the time she retired from the company's service as a result of the Program.

605.    Plaintiff Philip J. Sarcone ("Sarcone") was employed by Allstate for more than eighteen (18) years under an R830 contract. Sarcone signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

606.    Plaintiff Sarcone was born in 1950 and has at least thirty-three (33) years of continuous service to Allstate. Sarcone remains in the company's service.

607.    Plaintiff Richard L. Saulle ("Saulle") was employed by Allstate for more than thirty-four (34) years under an R830 contract. Saulle signed the Release and left the service of Allstate under the Forced Sale Option.

608.    Plaintiff Saulle was born in 1942 and had at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

609.    Plaintiff Marcos E. Sayago ("Sayago") was employed by Allstate for more than twenty-five (25) years under an R830 contract. Sayago signed the Release and left the service of Allstate under the Forced Sale Option.

610.    Plaintiff Sayago was born in 1947 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

611.    Plaintiff Gerald Herbert Schiele ("Schiele") was employed by Allstate for more than ten (10) years under an R1500 contract.  Schiele signed the Release and left the service of Allstate under the Forced Sale Option.

612.    Plaintiff Schiele was born in 1946 and had at least ten (10) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

613.    Plaintiff Douglas Schiffmiller ("Schiffmiller") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  Schiffmiller signed the Release and left the service of Allstate under the Forced Sale Option.

614.    Plaintiff Schiffmiller was born in 1959 and had at least thirteen (13) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

615.    Plaintiff Timothy L. Schwartz ("Schwartz") was employed by Allstate for more than seventeen (17) years under an R830 contract.  Schwartz signed the Release and left the service of Allstate under the Forced Sale Option.

616.    Plaintiff Schwartz was born in 1952 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

617.    Plaintiff David L. Seidel ("Seidel") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Seidel signed the Release and left the service of Allstate under the Forced Sale Option.

618.    Plaintiff Seidel was born in 1941 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

619.    Plaintiff Roger Serola ("Serola") was employed by Allstate for more than sixteen (16) years under an R830 contract. Serola signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

620.    Plaintiff Serola was born in 1945 and has at least thirty-one (31) years of continuous service to Allstate. Serola remains in the company's service.

621.    Plaintiff Leonard Leroy Shaw ("Shaw") was employed by Allstate for more than twelve (12) years under an R1500 contract. Shaw signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

622.    Plaintiff Shaw was born in 1943 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2007.

623.    Plaintiff Robert G. Shea Jr. ("Shea") was employed by Allstate for more than twenty (20) years under an R830 contract. Shea signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

624.    Plaintiff Shea was born in 1940 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2001.

625.    Plaintiff Sheldon F. Sheff ("Sheff") was employed by Allstate for more than sixteen (16) years under an R830 contract. Sheff signed the Release and left the service of Allstate under the Forced Sale Option.

626.    Plaintiff Sheff was born in 1950 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

627.    Plaintiff Woodrow Shelton Jr. ("Shelton") was employed by Allstate for more than twelve (12) years under an R1500 contract. Shelton signed the Release and left the service of Allstate under the Forced Sale Option.

COMPLAINT                                    - 115 -

628.    Plaintiff Shelton was born in 1950 and had at least twelve (12) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

629.    Plaintiff Darryl Sherman ("Sherman") was employed by Allstate for more than twenty-nine (29) years under an R830 contract.  Sherman signed the Release and left the service of Allstate under the Forced Severance Option.

630.    Plaintiff Sherman was born in 1942 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service at the end of 1999 as a result of the Program.

631.    Plaintiff Mike Shobe ("Shobe") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Shobe signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

632.    Plaintiff Shobe was born in 1944 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2001.

633.    Plaintiff Lawrence Simms ("L. Simms") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  L. Simms signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

634.    Plaintiff L. Simms was born in 1952 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2001.

635.    Plaintiff Douglas A. Sims ("D. Sims") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  D. Sims signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

636.    Plaintiff D. Sims was born in 1951 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2005.

637.    Plaintiff Eric B. Sims ("E. Sims") was employed by Allstate for more than eleven (11) years under an R1500 contract.  E. Sims signed the Release and left the service of Allstate under the Forced Sale Option.

638.    Plaintiff E. Sims was born in 1962 and had at least eleven (11) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

639.    Plaintiff Chinesta Skipper Smith ("C. Smith") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Skipper signed the Release and left the service of Allstate under the Forced Sale Option.

640.    Plaintiff C. Smith was born in 1954 and had at least nineteen (19) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

641.    Plaintiff Marie Smith is suing in her capacity as personal representative for the Estate of deceased former agent David William Smith ("D.W. Smith").  D.W. Smith was employed by Allstate for more than eighteen (18) years under an R830 contract.  D. W. Smith signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

642.    D. W. Smith was born in 1957 and had at least thirty-two (32) years of continuous service to Allstate.

643.    Plaintiff Dennis Z. Smith ("D. Z. Smith") was employed by Allstate for more than thirteen (13) years under an R1500 contract.  D. Z. Smith signed the Release and left the service of Allstate under the Forced Sale option.

644.    Plaintiff D. Z. Smith was born in 1963 and had at least thirteen (13) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

645.    Plaintiff Ronald W. Smith ("R. Smith") was employed by Allstate for more than sixteen (16) years under an R830 contract.  R. Smith signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

646.    Plaintiff R. Smith was born in 1946 and had approximately twenty-three (23) years of continuous service to Allstate when he retired from the company's service in 2006.

647.    Plaintiff Armando D. Soler ("Soler") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Soler signed the Release and left the service of Allstate under the Forced Sale Option.

648.    Plaintiff Soler was born in 1946 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

649.    Plaintiff Deborah Sorrell-Ulrich ("Sorrell-Ulrich") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Sorrell-Ulrich signed the Release and left the service of Allstate under the Forced Sale Option.

650.    Plaintiff Sorrell-Ulrich was born in 1957 and had at least eighteen (18) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

651.    Plaintiff David St. John ("D. St. John") was employed by Allstate for more than eighteen (18) years under an R830 contract.  D. St. John signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

652.    Plaintiff D. St. John was born in 1952 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2004.

653.    Plaintiff Sarah A. St. John (S. St. John) was employed by Allstate for more than thirteen (13) years under an R1500 contract.  S. St. John signed the Release and left the service of Allstate as an agent under the Forced Sale Option.

654.    Plaintiff S. St. John was born in 1954 and had at least thirteen (13) years of continuous service as an agent to Allstate at the time she sold her agency in 2000 as a result of the Program.

655.    Plaintiff Carol P. Stevens (formerly Carol Stehle) ("Stevens") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Stehle signed the Release and left the service of Allstate under the Forced Sale Option.

656.    Plaintiff Stevens was born in 1942 and had at least sixteen (16) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

657.    Plaintiff Thomas D. Stein ("Stein") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Stein signed the Release and left the service of Allstate under the Forced Sale Option.

658.    Plaintiff Stein was born in 1947 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

659.    Plaintiff Michael M. Stern was employed by Allstate for more than thirty (30) years under an R1500 contract.  He signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

660.    Michael M. Stern was born in 1947 and had at least forty (40) years of continuous service to Allstate at the time he retired from the company's service in 2010..

661.    Plaintiff John Stout ("Stout") was employed by Allstate for more than twenty-seven (27) years under an R830 contract.  Stout signed the Release and left the service of Allstate under the Forced Sale Option.

662.    Plaintiff Stout was born in 1935 and had at least twenty-seven (27) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

663.    Plaintiff Donald J. Striplin ("Striplin") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Striplin signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

664.    Plaintiff Striplin was born in 1947 and had at least twenty-one (21) years of continuous service to Allstate at the time he retired from the company's service in 2003.

665.    Plaintiff Celeste M. Sullivan ("Sullivan") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Sullivan signed the Release and left the service of Allstate under the Forced Sale Option.

666.    Plaintiff Sullivan was born in 1953 and had at least fifteen (15) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

667.    Plaintiff Kurt A. Summers ("Summers") was employed by Allstate for more than fifteen (15) years under an R1500 contract.  Summers signed the Release and left the service of Allstate under the Forced Sale Option.

668.    Plaintiff Summers was born in 1956 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

COMPLAINT                                         - 120 -

669.    Plaintiff Stanley J. Suwala ("Suwala") was employed by Allstate for more than twenty-five (25) years under an R830 contract.  Suwala signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

670.    Plaintiff Suwala was born in 1941 and has at least forty (40) years of continuous service to Allstate.  Suwala remains in the company's service.

671.    Plaintiff Paul Gerald Svabek ("Svabek") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  Svabek signed the Release and left the service of Allstate under the Forced Sale Option.

672.    Plaintiff Svabek was born in 1952 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

673.    Plaintiff Edward C. Swanson ("E. Swanson") was employed by Allstate for at least fifteen (15) years under an R1500 contract.  E. Swanson signed the Release and left the service of Allstate under the Forced Sale Option.

674.    Plaintiff E. Swanson was born in 1944 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

675.    Plaintiff Marilyn Swanson ("M. Swanson") was employed by Allstate for more than twenty-two (22) years under an R830 contract.  M. Swanson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

676.    Plaintiff M. Swanson was born in 1946 and has at least thirty-two (32) years of continuous service to Allstate at the time she retired from the company's service in 2010.

677.    Plaintiff Michelle M. Tabler ("Tabler") was employed by Allstate for approximately seventeen (17) years under an R830 contract.  Tabler signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

678.    Plaintiff Tabler was born in 1957 and had at least twenty-two (22) years of continuous service to Allstate at the time she retired from the company's service in 2005.

679.    Plaintiff Russell A. Tapie ("Tapie") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Tapie signed the Release and left the service of Allstate under the Forced Sale Option.

680.    Plaintiff Tapie was born in 1955 and had at least sixteen (16) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

681.    Plaintiff Wanda Tatum ("Tatum") was employed by Allstate for more than sixteen (16) years under an R830 contract.  Tatum signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

682.    Plaintiff Tatum was born in 1944 and had at least twenty-three (23) years of continuous service to Allstate at the time she retired from the company's service in 2007.

683.    Plaintiff Charles Taylor ("C. Taylor") was employed by Allstate for more than eighteen (18) years under an R830 contract.  C. Taylor signed the Release and left the service of Allstate under the Forced Sale Option.

684.    Plaintiff C. Taylor was born in 1956 and had at least eighteen (18) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

685.     Plaintiff Wright B. Taylor ("W. Taylor") was employed by Allstate for more than twenty-nine (29) years under an R830 contract.  W. Taylor signed the Release and left the service of Allstate under the Forced Sale Option.

686.     Plaintiff W. Taylor was born in 1944 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

687.     Plaintiff Robert W. Telkins ("Telkins") was employed by Allstate for more than thirty-seven (37) years under an R830 contract.  Telkins signed the Release and left the service of Allstate under the Forced Sale Option.

688.     Plaintiff Telkins was born in 1941 and had at least thirty-seven (37) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

689.     Plaintiff Stephen U. Thoennes ("Thoennes") was employed by Allstate for more than twenty-six (26) years under R830 contract.  Thoennes signed the Release and left the service of Allstate under the Force Sale Option.

690.     Plaintiff Thoennes was born in 1947 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2000.

691.     Plaintiff Gary L. Thomas ("G. Thomas") was employed by Allstate for more than seventeen (17) years under an R830 contract.  G. Thomas signed the Release and left the service of Allstate under the Forced Sale Option.

692.     Plaintiff G. Thomas was born in 1957 and had at least seventeen (17) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

COMPLAINT                                    - 123 -

693.    Plaintiff Montague A. "Bud" Thomas III ("M. Thomas") was employed by Allstate for more than twelve (12) years under an R1500 contract.  M. Thomas signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

694.    Plaintiff M. Thomas was born in 1945 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2010.

695.    Plaintiff Jeffrey Tobin ("Tobin") was employed by Allstate for more than ten (10) years under an R1500 contract.  Tobin signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

696.    Plaintiff Tobin was born in 1950 and had at least eighteen (18) years of continuous service to Allstate at the time he left the company's service in 2008.

697.    Plaintiff Joseph George Tomec ("Tomec") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Tomec signed the Release and left the service of Allstate under the Forced Sale Option.

698.    Plaintiff Tomec was born in 1949 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

699.    Plaintiff Mary Turley is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Robert H. Turley.  Robert H. Turley was employed by Allstate for more than twenty-three (23) years under an R830 contract.  He signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

700.    Robert H. Turley was born in 1946 and had at least twenty-four (24) years of continuous service to Allstate at the time he retired from the company's service in 2001.

701.    Plaintiff Albert Turner ("Turner") was employed by Allstate for more than twenty-three (23) years under an R830 contract. Turner signed the Release and left the service of Allstate under the Forced Sale Option.

702.    Plaintiff Turner was born in 1943 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

703.    Plaintiff David J. Tuskey ("Tuskey') was employed by Allstate for more than eighteen (18) years under an R830 contract. Tuskey signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

704.    Plaintiff Tuskey was born in 1953 and has at least thirty-two (32) years of continuous service to Allstate. Tuskey remains in the company's service.

705.    Plaintiff George F. Twohig ("Twohig") was employed by Allstate for more than thirty-six (36) years under an R830 contract. Twohig signed the Release and left the service of Allstate under the Forced Sale Option.

706.    Plaintiff Twohig was born in 1935 and had at least thirty-six (36) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

707.    Plaintiff Cornell G. Vandegrift ("Vandegrift") was employed by Allstate for more than twenty-three (23) years under an R830 contract. Vandegrift signed the Release and left the service of Allstate under the Forced Sale Option.

708.    Plaintiff Vandegrift was born in 1947 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

709.    Plaintiff Milford T. Vaught, Jr. ("Vaught") was employed by Allstate for more than fourteen (14) years under an R1500 contract.  Vaught signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

710.    Plaintiff Vaught was born in 1953 and has at least twenty-nine (29) years of continuous service to Allstate.  Vaught remains in the company's service.

711.    Plaintiff Louis Veal ("Veal") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Veal signed the Release and left the service of Allstate under the Forced Sale Option.

712.    Plaintiff Veal was born in 1946 and had at least nineteen (19) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

713.    Plaintiff Dale A. Villemain ("Villemain") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Villemain signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

714.    Plaintiff Villemain was born in 1955 and has at least thirty-four (34) years of continuous service to Allstate.  Villemain remains in the company's service.

715.    Plaintiff Cleta M. Vining ("Vining") was employed by Allstate for more than twenty (20) years under an R830 contract.  Vining signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

716.    Plaintiff Vining was born in 1957 and has at least thirty-four (34) years of continuous service to Allstate.  Vining remains in the company's service.

717.    Plaintiff Joseph J. Viola Sr. ("Viola") was employed by Allstate for more than thirty-one (31) years under an R830 contract.  Viola signed the Release and left the service of Allstate under the Forced Sale Option.

718.    Plaintiff Viola was born in 1926 and had at least thirty-one (31) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

719.    Plaintiff Ronald A. Wanek ("Wanek") was employed by Allstate for more than fourteen (14) years under an R1500 contract. Wanek signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

720.    Plaintiff Wanek was born in 1957 and had at least twenty-four (24) years of continuous service to Allstate at the time he retired from the company's service in 2010.

721.    Plaintiff Brian J. Wanless ("Wanless") was employed by Allstate for more than twenty-one (21) years under an R830 contract. Wanless signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

722.    Plaintiff Wanless was born in 1950 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2001.

723.    Plaintiff Arthur L. Washington ("Washington") was employed by Allstate for more than twenty-six (26) years under an R830 contract. Washington signed the Release and left the service of Allstate under the Forced Sale Option.

724.    Plaintiff Washington was born in 1945 and had at least twenty-six (26) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

725.    Plaintiff Timothy J. Watwood ("Watwood") was employed by Allstate for more than seventeen (17) years under an R830 contract. Watwood signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

726.    Plaintiff Watwood was born in 1949 and had at least twenty-nine (29) years of continuous service to Allstate at the time he retired from the company's service in 2012.

COMPLAINT                                    - 127 -

727.    Plaintiff Mark E. Wegner ("Wegner") was employed by Allstate for more than sixteen (16) years under an R1500 contract. Wegner signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

728.    Plaintiff Wegner was born in 1951 and had at least twenty-two (22) years of continuous service to Allstate at the time he retired from the company's service in 2006.

729.    Plaintiff  Findley L. West ("West") was employed by Allstate for more than thirty-three (33) years under an R830 contract.  West signed the Release and left the service of Allstate under the Forced Sale Option.

730.    Plaintiff West was born in 1941 and had at least thirty-three (33) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

731.    Plaintiff Neil W. Whicker ("Whicker") was employed by Allstate for more than twenty-one (21) years under an R830 contract.  Whicker signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

732.    Plaintiff Whicker was born in 1947 and had at least thirty-five (35) years of continuous service to Allstate at the time he retired from the company's service in 2013.

733.    Plaintiff Charles L. Williams ("C. Williams") was employed by Allstate for more than twenty-five (25) years under an R830 contract.  C. Williams signed the Release and left the service of Allstate under the Forced Severance Option.

734.    Plaintiff C. Williams was born in 1938 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

735.    Plaintiff Walker Williams ("W. Williams") was employed by Allstate for more than eighteen (18) years under an R830 contract. W. Williams signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

736.    Plaintiff W. Williams was born in 1943 and had at least twenty-seven (27) years of continuous service to Allstate at the time he retired from the company's service in 2009.

737.    Plaintiff Rodney Williams Sr. ("R. Williams") was employed by Allstate for more than twenty-two (22) years under an R830 contract. R. Williams signed the Release and left the service of Allstate under the Forced Sale Option.

738.    Plaintiff R. Williams was born in 1950 and had at least twenty-two (22) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

739.    Plaintiff Barry L. Wilson Sr. ("B. Wilson") was employed by Allstate for more than fourteen (14) years under an R1500 contract. B. Wilson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

740.    Plaintiff B. Wilson was born in 1948 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2001.

741.    Plaintiff Robin Lee Wilson ("R.L. Wilson") was employed by Allstate for more than seventeen (17) years under an R830 contract. R. L. Wilson signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

742.    Plaintiff R. L Wilson was born in 1956 and had at least twenty-five (25) years of continuous service to Allstate at the time she retired from the company's service in 2008.

743.    Plaintiff Frances C. Wisniewski ("Wisniewski") was employed by Allstate for more than seventeen (17) years under an R830 contract. Wisniewski signed the Release and left the service of Allstate under the Forced Sale Option.

744.    Plaintiff Wisniewski was born in 1938 and had at least seventeen (17) years of continuous service to Allstate at the time she left the company's service in 2000 as a result of the Program.

745.    Plaintiff James M. Wood ("Wood") was employed by Allstate for more than twenty-five (25) years under an R830 contract. Wood signed the Release and left the service of Allstate under the Forced Sale Option.

746.    Plaintiff Wood was born in 1946 and had at least twenty-five (25) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

747.    Plaintiff Linda Ann Woshner ("Woshner") was employed by Allstaet for more than thirteen (13) years under an R1500 contract. Woshner signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

748.    Plaintiff Woshner was born in 1950 and had at least twenty-five (25) years of continuous service to Allstate at the time she retired from the company's service in 2011.

749.    Plaintiff Barbara D. Wright is suing in her capacity as personal representative for the Estate of deceased former Allstate agent Kevin A. Wright. Kevin A. Wright was employed by Allstate for more than fourteen (14) years under an R1500 contract. He signed the Release and left the service of Allstate under the Forced Sale Option.

750.    Kevin A. Wright was born in 1955 and had at least fourteen (14) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

751.    Plaintiff Robert A. Wright Jr. ("R. Wright") was employed by Allstate for more than ten (10) years under an R1500 contract.  R. Wright signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

752.    Plaintiff R. Wright was born in 1958 and had at least twelve (12) years of continuous service to Allstate at the time he left the company's service in 2002.

753.    Plaintiff Leonard M. Yarbrough ("Yarbrough") was employed by Allstate for more than nineteen (19) years under an R830 contract.  Yarbrough signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

754.    Plaintiff Yarbrough was born in 1944 and had at least twenty-three (23) years of continuous service to Allstate at the time he retired from the company's service in 2003.

755.    Plaintiff Donald A. Young ("D. Young") was employed by Allstate for more than twenty (20) years under an R830 contract.  Young signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

756.    Plaintiff D. Young was born in 1938 and had at least thirty-four (34) years of continuous service to Allstate at the time he retired from the company's service in 2014.

757.    Plaintiff James M. Zahner ("Zahner") was employed by Allstate for more than twelve (12) years under an R1500 contract.  Zahner signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

758.    Plaintiff Zahner was born in 1950 and had at least fifteen (15) years of continuous service to Allstate at the time he left the company's service in 2002.

759.    Plaintiff Ronald D. Zarbaugh ("Zarbaugh") was employed by Allstate for more than twenty (20) years under an R830 contract.   Zarbaugh signed the Release and left the service of Allstate under the Forced Sale Option.

760.    Plaintiff Zarbaugh was born in 1952 and had at least twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

761.    Plaintiff Rose Zumwinkle is suing in her capacity as personal representative for the Estate of her deceased husband and former Allstate agent William Zumwinkle.  William Zumwinkle was employed by Allstate for more than twenty-eight (28) years under an R830 or R1500 contract.  He signed the Release and left the service of Allstate under the Forced Sale Option.

762.    William Zumwinkle was born in 1937 and had at least twenty-eight (28) years of continuous service to Allstate at the time he retired from the company's service in 2000 as a result of the Program.

763.    Plaintiff Manuel B. Zuniga Sr. ("Zuniga") was employed by Allstate for more than eighteen (18) years under an R830 contract.  Zuniga signed the Release and continued in the service of Allstate under the Forced Conversion Option subsequent to June 30, 2000.

764.    Plaintiff Zuniga was born in 1941 and had approximately twenty (20) years of continuous service to Allstate at the time he retired from the company's service in 2002.

765.    Plaintiff Charles Dennis Zyburo ("Zyburo") was employed by Allstate for more than eleven (11) years under an R1500 contract.  Zyburo signed the Release and left the service of Allstate under the Forced Sale Option.

766.    Plaintiff Zyburo was born in 1949 and had at least eleven (11) years of continuous service to Allstate at the time he left the company's service in 2000 as a result of the Program.

**B.    DEFENDANTS**

767.    Defendant EDWARD M. LIDDY ("Liddy") is being sued in his capacity as the former President, Chief Executive Officer and Chairman of Allstate (and one or more of its

subsidiaries and affiliates).  Liddy served as Allstate's Chief Operating Officer from August 1994 to January 1999; Chief Executive Officer from January 1999 to May 2005; and as Chairman of the Board of Directors from January 1999 to April 2008.  Defendant Liddy is a "person" within the meaning of ERISA, including 29 U.S.C. § 1140.

768.    Defendant THE ALLSTATE CORPORATION is a publicly-traded Delaware corporation, having its principal place of business in Northbrook, Illinois.  The Allstate Corporation conducts business throughout the United States and abroad through its various subsidiaries and affiliates.  The Allstate Corporation is a "person" within the meaning of ERISA, including 29 U.S.C. § 1140.

769.    Defendant ALLSTATE INSURANCE COMPANY is an Illinois corporation, having its principal place of business in Northbrook, Illinois.  Allstate Insurance Company conducts business throughout the United States and abroad, whether through an affiliate or subsidiary or otherwise. Allstate Insurance Company is a wholly-owned subsidiary of The Allstate Corporation.  Defendant Allstate Insurance Company is a "person" within the meaning of ERISA, including 29 U.S.C. § 1140.

770.    At all times relevant hereto, Allstate Insurance Company and The Allstate Corporation were each an "employer" within the meaning of the ADEA and ERISA because they were engaged in an industry affecting commerce that had twenty (20) or more employees. Allstate Insurance Company and The Allstate Corporation constituted a "single employer" of the Plaintiffs.  Among other things, the operations of Allstate Insurance Company and The Allstate Corporation are interrelated and they share common directors, officers and personnel. The Allstate Corporation was directly and integrally involved in, and exercised *de facto* control over, among other things, financing decisions, funding and personnel, including in the decisions at issue in this case.  Allstate Insurance Company is identified as the sponsor of the Agents Pension

Plan (the "Pension Plan"), the Allstate Severance Pay Plan (the "Severance Pay Plan") and the Agent Transition Severance Plan. The Allstate Corporation is identified as the sponsor of The Savings and Profit Sharing Fund of Allstate Employees (the "Profit Sharing Plan"). Additionally, The Allstate Corporation made sure employees of its subsidiaries and affiliates, including Allstate Insurance Company (collectively, the "Allstate Controlled Group"), were eligible to participate in the Pension Plan, the Profit Sharing Plan and some or all of the other Plans.

771.    Defendant AGENTS PENSION PLAN ("Pension Plan") is an "employee benefit plan" and a "defined benefit plan" within the meaning of ERISA sponsored, established or maintained by Allstate Insurance Company and/or The Allstate Corporation pursuant to a written instrument. The Pension Plan which, prior to 1978, was known as the Agents Supplementary Pension Plan of Allstate Insurance Company, is a "qualified" plan under section 401(a) of the Internal Revenue Code that is covered under Title I of ERISA.

772.    Defendant ADMINISTRATIVE COMMITTEE OF THE AGENTS PENSION PLAN ("Administrator"), which is being sued in its capacity as the Administrator of the Pension Plan, exercises discretionary authority or control over the management of the Pension Plan and has discretionary authority or responsibility in the administration of the Pension Plan. The Administrator is also a named administrator and fiduciary of the Pension Plan for administrative purposes under ERISA Section 402(a)(2). The Pension Plan's governing documents provide that the Administrator shall administer the Pension Plan and shall have the power to construe and interpret the Plan's terms.

**FACTUAL ALLEGATIONS**

A.    **ALLSTATE USED THE PROMISE OF LIFETIME FINANCIAL
      SECURITY TO INDUCE ITS WORKFORCE OF "CAPTIVE"
      EMPLOYEE AGENTS TO DEDICATE THEIR CAREERS AND
      FINANCIAL RESOURCES TO ITS CONTINUING PROFITABILITY**

773.    Prior to October 1984, almost all of Allstate's insurance agents had been employed under the R830 contract.  This contract expressly created an "employer-employee" relationship between Allstate and the insurance sales agents hired under it and made those employee agents "captive agents" of Allstate:  they were required to devote their entire business time to the sale of Allstate's insurance and financial products and prohibited from selling insurance and financial products on behalf of competing companies.  These agents were compensated principally through commissions both on any new business they generated and on the renewal of existing business, including a commission-based "production allowance" for vacation, personal holidays, family and other illness, attending company meetings and other time away from their agencies.  Additionally, Allstate provided these employee agents with a furnished office or other sales location from which they could solicit and service their "books of business" and covered standard expenses for the agent to conduct his or her business on behalf of the company.

774.    In recognition of the substantial amount of time and resources required for agents to build up a profitable "book of business," the R830 contract created an express and implied relationship of indefinite duration in which agents were afforded both substantive and procedural protections to ensure that they could be terminated only for "good cause" and in limited circumstances.  Accordingly, the R830 contract specified that Allstate could not terminate the R830 contract unless it complied with a specified, elaborate review and approval procedure.  If the reason for termination was "unsatisfactory work," prior to any termination, the agent was to

be given notice that his or her "job is in jeopardy" and a "reasonable opportunity to bring . . . performance up to satisfactory standards."

775. Additionally, after successful completion of an initial 36-month life insurance "validation" period, the R830 contract gave the agent "the right to a review" by an Agent Review Board in the event of any termination (including for a criminal act or an act of dishonesty).

776. Apart from the protections afforded to agents from termination, the R830 contract also protected agents from having their commissions reduced or from otherwise being burdened with more onerous terms and conditions of employment by providing its terms could not be modified without the agent's written consent.

777. Though the commission rates fixed by the R830 contract generally were lower than those paid by Allstate's competitors, Allstate enticed prospective agents into committing their futures to the company by promising them a "guaranteed income" and long-term "financial security" through a "superior" package of employee benefits that Allstate touted as the best the industry had to offer. These benefits included, among others, retirement benefits (at no cost to the agent) through the Pension Plan, the deferral of income and company contributions through the Profit Sharing Plan, and such things as comprehensive medical insurance, dental insurance, long-term disability insurance, and life insurance under other of the Plans.

778. Participation in the Pension Plan was mandatory and automatic on the part of all full-time employee agents. Thus, upon vesting, any employee agent who retired from the service of Allstate on or after age 63 was entitled to receive a "normal" retirement benefit based on the annual eligible compensation earned by the agent. An agent who separate from service with at least twenty (20) years of "Credited Service" was entitled to commence retirement benefits as early as age 55. The Pension Plan expressly provided that "[a]ll service" with Allstate "shall count as Credited Service."

779. One of the most attractive features of the Pension Plan, however, was the "early retirement" benefit and subsidy available to agents who retire in accordance with Allstate's early retirement policy[2] before age 63 with at least twenty (20) years of "continuous service" with the company. In addition to being able to commence retirement benefits as early as age 55, these agents were entitled to a financial incentive in the form of a "beefed-up" early retirement benefit. By virtue of a "special increase in compensation," the early retirement benefit was increased by including the amount of compensation that the agent would have earned (based on the amount earned in the calendar year preceding retirement) if he or she had worked until age 63. Thus, for instance, if an agent with twenty (20) years of continuous service retired at age 55, he or she would be eligible for a "beefed-up" early retirement benefit which assumed that he or she continued to work for the next eight years – even though the agent had, in fact, retired and thus would have no earnings from Allstate during those future years.

780. By 1984, Allstate was a very profitable insurance company, selling products almost exclusively through its sales force of about 13,000 "captive" employee agents who worked out of booths located in "Sears" retail stores or, in some cases, sales offices owned or leased by the company. Allstate's management nonetheless had concluded that it could increase its profits by cutting the net expense of the "unmatched" compensation package provided to employee agents. As a result, Allstate instituted the Neighborhood Office Agent ("NOA") "cost sharing" program under which employee agents were encouraged to lease or buy offices in their own names from which they could continue to solicit new customers and service their prospering "books of business." While Allstate publicly asserted the NOA program would provide its

---

[2]   Allstate's one-sentence "voluntary early retirement policy" provided as follows:

An employee who has 20 or more years of continuous service may request early retirement at any time after reaching age 55.

employee agents with greater "entrepreneurial freedom," and promised that employee agents would have a "proprietary interest" in their agencies, the NOA program represented the first in a series of steps that Allstate took to reduce its net expenses at the expense of employee agents.

781.    The NOA "cost sharing" program was implemented, in large part, through the R1500 contract – a form of employment contract which substantially all new employee agents hired subsequent to October 1, 1984, were required to enter into – as well as the standardized R1660 Amendment to the R830 contract (the "NOA amendment"), which Allstate encouraged its existing employee agents to sign.   In many respects, the R1500 contract was similar to the discontinued R830 contract.  Like the R830 contract, the R1500 contract created an "employer-employee" relationship of indefinite duration between Allstate and its agents, provided that those agents were to be compensated on a commission basis, and prohibited them from selling insurance and financial products on behalf of any competing company.   Furthermore, as acknowledged "employees" of Allstate, agents hired under the R1500 contract – like their R830 counterparts – were entitled to participate in all of the Plans and receive other benefits as Allstate employees.   Yet, while it preserved the essential structure of the "employer-employee" relationship between Allstate and its insurance sales agents, the R1500 contract differed from the R830 contract in at least two ways.

782.    First, under the R1500 contract (and the NOA amendment), employee agents were obligated to bear the entire expense of operating their own sales offices – generally running into tens of thousands of dollars each year for rent, support staff, marketing, advertising and utilities – whereas prior to October 1984, and under the original R830 contract, Allstate generally had borne such expenses.  Allstate nonetheless provided an "Office Expense Allowance" or "OEA" to agents employed under the R1500 contract (and the NOA amendment) through which the company reimbursed a portion of the out-of-pocket expenditures for which agents were

responsible under the NOA program. That allowance was paid in the form of an enhanced commission tied to new and renewal business production during the prior year, but was intentionally designed to only partially offset the substantial expenses associated with running an Allstate agency. Second, even though Allstate proclaimed that the R1500 contract (but not the NOA amendment) was designed to "attract and keep aggressive, new business oriented agents," the new contract purported to reserve for Allstate the unfettered "right to increase or decrease compensation amounts," including the amount of OEA generated by sale commissions; to "change the compensation rules at any time"; to change the "nonexclusive" sales location assigned to an NOA agent at any time (notwithstanding the fact agents were required to live within "reasonable proximity" to their sales location); and to unilaterally alter other terms and conditions.

783.    The R1500 contract expressly incorporated the provisions of the Agents Employment Procedure Manual (the "Employment Manual") and provided that it was further "governed by the rules, regulations and procedures" set forth in the Employment Manual and elsewhere. Among the provisions contained in the Employment Manual was a requirement that employee agents be given a "complete explanation of the reason for termination" and notification of the right to appeal such termination pursuant to a two-step appeal process. Accordingly, while the R1500 contract language purported to make agents "at will" employees, under the express and implied terms of the Employment Manual it incorporated, agents could be terminated only on a case-by-case basis and when warranted by individual circumstances. According to Allstate's Management Information Guide, R1500 agents were subject to the same "corrective procedures as the R830 agent," including the ability "to request an agent review board in the event of termination . . . ." This is consistent with Allstate's acknowledged policy

that it would terminate an employee agent only for "good cause" such as serious acts of dishonesty and, in all other cases, it was corporate policy to use "progressive discipline."

784.    With the launching of the NOA "cost sharing" program in 1984 and during the years that followed, Allstate publicly assured employee agents working under the R830 contract that they would not be required to participate in the new program.  Eventually, however, Allstate began to engage in a sustained effort to motivate R830 agents to convert to the NOA program, either by executing a new R1500 contract or the NOA amendment.  Among other things, Allstate began to evaluate its managers on their ability to get employee agents to convert to the NOA program and, in the case of managers who were viewed as being "soft on agents," threatened them with termination unless they successfully persuaded agents to convert to the NOA program.

785.    When it became clear that Allstate would not be able to lure its remaining R830 agents to convert to the NOA program with false promises of future riches and "entrepreneurial freedom," Allstate resorted to more insidious measures such as scare tactics, threats, intimidation and belittlement.  To this end, employees agents were told that they "would not be around long" if they did not agree to convert to the NOA program.  In the words of Allstate management, the company was moving in a new direction and agents "could either jump on the bandwagon or fall by the wayside."  By 1990, many former R830 agents had either left the company or opted to try their fates in the NOA program.

**B.    ALLSTATE SOUGHT TO AVOID THE BURDEN OF ITS PROMISE TO EMPLOYEE AGENTS BY CUTTING BACK PENSION BENEFITS AND PUSHING AGENTS TO VOLUNTARILY CONVERT TO SO-CALLED "EXCLUSIVE AGENT INDEPENDENT CONTRACTOR"**

786.    While the NOA program initially accomplished Allstate's objective of shifting most of the costs associated with the operation of neighborhood sales offices to its employee agents, Allstate still was bearing a substantial amount of costs itself.  Moreover, the NOA program had little impact on what had become one of the largest line-item expenses on Allstate's

balance sheet: the expense of Allstate's "superior" package of employee benefits, which accounted for as much as 25 percent or more of a typical agent's compensation package.

787.    In a further effort to phase out these expenses and, thereby, improve its "bottom-line," Allstate introduced a new program which it called the Neighborhood Exclusive Agency ("Exclusive Agent") program in October 1990.  Under this Exclusive Agent program, Allstate hired new "Exclusive Agents" as employees for an initial eighteen-month training period, whereupon these newly-minted agents entered into a standardized R3001 Neighborhood Exclusive Agency Agreement ("R3001 contract"), which characterized them as "independent contractors." The term "exclusive" is synonymous with "captive" in that the R3001 contract bars Exclusive Agents from soliciting, selling or servicing insurance of any kind for any other company, agent or broker, or referring a prospect to another company, agent or broker, without the prior written approval of Allstate.

788.    In addition, Allstate announced that all of its 16,000 or so existing employee agents could participate in the Exclusive Agent program by "converting" to the new R3001 contract and becoming so-called "independent contractors."  Allstate then actively encouraged them to do so by hyping the supposed advantages of that program.  Allstate then "upped the ante" by evaluating managers on their success in getting employee agents to convert to the Exclusive Agent program and offered them bonuses based on the number of agents who converted.  At no point before the Program were employee agents who converted to "Exclusive Agent" status required to release claims against Allstate in order to do so.

789.    While Allstate touted the R3001 contract, like the R1500 contract before it, as affording agents yet more "entrepreneurial freedom," as well as the capacity for unlimited earning potential, in truth its only advantage from the agents' perspective was a modest increase in commission rates for newly-written policies on certain lines of insurance.  These higher rates,

however, were at best sufficient to offset the fact that Exclusive Agents operating under the R3001 contract did not receive commission compensation in the form of a "production allowance" and, in the case of the vast number of employee agents in the NOA program, reimbursement of some of out-of-pocket expenses from their OEA. Because the R3001 contract also eliminated all of the benefits to which employee agents were entitled, its net effect was to dramatically reduce the overall compensation Allstate paid to its agents.

790.    Not only was the increase in commission rates provided for under the R3001 contract far too small to offset the loss of their employee benefits, OEA and production allowance, that commission rate was not guaranteed, as had been the case under the R830 contract. Further, under the R3001 contract, Allstate retained for itself the absolute discretion to add, eliminate or alter its terms, or to terminate the agreement "at will" – that is, at any time and for any reason, or for no reason at all, upon giving at least ninety (90) days notice. In addition, the R3001 contract did not contain any of the procedural safeguards afforded to employee agents under the R830 and R1500 contracts in the event Allstate decided to terminate the Exclusive Agent.

791.    In November 1991 – approximately a year after Allstate introduced the Exclusive Agent program – it sought to amend the Pension Plan by, among other things, changing the definition of the term "Agent," which prior to that time had been defined as "any employee who either is classified as an Agent under the Company's personnel policy or whose principal compensation is paid in the form of commissions pursuant to an agreement with Allstate." As a result of the November 1991 amendments, Allstate deleted the reference to any "employee . . . whose principal compensation is paid in form of commissions pursuant to an agreement with his Employer," and limited the term "Agent" only to an "employee who is classified as an Agent under the Company's human resources policy." In denominating agents working under the

R3001 contract as "independent contractors" and in drastically narrowing the number of "Agents" who would be covered by the Pension Plan, Allstate sought to minimize its obligation to make further contributions to the Plan.

792.    At the same time that it was using the Exclusive Agent program as a means to reduce expenses associated with the Pension Plan benefits, Allstate also cut back those benefits by phasing out the "beef-up" benefit.  Allstate purported to amend the Pension Plan in November 1991 by, among other things, adding a "sunset" provision reducing "beefed-up" benefits for participants who satisfied the eligibility requirements for early retirement after 1991, and eliminating it entirely for those who satisfied the requirements on or after 1999.  Specifically, the Pension Plan purportedly was amended so that the early retirement benefit of an agent entitled to the "beef-up" was calculated as if the agent continued in employment only until the earliest of age 63 or December 31, 1999 (the "Beef-Up Amendment").  The following chart illustrates the manner in which the "beef-up" was to be phased out:

| Year of Retirement (assuming retirement at year end) | Maximum Number Years of "Beef Up" |
|---|---|
| 1991 | Up to 8 years |
| 1992 | Up to 7 years |
| 1993 | Up to 6 years |
| 1994 | Up to 5 years |
| 1995 | Up to 4 years |
| 1996 | Up to 3 years |
| 1997 | Up to 2 years |
| 1998 | 1 year |
| 1999 and later | None |

793.    Thus, for instance, as a result of the Beef-Up Amendment –

- an eligible "Agent" who retired from the company's service at age 55 in 1996 with 20 or more years of continuous service would be credited with only three (3)--instead of eight (8)—years of "beef up";

- an eligible "Agent" who retired from the company's service at age 55 just two years later in 1998 with 20 or more years of continuous service would be credited with only one year—instead of eight (8) years--of "beef up"; and

- any eligible "Agent" who retired from the company's service at age 55 after December 31, 1999, with 20 or more years of continuous service would not be eligible for any "beef up".

794.    The form of notice Allstate provided to participants about the November 1991 amendments to the Pension Plan falsely stated that they were authorized by federal law.  In fact, although the Tax Reform Act of 1986 (and the regulations promulgated thereunder) permitted Allstate to adopt certain amendments to the Pension Plan, it did not authorize the company to phase-out and eliminate the "beef-up" for eligible "Agents" electing to take early retirement on or after January 1, 1992.

795.    Recognizing that a so-called Exclusive Agent independent contractor provides services to Allstate, since the time Allstate introduced the Exclusive Agent program and began encouraging employee agents to convert, the Administrator treated employee agents' conversion to Exclusive Agent as not resulting in the agent "retiring" from the company's service for Pension Plan purposes.  In particular, the Administrator interpreted the otherwise undefined terms "retire" and "retirement" in the Pension Plan as requiring both a termination of employment and a separation from service.  The Administrator formally adopted an administrative rule to this effect in 1992.  Consistent with that interpretation, under the terms of the Pension Plan, a participant who converted to Exclusive Agent continued earning "service" credit because he was not deemed to be "retiring" from the service of Allstate at the time of conversion.

796.    In a subsequent plan amendment, however, Allstate purported to alter the Pension Plan's definition of the term "Credited Service"—which had included all of an "Agent's service" to Allstate—to provide that only "an Agent's <u>employment</u> . . . <u>as an employee</u> shall count as Credited Service" (the "Service Amendment").  (Emphasis added).

797.    In a series of amendments that followed, all of which purported to be effective as of December 1994 (the "December 1994 Amendments") – that is, three years after Allstate first attempted to adopt the November 1991 amendments – the company attempted once again to amend the Pension Plan, including the provisions pertaining to early retirement.  In so doing, the Pension Committee not only "readopted" the November 1991 amendments wholesale, but it also purported to do so retroactively to January 1, 1989, adding several new amendments that were intended to make it even more difficult for participants to earn additional retirement benefits, including attaining eligibility for early retirement.

798.    One of these amendments took the form of a new "Appendix A" stating that under Allstate's so-called "early retirement policy," any "request of an employee for Voluntary Early Retirement will be denied if," upon termination of the agent's employment contract, he or she enters into an agreement to perform duties or services that are "substantially similar" to those performed as an employee.

799.    The manifest purpose of these various amendments was to retroactively deny credit to employee agents who had converted to the R3001 contract for the service they had provided to the company under that contract and thereby prevent these agents from earning additional retirement benefits, including attaining eligibility for early retirement benefits.  As set forth above, prior to adopting these amendments, Allstate was obligated to count "all service" with the company – whether as an employee agent under an R830 or R1500 contract or as an

"Exclusive Agent" under an R3001 contract – as credited service for purposes of accruing retirement benefits and attaining eligibility for early retirement.

800.    In a case brought by a former employee agent alleging, among other things, that Allstate had wrongfully denied "beefed-up" early retirement benefits by not treating their conversion to Exclusive Agent status under the R3001 contract as a retirement from Allstate, Allstate and the Administrator had taken the position (prior to the December 1994 amendments) that the agent remained "in the service" of Allstate and, hence, conversion to so-called "independent contractor" status under the R3001 contract did not constitute a "retirement" within the meaning of the Pension Plan.    As the United States District Court for the Middle District of Florida explained in upholding this interpretation:

> Allstate consistently has defined "retirement" for purposes of applying the Company's voluntary Early Retirement Policy to mean not only that the agent ceases to be an employee, but that he or she also ceases providing any kind of compensated service to Allstate.  It was this interpretation that led Allstate . . . to take the position that ["employee agents"] who elected to become [exclusive agents] had not "retired" and were not eligible for early retirement benefits under the Plan, i.e., that they were still "in the service" of Allstate.

*Scott v. Administrative Committee of the Allstate Agents Pension Plan*, 1995 U.S. Dist. LEXIS 20564 at *27 (M.D. Fla. Sept. 15, 1995) (emphasis added), *rev'd on other grounds*, 113 F.3d 1193 (11th Cir. 1997).

801.    The Administrator's interpretation and district court's decision in *Scott* are consistent with an Allstate publication entitled "Benefits Bottom Line," wherein the company announced – under the caption "*Exclusive Agents:  Defining Retirement*" – its justification for refusing to pay early retirement benefits to employee agents who converted to Exclusive Agent status and continued working for Allstate under the R3001 contract:

> Conversion to Exclusive Agent status does not result in an Agent leaving the service of Allstate.  On the contrary, the Agent is continuing to provide the same service to Allstate, and receiving income from the sale of

Allstate Products. An Agent's career with Allstate has not terminated merely by converting to the new program, although the legal relationship between the parties has changed.

Similarly, in a 1990 letter, Donald E. Viken, acting as the Administrator of the Pension Plan, advised an employee agent as follows:

Plan benefit payments are not available until an agent's active working career and income from selling Allstate products has ceased, and thus is no longer in the service of Allstate. . . . An agent's active Allstate working career is not terminated by NEA status; it continues, although the legal relationship changes.

802. Logically, if employee agents who converted to so-called "independent contractor" status under the Exclusive Agent program remained "in the service" of Allstate and if, as the Pension Plan required, all "service" was to be counted, those agents could continue to accumulate service toward eligibility for early retirement benefits after the time of conversion. Accordingly, Allstate understood that it would not be able to achieve the cost savings that it had envisioned unless it further amended the Pension Plan for the purpose of ensuring no agent working under the R3001 contract would be eligible for additional retirement benefits, including early retirement.

803. Apparently recognizing that agents who converted to the R3001 contract were still common law employees and not true independent contractors, Allstate amended the Pension Plan yet again in an effort to deny eligibility for benefits under that plan. In particular, Allstate added a new provision to the Pension Plan in 1996 (the "Employee Definition Amendment") that made "Employee" a defined term and excluded from that term any person who provides services to Allstate under an R3001 contract.

804. While Allstate and the Administrator have failed to treat agents who have converted to the R3001 contract as being "in the service" of the company under the Pension Plan

at all times since at least December 1994, those amendments initially affected only the small number of employee agents who had "converted" to the Exclusive Agent program.

805.    Throughout the 1990's, Allstate used both inducements and scare tactics in an attempt to convince employee agents (other than so-called "General Agents" who were generally not permitted to convert to the Exclusive Agent program or share an office location with an NOA agent or Exclusive Agent) to sign the R3001 contract, thereby saving Allstate the expense of continuing to provide the employee benefit package to such agents. Despite Allstate's repeated efforts to persuade employee agents to terminate their employment contracts and enter into the R3001 contract, however, only about 150 out of its 15,000 employee agents did so during the first three years that the Exclusive Agent program was in effect – that is, between 1990 and 1993. Given the value of the benefits package that would be lost and the long-term income and job security they would be denied upon becoming an Exclusive Agent, the reluctance to do so was predictable.

806.    In January 1996, after settling a class action by former NOA agents in California (which asserted that Allstate's failure to reimburse NOAs for all of their actual business expenses violated the California Labor Code), Allstate announced that it had to cease operating an employee agent distribution system in California because of the risk of future liability for unreimbursed (i.e., beyond OEA) business expenses incurred by California employee agents. All of the approximately 1,600 California employee agents were therefore required to choose between continuing in the company's service by converting to the R3001 contract (which did not require the release of any claims against Allstate) or severing their relationship with the company entirely. A large number of these agents entered into the R3001 contract in order to continue in the service of the company and to pursue their careers and livelihoods as insurance agents.

COMPLAINT                                    - 148 -

807.    During the California conversion, Allstate repeatedly reassured employee agents operating outside of California that they would not be similarly forced to convert.  For instance, in its January/February issue of *Contact*—an Allstate magazine the company distributed to agents nationwide—Vice President of Sales, Chuck Martin, responded to questions about whether Allstate would try to force employee agents in other states to convert to Exclusive Agents by stating:  "No.  Absolutely not. . . . I know, in particular, that one California agent is trying to drum up fear in any state—'you're next' kind of thing.  But that is just simply not true. So no, agents in other states should not be distracted by this. . . ."

808.    The following year, in 1997, Allstate considered whether it could force a nationwide conversion of employee agents based on a recommendation made by the Internal Revenue Service ("IRS") during amicable negotiations over the classification of NOA agents after certain NOAs had successfully established in court that they were independent contractors for federal tax purposes.  Allstate concluded, however, that it could and would not unilaterally terminate employee agents' contracts to convert them to "independent contractors" for legal and fairness reasons.  In particular, Allstate informed the IRS as follows:

> [C]onverting all NOAs to independent contractors would result in a quagmire of litigation and severely disrupt the business activities of Allstate's agents. Such a change would require amending or terminating the NOAs' compensation agreements [i.e., R830/R1500 contract] to reflect independent contractor status. A unilateral change to the compensation/expense reimbursement structure for this agent group would undoubtedly lead to litigation and significantly damage[ ] Allstate's relationship with the agents. . . .

> . . .

> The NOAs are long-service employees. They have expected to be compensated as employees and receive the fringe benefits that Allstate has traditionally provided. Not only would individuals lose future benefit plan accruals and contributions if they were all converted to independent contractors, many of these individuals have spent all of their careers with Allstate and have hoped to retire with retiree life and medical benefits. Ceasing the NOAs' employee service at this juncture in their careers would have severe economic consequences to them.

*Romero v. Allstate Ins. Co.,* Civ. A. Nos. 01–3894, 01–6764, 01–7042, 2014 WL 796005, at *8-9 (E.D. Pa. Feb. 27, 2014) (quoting "Allstate Insurance Company Pre–Submission for June 23, 1997 Meeting").

809.    Despite its assurances to employee agents outside of California and its representations to the IRS, in 1997-1998, as part of its "Sales Organization of the Future" initiative ("SOOF")—overseen by a high level steering committee that included senior offices such as defendant Edward M. Liddy (then Chief Operating Office) and Robert (Bob) Gary (then President of Allstate Personal Property and Casualty)—Allstate continued evaluating whether agents should be employees or only so-called Exclusive Agent independent contractors.  Allstate recognized that reticent employee agents could not be forced to convert, but it also knew that its employee agent workforce was growing increasingly older, much older than Allstate's general employee population.  Allstate ultimately settled on gradually transitioning all agents into the Exclusive Agent program by aggressively incenting employee agents to convert "voluntarily."

810.    Allstate therefore embarked on a nationwide effort designed to pressure, intimidate and coerce its remaining employee agents to relinquish the protections, rights and employee benefits to which they were entitled under the R830 or R1500 employment contract by voluntarily converting to the R3001 contract and becoming a so-called "independent contractor." Allstate did so by, among other things, forcing employee agents to accept reduced commissions and thereby forego retirement and other benefits generated thereby; refusing to provide employee agents with updated computer technology that most Exclusive Agents received; threatening to relocate employee agents to an unsuitable or more distant site such as a warehouse or high-rise building without any signage; threatening to allow an Exclusive Agent to open a nearby office that would be in competition with an employee agent; imposing harassing and burdensome requirements upon employee agents, including requirements that their offices remain open on

evenings and weekend; and making false and misleading statements about the financial benefits of the Exclusive Agent program.

811.    Between April 1, 1998 and May 31, 1999, Allstate succeeded in getting 1,460 employee agents to convert to the Exclusive Agency program, of which about 622 were employed under the R830 contract, with another 295 employee agents, of which 175 were employed under the R830 contract, electing to leave the service of Allstate by retiring or quitting.    Many of these conversions and retirements were precipitated by Allstate's simultaneous introduction (effective January 1, 1999) of: (a) "Agency Standards", under which either the employee agent or a licensed support staff had to be in the agent's office during specified hours – that is, from 9:00 a.m. to 6:00 p.m. on weekdays and from 9:00 a.m. to 1:00 p.m. on Saturdays, and (b) certain modifications to the NOA program, including a requirement that NOA agents limit their support staff and office rent expenses to their OEA.  Most solo agents encountered difficulty complying with these new requirements because, among other things, Allstate required them to attend mandatory training sessions and meetings outside of the office during working hours and they had limited OEA to hire and pay for licensed support staff.

812.    During this same period, a large number of agents took early retirement or simply left the company, rather than accept the increasingly burdensome working conditions that were being foisted upon them.  Significantly, in the case of agents who had, for instance, satisfied the eligibility for early retirement and elected to separate from Allstate in 1998, the Beef-Up Amendment restricted them to credit for only one year of "beefed-up" service.

813.    Despite Allstate's tactics, as of November 1999, Plaintiffs—and about 6,200 other employee agents averaging age 50—still refused to "voluntarily" convert to Exclusive Agent status and give up the benefits, financial security and job protection Allstate had promised them.

COMPLAINT                                      - 151 -

## C.    ALLSTATE FINALLY RESORTED TO UNLAWFUL MEASURES TO RID ITSELF OF THE COSTS OF PROVIDING EMPLOYEE BENEFITS AND TO PURGE ITS RANKS OF OLDER AGENTS

814.    By 1999, Allstate had approximately 15,000 "captive" insurance agents in the United States who principally sold automobile, homeowner and other types of property and casualty (P&C) insurance on behalf of the company, of which more than 6,200 were still working as employee agents under the R830 and R1500 contracts.  The other 8,900 or so agents were Exclusive Agents operating under the R3001 contract or "trainees" seeking to become Exclusive Agents.

815.    Having failed in its decade-long effort to induce its employee agents to surrender their benefits and protections by converting voluntarily to so-called "exclusive agent independent contractor" status, Allstate decided that the time had come to achieve its cost-saving objectives through more coercive measures that were unlawful and otherwise violated the terms of the R830 and R1500 employment contracts.  In June 1999, Allstate charged Assistant Vice-President of Sales Barry Hutton with putting a team together to work confidentially on a plan to rid the company of the burdens associated with the aging employee agent workforce, including their employee benefits.  By early July, Hutton's "Channel Integration Project" team—which reported to a small group of Allstate officers, including Robert (Bob) Gary and Richard (Rick) Cohen— had developed the Program concept, with the Release as its center-piece, explaining in its presentation that employee agents would not be allowed to "convert, sell BOB [books of business] or receive the Separation Plan without signing a release."   *Romero v. Allstate Ins. Co.,* Civ. A. Nos. 01–3894, 01–6764, 01–7042, 2014 WL 796005, at *12-13 (E.D. Pa. Feb. 27, 2014) (quoting July 1999 "Winning in the New Century" Channel Integration Project presentation).

816.    Soon after, at the July 12–13, 1999 Allstate Board of Directors meeting, Bob Gary led a discussion concerning the company's strategy for employee agents.  During that meeting,

Allstate again acknowledged the legal and fairness issues associated with a forced nationwide conversion of employee agents to the R3001 contract. Specifically, one of the slides presented to the Allstate Board stated as follows:

AGENCY TRANSITION

| *Wish List* | *Realities* |
|---|---|
| • Agency Reduction in Force Based on Standards | • Not Legally Possible |
| • Agents All on One Contract | • Legal and Fairness Issues |
| | • Large Charge to Pension Fund |
| • Reduce Agent Compensation | • Difficult Move in View of All That is Coming Down |

817.    Despite the known legal and fairness problems, Allstate continued working on the Program concept through its Channel Integration Project team. By the end of September 1999, Hutton recommended that Allstate approve a program under which employee agents would be required to leave the company unless they converted to the Exclusive Agent program and thereby relinquished their benefits and protections as employees. This recommendation was discussed at the highest levels of Allstate's senior management team and approved by defendant Liddy and Richard (Rick) Cohen in mid to late October 1999.

818.    After approving Hutton's recommendation, Allstate's management presented the specifics of the Program to the Board of Directors on November 9, 1999. Liddy and Allstate announced the Program with great fanfare the next day.

819.    Under the Program, Allstate told employee agents that it would be "[t]erminating all remaining R830 and R1500 Agreements and all employee agent related programs on June 30,

2000" (with the exception of employee agents located in Montana and New Jersey who, according to Allstate, would be "covered in separate program with different options available to them") and "[o]ffering all agents the ability to convert to the R3001S Exclusive Agency Agreement."  Notwithstanding this representation, Allstate subsequently decided that employee agents in Montana would be subject to the Program, and thus would be terminated as of September 30, 2000, while employee agents hired on or after June 8, 1984 in West Virginia, like those employed in New Jersey, could not be terminated – whether *en masse* or otherwise – as part of the Program.  In addition, it appears Allstate made at least four exceptions for employee agents in other states, who were exempted from termination.

820.    Of the 6,200 or so employee agents who were involuntarily terminated through the Program, about 3,200 were employed under the R830 contract as of November 1, 1999, virtually all of whom had converted to the NOA program, while the other 3,100 or so had been hired under the R1500 contract as NOA agents.  Allstate additionally provided certain former employee agents who had previously converted to the R3001 contract with the opportunity to sign a form of release in order to leave the service of the company by selling their entire book of business, including business generated as an employee agent under the R830 or R1500 contracts or, alternatively, to receive an "alternative" termination payment that was essentially equivalent to the "enhanced" severance offered to employee agents subject to the Program.

821.    In the case of employee agents working under the R830 and R1500 contracts, Allstate did not in a single case make an individualized determination that "good cause" existed for the termination of any employee agent subject to the Program, as required by both forms of employment contract and by Allstate's own policies and procedures.  It also did not give employee agents notice that their jobs were in jeopardy and a "reasonable opportunity to bring . . . performance up to satisfactory standards."  Nor did Allstate follow the approval procedures

mandated under the R830 contract or the review and appeal process mandated under both contracts before termination for any reason.  Indeed, implicitly recognizing that "good cause" could not be shown for its conduct, Allstate exempted from the Program employee agents in jurisdictions such as West Virginia whose laws require such a showing for termination of an insurance agent.

822.    In a newsletter announcing its "newly revealed" initiatives, Allstate laid bare its motivation for terminating the employment status of its R830 and R1500 agents:  Allstate's "stock performance" was "down more than 20 percent since the beginning of [1999]" and, in the words of CEO Liddy himself, Wall Street was "look[ing] at the property-casualty companies" and was not "lik[ing] the growth prospects."  According to Liddy, companies like Allstate had to "scrutinize their expenses more rigorously."  Consistent with this requirement, Allstate promised its shareholders that the new initiatives would "reduce Allstate's expenses by some $600 million annually," which it expected to "fully realize beginning in 2001."  Allstate also predicted that such savings would amount to 36 cents per share (on a diluted basis) by the end of 2001.

823.    Allstate later explained that approximately $325 million of these savings would "come from the field realignment, including the reorganization of the employee agent programs into the [NEA] Program."  While Allstate misrepresented the savings associated with the Program as administrative savings resulting from the consolidation of multiple agent programs into a single nationwide structure, those supposed administrative savings represented only a minuscule portion of the total. Even ignoring the fact that Allstate continued to employ more than 500 agents under the R830 and R1500 contracts in the United States and Canada subsequent to December 31, 2000, a far larger percentage of the projected annual savings resulted from the elimination of Allstate's continuing obligation to provide about half of its agent sales force with

an employee benefits package, including contributions to the Pension and Profit Sharing Plans, than from administrative cost savings.

824.    While preventing employee agents from accruing and/or receiving the increasingly costly employee benefits long-promised to them was a determinative factor underlying Allstate's decision to institute the Program, Allstate's stated desire to "re-energize" its sales force by weeding out older agents was also determinative.  With no new hires entering their ranks since 1990, the average age of employee agents had increased steadily throughout the decade.  Trying to combat this trend during the 1990s, Allstate had approached some of its most senior and experienced agents and informed them, for example, that they were "too old" to comply with new company guidelines, and that they therefore should consider retirement.

825.    Despite these efforts, by October 1999, the average age of employee agents – who comprised 23 percent of Allstate's overall employee workforce – had risen to above 50, with approximately 90 percent of those agents being 40 years of age or older by the time of their *en masse* termination in 2000.  Not a single agent was under the age of thirty.  In contrast, the average age of all other Allstate employees was about 39, a difference of eleven years.

826.    Allstate and its senior management believed that the Program would achieve the desired "re-energizing" effect by forcing many older agents – who were stereotypically viewed as low performing, and lacking "energy," "drive," "initiative" and "entrepreneurial spirit" – to leave the company, either immediately as part of the Program or thereafter because of additional the obstacles to continued service that Allstate began to impose, including unrealistic sales quotas.  Their departures would, Allstate believed, afford the company the opportunity to replace them with younger hires who Allstate believed would be more "energetic" and "productive."

827.    Shortly after the announcement of the Program, a "home office" vice president revealed these discriminatory attitudes to a group of employee agents, stating that Allstate

expected to lose about 15 to 20 percent of its employee agents – most of whom would be "older" agents who supposedly "would not want to learn" its new system and soon-to-be-implemented computer technologies.   In another meeting with employee agents during roughly the same period, a field vice president warned that "some of you older agents won't like what's coming down the pike," or words to the effect, and predicted that they would "probably leave."   At another meeting with agents, one of Allstate's regional vice presidents stated that the purpose of the Program was to get rid of agents "who are like barnacles on the back of the great blue whale that need to be scraped off."   Other agents heard comments by Allstate managers to the effect that the company was "bringing up a new breed" and "getting rid of the fossils" and "dead wood."

828.    Further, during a job interview, the wife of one soon-to-be-terminated employee agent was told by an Allstate manager that the R3001S contract was not designed to favor older agents and, because older agents did not "fit in" with Allstate's newly-announced plans, they would be "discarded" as part of the Program.

829.    In fact, more than forty percent of Allstate's employee agents left the company as a result of the Program, virtually all of whom were age 40 and older.   To replace these older agents and to accomplish its objective of creating a younger and more "energized" sales and workforce, Allstate hired hundreds or thousands of new employees – virtually all of whom were under 40 – to fill positions in newly-established insurance sales and customer support roles that functionally replaced departing employee agents.   One Allstate manager described these new hires as "young and efficient . . . 22 and 23 year olds, straight out of college, full of enthusiasm and with a great future."   He stated further that Allstate was using a "new approach" with respect to these "young folks," such as allowing them to play computer games between customers.

### D. ALLSTATE EXPLOITED THE FINANCIAL VULNERABILITY OF ITS EMPLOYEE AGENTS TO COERCE THEM INTO WAIVING THEIR STATUTORY AND COMMON LAW RIGHTS

830.    Shortly after announcing the Program, Allstate began to communicate the details of the Program by means of scripted presentations and providing affected employee agents with a box containing extensive written materials.  The contents of this "job in a box" included the "Preparing for the Future" R830 and R1500 Agent Information Booklet for the Group Reorganization Program, as well as a copy of the Release and certain  information that Allstate was required to disclosed pursuant to the Older Workers Benefits Protection Act ("OWBPA").

831.    The Release was the linchpin of the Program.  By its terms, the Release required employee agents to:

> release, waive, and forever discharge Allstate . . . from any and all liability . . . or claims for relief or remuneration of any kind whatsoever . . . arising out of, connected with, or related to, my employment and/or the termination of my employment and my R830 or R1500 Agent Agreement with Allstate, or my transition to independent contractor status, including, but not limited to . . . any claim for age or other types of discrimination prohibited under the Age Discrimination in Employment Act of 1967, . . . the Employee Retirement Income Security Act . . . or any other federal, state or local law or ordinance or the common law.

832.    Upon presenting Plaintiffs and the other employee agents with the Release, Allstate pressured them to sign it and select from one of three mandatory "options," none of which was subject to negotiation:

- the "Forced Conversion Option," under which employee agents would be "allowed" to continue in the service of Allstate as so-called "exclusive agent independent contractors" by entering into the R3001S contract (which was even less attractive than the unattractive option that had been available for nearly a decade under the R3001 contract and which Plaintiffs had repeatedly rejected);

- the "Forced Sale Option," under which employee agents would enter into the R3001S contract and leave Allstate by selling their entire book of business to a buyer approved by Allstate in its sole discretion– that is, assuming the agent could find a "qualified" buyer and complete the sale prior to August 1, 2000 (which generally resulted in sales that were far below market in view of the short window in which to locate a buyer and the hurdles that Allstate erected for obtaining approval); and

- the "Forced Severance Option," under which employee agents would leave Allstate in exchange for so-called "enhanced" severance under the Agent Transition Severance Plan equal to the higher of the agent's commission earnings in 1997 or 1998, but to be paid in twenty-four (24) equal monthly installments over a two-year period.

Alternatively, employee agents who did not sign the Release would have their employment and agency relationships with Allstate severed entirely on June 30, 2000, and would only be eligible for "base" severance of up to thirteen (13) weeks' pay (depending on years of service) under the Agent Transition Severance Plan, payable in six (6) equal monthly installments.

833. Faced with these "choices," all of the Plaintiffs and virtually all other employee agents subject to the Program signed the Release.

834. Of the overwhelming majority of employee agents who did sign, about 2,600 – or more than forty (40) percent – left the service of Allstate under the Forced Sale or Forced Severance Options, rather than continue working without job security or the "unmatched" benefits package that Allstate had used to lure them into investing their careers and personal financial resources in the first place and upon which they had relied to provide "financial security" after retirement.  In many cases, Allstate then contacted its policyholders to advise

them that their agent had "retired."  At no time did Allstate ever inform Plaintiffs or the other employee agents that any service they provided to Allstate as an Exclusive Agent "counted" for purposes of determining eligibility for early retirement benefits under the Pension Plan.  Indeed, to the contrary, Allstate advised the agents that such service would not count and, true to its word (but in violation of law), Allstate has refused to count such service for employee agents who took the Forced Conversion Option, including many Plaintiffs.

835.    The other 4,000 or so agents subject to the Program continued working for Allstate as "exclusive agent independent contractors" under the Forced Conversion Option, even though they were told they would no longer be eligible for Allstate's employee benefits package.

836.    Allstate's success in strong-arming and/or inducing through misrepresentations all but a few of its employee agents into signing the Release and either accepting forced conversion or separation from the company's service is not surprising.  Those agents had worked as Allstate employees for at least a decade, during which time Allstate aggressively induced most of them to spend many thousands of dollars to build a profitable book of business on behalf of Allstate.  At the same time, Allstate barred them from pursuing any other business opportunity in the remote event they should ever be terminated.  Beginning in November 1999, Allstate also threatened to enforce non-competition provisions and confidentiality provisions that Allstate fictionally interpreted as eternal non-solicitation provisions against any employee agent who left its service as a result of the Program.  Thus, by November 1999, Plaintiffs—like so many other employee agents—were left so vulnerable to overreaching by Allstate and were under such extreme duress that they succumbed by signing the Release, and/or allowed themselves to be induced by Allstate's representations to sign the Release, in the face of almost certain financial ruin.

1.      **Employee Agents Who Did Not Sign The Release Stood To Lose Their Substantial Investments And Careers**

837.    Since launching the NOA program in 1984, Allstate engaged in an aggressive campaign to directly and indirectly pressure employee agents (including Plaintiffs) to heavily invest their financial resources into building a book of business, going so far as to monitor the amount each agent invested. Allstate was strongly motivated to do so. The more money that agents invested in their agencies, the greater was their capacity to solicit new customers and, hence, to generate additional revenues for Allstate. At the same time, by setting the formula for calculating the OEA so as to ensure that generally only a fraction of the actual costs of running a sales office would be reimbursed, Allstate was able to maximize its profit margin on those revenues while shifting most of the risk of loss to its employee agents. As Jerry Choate, Allstate's former President and Chief Executive Officer, stated in explaining the NOA program, "[w]hen the allowance is depleted, the agents dig down into their own pockets" – thus sparing Allstate the expense of digging into its own.

838.    Furthermore, Allstate resorted to deception and hyperbole to induce its employee agents to invest their own money on its behalf by telling them, for example, that "there's no limit to your potential income!" and that all agents needed to do to achieve that potential was to hire more and more support staff, thereby enabling them to sell more policies, telling agents "It's as simple as that!" Allstate further assured its employee agents that there was no need for them to worry about the escalating expenses needed to generate additional sales, because for every dollar spent, the company trumpeted that agents would receive "double, triple, quadruple your investment."

839.    The expense for which Allstate encouraged its employee agents to make their greatest investment was support staff. Allstate instructed agents that the best way to increase new business production was to "free up" their time by hiring more and more support staff who

could take responsibility for servicing existing customers.   According to Allstate, the investment in each staff member could normally be recouped in two years or less.  In addition, to motivate its managers to reinforce the company's position, Allstate tied the compensation of its managers to the number of staff members hired by the employee agents who were under them; the larger the staff, the larger the manager's bonus.

840.    As a result of the pressure put on them by Allstate and of the very manner in which Allstate structured their compensation, most employee agents, including Plaintiffs, had to invest substantial sums of their own money and/or other resources (by, for instance, having their spouses or family work for little or no pay at their agency) each year and, by the time Allstate announced the Program in late 1999, had sunk substantial personal resources into developing a book of business, all in the expectation of recouping such "investments" in the promised form of continued renewal commissions and increased benefits upon retirement.  When these employee agents did not have sufficient liquid resources to cover these increasing investments, Allstate pressured them to obtain small business loans, mortgage their homes, and borrow against retirement and college savings.  And many employee agents did just that.

841.    At the same time it was encouraging its employee agents to "dig deep into their own pockets" to expand their book of business, Allstate officially maintained that these agents had no ownership or transferable interest in that business.  In fact, however, many agents found ways to transfer interests with Allstate's knowledge and acquiescence.  Still, the majority of employee agents did not know about these possibilities, and hence, when employee agents left the service of Allstate (without converting to Exclusive Agents), they were unable to recoup their investments of time and money by selling their book of business or continuing to receive commissions upon the renewal of policies previously sold.  Rather, the agents had to remain in the service of Allstate until they became eligible for retirement benefits – a minimum of twenty

COMPLAINT                                      - 162 -

(20) years and until age 55 to qualify for early retirement – in order to begin to recoup that investment. The employee agents subject to the Program averaged approximately age 51 with 19 years of service. Accordingly, for many employee agents subject to the Program, including Plaintiffs, refusal to execute the Release meant the certain loss of the substantial investment upon which their financial security was based.

842.    Additionally, at the end of 1998, Allstate "upped the ante" when it required agents in the NOA Program to submit OEA Worksheets estimating their annual agency expenses for 1999. If the amount of OEA was insufficient to cover office lease and support staff expenses, the NOA agent had to either convert to the Exclusive Agent program (again, without having to release claims) or increase the amount of OEA by agreeing to accept a one to two point reduction in commission rates and having that amount reallocated to OEA. These lower commissions in turn reduced the retirement benefits that agents would earn subsequent to January 1, 1999, as those benefits were based on commission earnings, exclusive of OEA.

**2.    Allstate Made It Virtually Impossible For Long-Time Employee Agents To Pursue Their Professions Upon Termination Unless They Signed The Release**

843.    Not only would employee agents who refused to execute the Release face the loss of the substantial investments they had made in building a book of business, they also would be left with virtually no means to pursue their chosen profession as insurance agents and, given the loss of investments in their agencies, little prospect of finding a new one. The employee agents found themselves in this unenviable position because the contracts that governed their relationship with Allstate purported to bar them from developing any independent business, and severely restricted their ability to establish any new business in the fields of insurance and financial services for at least a year or two after that relationship ended.

844.    Under both the R830 and R1500 contracts, employee agents were required to "devote [their] entire business time" to the performance of their duties as agents and not to

engage in any other type of employment, profession or business opportunity without Allstate's consent.  In particular, employee agents were absolutely barred from selling insurance or other products of any competing company.

845.    Employee agents also were inhibited by restrictive covenants "not to compete" in the event their relationship with Allstate terminated.  Under the R830 contract, employee agents were barred for a period of two years following such termination from "solicit[ing] or sell[ing] insurance of any kind" either: (a) to any person or entity to whom they had previously sold an Allstate policy; or (b) within one mile from any Allstate location from which they had solicited or sold insurance during the two-year period immediately preceding such termination, even though the vast majority of employee agents owned or leased their own offices.  The restrictions in the R1500 contract were substantially the same, except that the temporal scope of those restrictions was limited to one year.

846.    In the course of explaining the options available to them under the Program, Allstate further instructed its employee agents that it "owned" their agency telephone numbers – one of an insurance agent's most valuable business assets – even though employee agents had been required to pay the installation costs and all monthly bills in most cases.  Allstate therefore foreclosed the option of an agent opening up a new agency miles away and having customer calls forwarded to the new office.

847.    Allstate also maintained that an agent's list of customers, including the names and addresses of such customers, was proprietary to the company and strictly confidential.  Allstate represented to the employee agents subject to the Program that under the terms of the R830 and R1500 contracts, once an employee agent's relationship with the company ceased, any list comprising a book of business must be returned and the employee agent was forever barred from initiating contact with any former customer (whether the customer was a relative or someone

with whom the agent had a pre-existing personal relationship) in whatever form and for any commercial purpose, regardless of how much time passed. The latter representation, however, was false. Nevertheless, Allstate advised the employee agents in its standard Program communications that it would "treat any attempt by a former agent to contact former customers (or any person whose identity was discovered as a result of his/her status as an Allstate Agent . . . ) in whatever form as solicitation." Allstate further warned that it would take "appropriate action" against any employee agent who used information Allstate deemed confidential or acted in any manner inconsistent with its interpretation of this "non-solicitation" restriction, including notifying the former agent's new company and filing a lawsuit against the former agent and her new company.

848. Moreover, Allstate designed the severance options under the Program in a manner intended to coerce agents who refused to continue in Allstate's service under the R3001S contract to nevertheless sign the Release. In particular, although the Program operated like a "rearrangement of work" or "reduction in force" (both covered events under Allstate's pre-existing Severance Pay Plan), on the eve of the Program announcement, Allstate self-servingly characterized the Program as a "group reorganization", a type of event that did not trigger benefit entitlements under the Severance Pay Plan. Allstate's intent in belatedly calling the Program a so-called "group reorganization" was to deny terminated employee agents its standard severance of up to fifty-two (52) weeks' pay (depending on completed years of service), usually paid in an immediate lump sum, under Severance Pay Plan, which did not require the release of any claims against Allstate or the assumption of any non-compete obligations or of an eternal prohibition against contacting former Allstate customers for any commercial purpose. Indeed, at the same time that Allstate adopted the Agent Transition Severance Plan for the Program in November 1999, it also purported to amend the Severance Pay Plan to specify that employee agents

COMPLAINT                                    - 165 -

terminated under the Program were ineligible for benefits thereunder.  As a result, employee agents subject to the Program could only receive severance through the Agent Transition Severance Plan, which did not provide for an immediate lump sum payment of severance benefits and imposed on agents who accepted benefits thereunder (including "base" severance) various additional burdens, including:    (a) a new two-year non-compete/non-solicitation provision barring the agent from soliciting the purchase of products or services in competition with those sold by Allstate to any person who was a customer of Allstate at the time of termination or whose identity was discovered as a result of their status as an Allstate agent, as well as a one-year restriction on soliciting the purchase of such products or services from an office or business site located within one mile of the former agent's Allstate sales location; and (b) a confidentiality provision purporting to prohibit the agent from ever using the name of, or other information they knew about, their former Allstate customers "for their own benefit or the benefit of others" – even for non-competing commercial purposes.

849.    In spite of the termination of their agency appointments and the substantial additional restrictions imposed by the Allstate, under the original Program terms Allstate communicated to employee agents, agents who did not sign the Release remained responsible for whatever lease obligations, mortgate payments for their offices, and other financial arrangements that they had entered into in the expectation of continuing their agency relationship with Allstate.

850.    The net effect of the numerous and substantial restrictions that Allstate imposed upon its employee agents and the manner in which it structured the Program was to leave Plaintiffs and the other employee agents with little, if any, prospect for meaningful employment or self-employment when Allstate terminated their agency appointments and no real choice other than to sign the Release.  For the past decade or longer, they had been denied the opportunity to sell insurance products on behalf of any competing companies, to earn other income for

COMPLAINT                                    - 166 -

retirement, or to gain experience in any other line of work. Were they to attempt to reestablish themselves in the insurance business, they would have to start literally from "scratch" and face enormous obstacles as Allstate insisted that they were not permitted to sell insurance products to former customers, would have to relocate from the offices they themselves leased or owned and would have to surrender their agency telephone number to Allstate. Any such effort to build a new business would be made all the more difficult by virtue of the fact that most of their financial resources were tied up in the investments in their Allstate agencies, investments that they would never see any part of unless they mitigated such loss by signing the Release and accepting one of the three options that Allstate had thrust upon them.

### 3.    Allstate Also Made Material Misrepresentations to the Employee Agents in connection with the Decision to Sign the Release

851.    At or around the time of the Program, Allstate made numerous misrepresentations or omissions of material fact to Plaintiffs and the other employee agents concerning the consequences of signing or not signing the Release in order to induce them to waive their rights. Among other things, Allstate falsely represented to the employee agents subject to the Program that the confidentiality provision in their soon-to-be terminated R830 and R1500 contracts imposed on them a lifetime ban on contacting former customers for any purpose whatsoever if they left Allstate's service and did not sign the Release. As the Court in *Romero* held, however: "Nothing in the Allstate confidentiality provision could possibly be construed, under any reasonable interpretation, as reaching that far. Yet, this is the representation that Allstate effectively made to its agents." *Romero v. Allstate Ins. Co.,* Civ. A. Nos. 01–3894, 01–6764, 01–7042, 2014 WL 796005, at *77 (E.D. Pa. Feb. 27, 2014).

852.    In addition, Allstate represented to Plaintiffs and the other employee agents who were being terminated that there would be other employment opportunities for them within the company. However, after the deadline for the Release, Allstate formally adopted a rehiring

moratorium that changes its standard rehire policy and denied employee agents subject to the Program any re-employment for a one to two year period, regardless of the agents' qualifications. While Allstate terminated certain other non-agent employees in contemporaneous reductions in force, it did not impose a similar moratorium on their rehire. For those employee agents who left Allstate's service as a result of the Program before completing 20 years of continuous service, the rehire moratorium barred them from ever satisfying that requirement for early retirement benefits.

853. Allstate also made numerous misrepresentations or omission of material fact concerning the Exclusive Agent program and R3001S contract under the Forced Conversion Option. For instance, in widely-distributed communications, and through local managers, Allstate affirmatively reassured the employee agents subject to the Program that there was no ongoing work or plans to reduce the commissions rates paid to Exclusive Agents operating under the R3001 contract. Unbeknownst to Plaintiffs, however, Allstate already had plans in place in 1999 to slash Exclusive Agent commission rates in the near future. And Allstate did, in fact, subsequently slash the commission rates, but it did not announce the change to the agents until 2002.

854. Moreover, while Allstate vaguely informed employee agents that under the Forced Conversion Option, their agency would "be expected to achieve certain business results," it failed to disclose to the employee agents that those "business results" would be production quotas, which Allstate could set (even at unrealistic levels) in its sole discretion and which, if not met, would lead to the termination of the agent. Yet, after the Program, Allstate in fact imposed unrealistic production quotas and terminated many converted agents for failing to meet them. Such use of quotas was directly contrary to how Allstate described the Exclusive Agency

Program in seeking a determination from the Internal Revenue Service that exclusive agents operating under the R3001 contract would be independent contractors.

855.    Finally, Allstate informed employee agents that they would be independent contractors able to control the means by which they did business.  This too was a material misrepresentation.  In fact, the R3001S contract gave Allstate the right to control agents, and agents who converted found that Allstate controlled them, in much the same manner as before the Program, as set forth below.

### 4.    Allstate Refused to Suspend the Program Despite the EEOC's Preliminary Determination that the Release Was "Unlawful"

856.    Faced with the prospect of financial ruin versus signing a document that purported to waive their statutory and common law rights, many employee agents, including numerous Plaintiffs, attempted to take a third route by filing charges of age discrimination and retaliation with the EEOC. After completing an initial review of these charges, the EEOC informed Allstate, in a letter to CEO Liddy, dated May 2, 2000, of the preliminary determination that the Release was "unlawful."   The EEOC further urged Allstate to "suspend[] the waiver requirement" until it was able to complete its investigation.

857.    Allstate wrote in response on May 15, 2000, that, among other things, signing the Release does not prevent employee agents "from challenging the validity of the release and pursuing [a] claim of discrimination."  Allstate thereafter rebuffed the EEOC by letter dated May 30, 2000.  Allstate informed the EEOC that it intended to proceed with the implementation of the Program, including requiring employee agents to execute the Release, despite the EEOC's preliminary determination.

858.    By the time of the deadline for executing the Release (which, in most instances, was May 31, 2000), many employee agents had become aware of the EEOC's preliminary determination and Allstate's decision to flaunt that determination.   Accordingly, when they

executed the Release, these agents were not only operating under extreme economic duress but also in the belief that the Release was unlawful.

859.    Subsequently, the EEOC issued Letters of Determination dated as of September 19, 2000, affirming its preliminary determination and concluding that Allstate had acted in violation of the ADEA, the Civil Rights Act of 1964, and the Americans with Disabilities Act of 1990 by expressly conditioning the right of employee agents to convert to so-called "independent contractor" status – and thereby recoup at least a portion of the investments that they had made at the behest of Allstate – on the execution of the Release.  Characterizing Allstate's actions as "threats, coercion, and intimidation," the EEOC concluded that refusal to execute the Release constitutes protected activity within the meaning of those federal statutes, and that the Release itself was invalid and unenforceable.

## E.    ALLSTATE'S EXPLANATIONS THAT IT IMPLEMENTED THE PROGRAM TO INCREASE "PRODUCTIVITY" AND "ENTREPRENEURIAL FREEDOM" AND TO ELIMINATE COMPLEXITY FROM MULTIPLE AGENT PROGRAMS ARE FALSE, PRETEXTUAL OR CONTRARY TO CONTRACTUAL PROTECTIONS

860.    Allstate's proffered reasons for implementing the Program are false, pretextual or contrary to Allstate's contractual obligations.  First, in one slide in its November 1999 scripted presentation to agents about the Program, Allstate claimed that the Exclusive Agents had higher productivity than employee agents, suggesting that was one of the justifications for the Program. Allstate's contention that Exclusive Agents were more productive is based on equivocal data: another slide of the same presentation suggests the very opposite.  More important, if Allstate did implement the Program for that reason, it violated the contractual provisions that agents had to be offered notice and an opportunity to improve before being terminated for performance reasons.

861. Second, Allstate claimed the Program was implemented to eliminate the complexity of having multiple agent contracts and the associated administrative costs. However, Allstate admittedly continued to have the same number of different agent contracts after the Program. Additionally, the administrative costs were miniscule compared to the hundreds of millions of dollars the company knew it would save in employee benefits, including under the Pension Plan.

862. Third, Allstate attempted to justify the Program on grounds that the Exclusive Agent program was better for its soon-to-be-terminated R830 and R1500 agents because it would afford them "entrepreneurial freedom." It also promised that the R3001 contract would allow them to make more money and afford them freedom from the pervasive control exercised over them as employees, including relieving them of the obligation to attend meetings which had been mandatory for employee agents.

863. Allstate knew better. Converting to Exclusive Agents reduced employee agents' total compensation because, among other things, the agents lost their OEA, production allowance and subsidized employee benefits. Additionally, under the R3001S contract that agents were required to sign as part of the Program, Allstate retained the right to restrict "entrepreneurial freedom" in the same manner as it had prior to the Program and to control nearly every aspect of the manner and means through which agents solicit, market and sell insurance products and other services on Allstate's behalf.

864. Since the Program, Allstate has, in fact, continued to exercise at least as much control over agents who converted to so-called "independent contractor" status under the R3001S contract as it did when those agents enjoyed employee status under their R830 and R1500 contracts by, among other things:

COMPLAINT                                    - 171 -

- requiring Exclusive Agents to obtain Allstate's approval before engaging in any other form of business activity;

- prohibiting Exclusive Agents from selling insurance on behalf of Allstate's competitors;

- dictating the minimum number and most of the specific hours that an Exclusive Agent's office must remain open;

- imposing a dress code on Exclusive Agents and their staff;

- requiring Exclusive Agents to obtain Allstate's approval before hiring support staff employees;

- requiring Exclusive Agents to attend company meetings;

- compelling Exclusive Agents to replace their own telephone and computer systems with new systems leased from Allstate and linked to its centralized system, thereby enabling Allstate to monitor the details of their performance;

- prohibiting Exclusive Agents from using any software on those computer systems other than that supplied by Allstate or from communicating with clients and potential clients on web sites not approved by Allstate;

- requiring Exclusive Agents to forward incoming calls to Allstate customer service centers, thereby enabling Allstate to confiscate their business;

- ordering Exclusive Agents to solicit new client "leads";

- refusing to allow Exclusive Agents to use the word "Allstate" on agency "web pages" without the company's approval;

- mandating that any display advertisement Exclusive Agents wish to place in the Yellow Pages conform with Allstate's specifications, including the omission of any reference to Allstate; and

- imposing unobtainable production quotas upon Exclusive Agents and terminating their contracts and agency relationships if those quotas are not reached.

Thus, even though the R3001S contract states that agents "will have full control of [their] time and the right to exercise independent judgment as to the time, place, and manner of performing [their] duties," Allstate has compelled converted agents, under threat of termination, to comport with myriad requirements pertaining to the day-to-day operation of their agencies.

COMPLAINT                                    - 172 -

865.    Thus, the promise of greater "entrepreneurial freedom" was false. It was made to try to hide the true purposes of the Program:  to eliminate accrual and payment of retirement and other benefits to employee agents, and to weed out older employee agents.

## F.    ALLSTATE HAS HIRED THOUSANDS OF YOUNGER EMPLOYEES AND EXCLUSIVE AGENTS SINCE IMPLEMENTING THE PROGRAM

866.    Since 2000, Allstate has directly and/or functionally replaced employee agents who left the service of the company with thousands of younger individuals, the majority of whom are under the age of 40.  These individuals, including newly-hired Exclusive Agents and employees hired to sell and service Allstate insurance via "1-800-ALLSTATE" and the Internet, have filled sales and customer service positions for which the terminated agents were amply qualified.  In addition to the fact Allstate did not provide pension, medical and other benefits to newly-hired R3001 Exclusive Agents, the cost of providing employee benefits to newly-hired employees was far less than it would have been had a corresponding number of employee agents been transferred or rehired as employees to staff newly-established regional call centers to solicit insurance and other products via "1-800-ALLSTATE" and the Internet.

## G.    ALLSTATE UNLAWFULLY REFUSED TO REEMPLOY TERMINATED EMPLOYEE AGENTS

867.    Under the Pension Plan, any employee agent who was rehired by Allstate within twelve (12) months of termination did not incur a "break" in "continuous service," as the participant was entitled to receive credit for all previous service and for the period of "broken" service, as if he or she had never left the employ of the company.

868.    Ordinarily, Allstate did not limit the rehiring of employees unless they were fired for poor performance or misconduct.  However, in order to ensure that employee agents would not be able to frustrate the company's unlawful Program objectives by rejoining the company's employee population and taking advantage of the re-employment provisions in the Pension Plan

(and its other retirement plans), Allstate adopted a policy under which it refused to reemploy employee agents terminated as part of Program for a period of at least one to two years. Allstate maintains this moratorium was not implemented until September 26, 2000 – that is, more than three months after the deadline it set for employee agents to sign the Release.

869.    In accordance with this policy, Allstate unlawfully denied employment to a number of employee agents who had applied for sales, customer service, claims adjustor, security and other employee positions with Allstate during the period that the moratorium was in effect. Moreover, having learned of the rehire policy, a great many other former employee agents were deterred from applying for these employee positions because they knew that any such application would have been futile.

870.    Absent the moratorium, many former employee agents would have applied for employment positions with Allstate once their R830 and R1500 contracts had been terminated. In fact, during the year-long period in which the moratorium was in effect, Allstate hired upwards of 1,000 individuals to fill sales, customer service and claims adjustor positions for which its former employee agents were eminently qualified.

871.    As noted above, the individuals Allstate hired to staff these regional call centers were generally much younger than the employee agents subjected to the Program and the cost of providing benefits to these newly hired employees is far less than it would have been for a corresponding number of former employee agents. Accordingly, through the implementation of this discriminatory and retaliatory policy, Allstate was able to serve its twin objectives of cutting employee costs and reducing the average age of its work force.

## H.    ALLSTATE'S UNLAWFUL CONDUCT HAS HAD A DEVASTATING IMPACT ON PLAINTIFFS AND THE OTHER FORMER R830/R1500 AGENTS

872.    The effect of the Program upon Plaintiffs and other former R830 and R1500 agents has been devastating. As a result of the termination of their employment contracts and the

denial of their employee benefits, Plaintiffs have experienced a dramatic and sudden decline in their income that, in many cases, has forced them to further deplete what remains of their life savings, to sell or mortgage their homes and even to declare personal bankruptcy.

873.    As a result of the extreme economic hardship occasioned by the Program, many former employee agents, including many of the named Plaintiffs, have suffered from emotional distress, including anxiety, depression and loss of self-worth.  Indeed, in a number of cases the emotional toll on these agents has been so severe that they have required psychiatric counseling and anti-depressant drugs and, on occasion, even hospitalization.  Some agents have even taken their own lives.

## I.    AFTER THE PROGRAM, ALLSTATE CONTINUED TO UNDERTAKE EFFORTS TO RID ITSELF OF REMAINING FORMER R830/R1500 AGENTS

874.    Since 2000, Allstate has taken steps to rid itself of most of the remaining former R830 and R1500 agents who signed the Release and continued in the company's service as "exclusive agent independent contractors" under the Forced Conversion Option.  In fact, having purportedly swept aside the statutory protections afforded to them as "employees" and the procedural and other protections afforded under the express and implied terms of R830 and R1500 contracts, Allstate has singled out hundreds of these former employee agents, including some of the Plaintiffs named herein, for termination, thereby leaving them with no option but to attempt to recoup their investments of time and money by attempting to sell their books of business, in many instances at a significant discount due to the fact that there may be only a single purchaser Allstate is willing to approve, in its sole discretion.  In other instances, the agents have not been able to sell and have merely received a significantly diminished termination payment under the terms of the R3001S contract.

## CLAIMS

### COUNT I

### DECLARATORY JUDGMENT: INVALIDITY OF THE RELEASE
### UNDER ERISA, THE ADEA AND COMMON LAW
### (On Behalf Of All Plaintiffs Against Allstate)

875.    Plaintiffs restate and reallege the allegations contained in paragraphs 1 to 874 of this Complaint as though set forth here in full.

876.    As employees of Allstate, Plaintiffs had a right not to be terminated from employment: (a) on the basis of their entitlement or anticipated entitlement to employee benefits under Section 510 of ERISA ("Section 510"), 29 U.S.C. § 1140; (b) on the basis of age once they attained the age of forty (40) under the ADEA; and/or (c) without "good cause" and without being afforded a reasonable time to make good on their investments in accordance with the express and implied terms of their employment agreements with Allstate.

877.    Prior to the implementation of the Program, Plaintiffs had devoted the prime of their professional careers to obtaining and servicing customers on Allstate's behalf and invested substantial personal resources to create a profitable book of business based on Allstate's promises of job security and financial protection.

878.    As part of its Program, Allstate informed Plaintiffs that it would terminate their employment status by June 30, 2000, and presented them with the Release under which they would have to relinquish, among other rights, their rights to challenge the termination of their employment on the ground that it violated Allstate's statutory obligations under the ADEA and ERISA, as well as its contractual and fiduciary obligations.  Allstate further informed Plaintiffs that they could sign the Release and, thereby, either: (a) continue in the service of Allstate as "captive" agents but as purported "independent contractors" who were treated as ineligible for pension and other employee benefits; or (b) cease providing service to Allstate upon selling their

COMPLAINT                                - 176 -

books of business or in exchange for certain severance payments.  Alternatively, Plaintiffs had the "option" of refusing to sign the Release, whereby they would be left with no means to make good on their investments or to continue practicing their profession as insurance agents.

879.    Although Plaintiffs were facing involuntary termination through no fault of their own, Allstate (a) denied them the right to convert to Exclusive Agent without signing the Release (as they had been able to do since 1990); (b) threatened to enforce, against those who did not sign the Release and convert, the non-compete restrictions in the R830 and R1500 contracts as well a purported contractual ban on ever contacting any of their Allstate customers (even relatives) for any commercial purpose; and (c) belatedly and self-servingly labeled the Program a "group reorganization" to deny no-strings-attached severance to departing agents and force them to sign the Release in order to receive anything other than nominal severance, thereby imposing on the departing agents additional, onerous post-termination obligations under the Agent Transition Severance Plan.  Allstate's actions and threats were unconscionable, in bad faith, deceitful and otherwise wrongful and/or unlawful and left Plaintiffs no reasonable choice but to sign the Release.

880.    The EEOC determined that the Release was unlawful and retaliatory and informed numerous employee agents of its preliminary determination prior to the June 1, 2000 deadline for executing the Release.

881.    Facing no real alternative (and many believing that the Release was invalid and unenforceable), all Plaintiffs—like virtually all other employee agents subject to the Program—ultimately signed the Release.

882.    The Release was part and parcel and in furtherance of an unlawful scheme to interfere with the attainment of rights to which employee agents were entitled or may have become entitled under the Plans, to rid the company of older employees and to otherwise

retaliate against the 6,200 or so employee agents who had refused to convert to the R3001 contract since October 1990.

883.    In view of the dire consequences Plaintiffs faced if they did not execute the Release, Allstate's repeated material misrepresentations concerning the rights and consequences of agents leaving Allstate's service as opposed to signing the Release and continuing in that service, the preliminary determination of the EEOC, and the totality of the circumstances, the decision of Plaintiffs to sign the Release was made under duress, and was neither knowing nor voluntary and, hence, is invalid and unenforceable under the ADEA, ERISA and the common law.

884.    Because Allstate acted with unclean hands in securing the Release from Plaintiffs, thereby affecting the balance of equities between the parties, Allstate is precluded from enforcing the Release against Plaintiffs.

885.    Inasmuch as Plaintiffs received no consideration in addition to anything of value to which they already were entitled in exchange for executing the Release, it is invalid and unenforceable under the ADEA, ERISA and the common law.

886.    In conditioning the continuance of their service and agency relationship with Allstate on Plaintiffs' waiver of their rights under federal remedial statutes such as the ADEA and ERISA, the Release is in violation of public policy and, hence, invalid and unenforceable.

887.    In view of the vast disparity in bargaining power between Allstate and Plaintiffs, the grossly oppressive and one-sided terms of the Release, the fact that the Release was presented to Plaintiffs on a "take-it-or-leave-it" basis without any opportunity for negotiation, Allstate's repeated misrepresentations concerning the rights and consequences of agents who left Allstate's service as opposed to signing the Release and continuing in that service,   and

COMPLAINT                                    - 178 -

considerations of public policy, the Release is unconscionable and, hence, invalid and unenforceable under the ADEA, ERISA and the common law.

888.    In giving Plaintiffs no choice but to convert to Exclusive Agents in order to continue in Allstate's service and requiring them to sign the Release waiving their rights to pursue their claims under the ADEA and ERISA in order to convert, Allstate has engaged in retaliatory conduct in violation of 29 U.S.C. §§ 623(d) and 1140. Inasmuch as they were procured by means of such unlawful retaliatory conduct, the Releases are invalid and unenforceable under the ADEA and ERISA.

## COUNT II

### INTERFERENCE WITH EMPLOYMENT AND RETALIATION IN VIOLATION OF SECTION 510
### (On Behalf Of All Plaintiffs Against Allstate And Liddy)

889.    Plaintiffs restate and reallege the allegations contained in paragraphs 1 to 888 of this Complaint as though set forth here in full.

890.    Allstate designed and implemented the Program with the intention of interfering with employee agents' attainment and receipt of benefits under the Plans. As part of its unlawful scheme, Allstate informed virtually all of its employee agents, including Plaintiffs, that it would terminate their status as employees, and its agency relationship with them entirely, unless each of them signed the Release and entered into an R3001S contract.

891.    By implementing the Program, Allstate severed its employment relationship with approximately 6,200 of its employee agents, including Plaintiffs. Allstate permitted those agents who agreed to become so-called "exclusive agent independent contractors" and who signed the Release to continue in Allstate's service as captive agents under the R3001S contract, but without pension and other employee benefits. With respect to those Plaintiffs who refused to sign the Release, and were unwilling to perform the same job as so-called "independent

contractors," Allstate refused to permit them to remain in its service and terminated its employment and agency relationships with them entirely.

892.    Almost immediately after terminating the employment status of all Plaintiffs, Allstate implemented a company-wide policy barring rehiring and employment of any former agents who were subject to the Program for a period of at least one year.

893.    Both in discharging each of the Plaintiffs and in imposing a moratorium on rehiring them, Allstate and Liddy acted with the specific intent of interfering with the attainment of rights to which Plaintiffs were entitled or may have become entitled under the Plans.

894.    Both the discharge of each of the Plaintiffs and the imposition of the rehiring policy constitute acts of retaliation against Plaintiffs for exercising the rights to which they were entitled under the Plans and ERISA.

895.    The conduct of Allstate and Liddy as set forth in this COUNT II is in violation of ERISA Section 510.

896.    As a result of the unlawful conduct of Allstate and Liddy as set forth in this COUNT II, Plaintiffs have suffered losses, including but not limited to, termination of employment and loss of benefits.

## COUNT III

### DISCRIMINATORY TERMINATION AND RETALIATION
### IN VIOLATION OF 29 U.S.C. § 623(a)
### (Disparate Treatment and Disparate Impact)
### (On Behalf Of The ADEA Plaintiffs Against Allstate)

897.    The ADEA Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 896 of this Complaint as though set forth here in full.

898.    As part of its Program, Allstate informed virtually all its employee agents, including the ADEA Plaintiffs, that it would terminate their employment status and gave each

agent the alternative of remaining in Allstate's service under the R3001S contract or of ending his or her agency relationship with Allstate entirely.

899.    Allstate was aware that over ninety (90) percent of the agents whose employment relationships were to be severed under the Program, including each of the ADEA Plaintiffs, would be forty (40) years of age or older on the date of termination. Allstate understood and expected that a much larger percentage of employee agents age forty (40) or older than agents under age forty (40) would have their relationship with Allstate severed entirely under the Program, rather than remain in the company's service without benefits.  Allstate also understood and expected that a much larger percentage of employee agents age forty (40) or older than agents under age forty (40) who continued the relationship beyond June 30, 2000, would discontinue the relationship within a few years because of their unwillingness to remain in Allstate's service without benefits, or that Allstate itself would sever the relationship within a few years after the Program based on pretexts created through its onerous and discriminatory actions against them.

900.    Allstate did, in fact, terminate the employment contracts under which each of the ADEA Plaintiffs had been hired.  Allstate's actions also did, in fact, result in employee agents age forty (40) or older disproportionately leaving the company's service entirely.  Allstate's actions had a significant and disproportionate adverse and discriminatory impact on employee agents who were age forty (40) and older, including each ADEA Plaintiff, in violation of the ADEA.  This discriminatory employment practice was not based on reasonable factors other than age and there was no legitimate business reason or purpose for Allstate to terminate its long-time employee agents.

901.    Allstate desired to get rid of ADEA Plaintiffs and the other employee agents who were age 40 or older because of its stereotypes about them and replace them with younger

individuals who were subsequently hired as employees in sales and customer service roles or as "exclusive agent independent contractors." This desire to get rid of its older agents was determinative in its decision to terminate the employment status of the ADEA Plaintiffs.

902.    Allstate's termination of the ADEA Plaintiffs' employment and agency relationships with the company constitutes a discriminatory employment practice in willful violation of 29 U.S.C. § 623(a)(1) and in violation of 29 U.S.C. § 623(a)(2).

903.    Allstate's decision to impose the R3001S contract, with its less favorable terms than the R3001 contract used prior to November 10, 1999, on the ADEA collective action members who decided to continue their relationship with Allstate after the Program, also constitutes a discriminatory employment practice in willful violation of 29 U.S.C. § 623(a).

904.    As a result of Allstate's discriminatory conduct as set forth in this COUNT III, the ADEA Plaintiffs have suffered losses, including but not limited to, termination of employment, loss of investment capital, loss of income and loss of benefits.

## COUNT IV
## BREACH OF THE R830 CONTRACT
### (On Behalf Of The R830 Plaintiffs Against Allstate)

905.    The R830 Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 904 of this Complaint as though set forth here in full.

906.    The employment relationship between Allstate and the R830 Plaintiffs is governed by Allstate's standardized R830 contracts, all or almost all of which were entered into on or before September 30, 1984.

907.    The R830 Plaintiffs fully performed all of their obligations under their R830 contracts with Allstate.

908.    Under the express and implied terms of the R830 contract, Allstate could not terminate the R830 Plaintiffs except for "good cause" and in accordance with the procedures governing termination that are set forth in the R830 contract.

909.    In order to minimize its costs and maximize its profits, Allstate compelled, encouraged and otherwise induced the R830 Plaintiffs to invest substantial personal resources in Allstate's insurance business since at least October 1, 1984, and continuing for the duration of their employment relationship.

910.    In accepting the financial and other benefits of such investments, Allstate obligated itself, as a matter of law, to continue its employment relationship with the R830 Plaintiffs for at least a reasonable period of time for them to make good on their continuing investment in light of all the circumstances.  These circumstances include, but are not limited to, the amount of the investments the R830 Plaintiffs made in Allstate's insurance business and the duration of the period over which such investments were made.

911.    In implementing the Program, Allstate terminated the employment status of each of the R830 Plaintiffs without "good cause," without regard to the procedural safeguards set forth in the R830 contract, without affording them a reasonable period to improve their performance to the extent it was regarded as inferior to the performance of Exclusive Agents, and without affording them a reasonable period of time to make good on their investments.  Such termination was in material breach of Allstate's express and implied obligations under the R830 agreement.

912.    As a result of Allstate's breaches of its contractual obligations, the R830 Plaintiffs have suffered losses, including but not limited to, termination of employment, loss of investment capital, loss of income and loss of benefits.

**COUNT V**

**BREACH OF THE R1500 CONTRACT**
**(On Behalf Of The R1500 Plaintiffs Against Allstate)**

913.    The R1500 Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 912 of this Complaint as though set forth here in full.

914.    The employment relationship between Allstate and the R1500 Plaintiffs is governed by Allstate's standardized R1500 contracts, which were entered into between the approximate dates of October 1, 1984 through September 30, 1990.

915.    The R1500 Plaintiffs fully performed all of their obligations under their R1500 contracts with Allstate.

916.    Under the express and implied terms of the R1500 contract, Allstate could not terminate the R1500 Plaintiffs except for "good cause" and in accordance with the procedures governing termination that are expressly or impliedly incorporated into the R1500 contract.

917.    In order to minimize its costs and maximize its profits, Allstate compelled, encouraged and otherwise induced the R1500 Plaintiffs to invest substantial personal resources in Allstate's insurance business throughout the duration of the existence of their employment relationship.

918.    In accepting the financial and other benefits of such investments, Allstate obligated itself, as a matter of law, to continue its employment relationship with the R1500 Plaintiffs for at least a reasonable period of time for them to make good on their continuing investments in light of all the circumstances. These circumstances include, but are not limited to, the amount of the investments made by the R1500 Plaintiffs and the duration of the period over which such investments were made.

919.    In implementing the Program, Allstate terminated the employment status of each of the R1500 Plaintiffs without "good cause," without regard to the procedural safeguards

governing termination that are expressly or impliedly incorporated into the R1500 contract, without affording them a reasonable period to improve their performance to the extent it was regarded as inferior to the performance of Exclusive Agents, and without affording them a reasonable period of time to make good on their continuing investments. Such termination was in material breach of Allstate's express and implied obligations under the R1500 contract.

920.    As a result of Allstate's breaches of its contractual obligations to the R1500 Plaintiffs, those Plaintiffs have suffered losses, including but not limited to, termination of employment, loss of investment capital, loss of income and loss of benefits.

## COUNT VI
## BREACH OF FIDUCIARY DUTY
### (On Behalf Of All Plaintiffs Against Allstate)

921.    Plaintiffs restate and reallege the allegations contained in paragraphs 1 through 920 of this Complaint as though set forth here in full.

922.    Under the employment relationship created between Plaintiffs and Allstate under the R830 and the R1500 contracts, Plaintiffs devoted the better part of their professional careers to obtaining and servicing customers on Allstate's behalf, invested substantial personal resources to create a book of business owned by Allstate, were barred from selling insurance or other products on behalf of any of Allstate's competitors, and executed a "non-compete" covenant which severely limited their ability to pursue their profession independent of Allstate.  As a result, Plaintiffs were at the mercy of Allstate in that they could not leave the service of the company without losing their investments and livelihoods.

923.    In view of the grossly inequitable relationship Allstate had foisted upon them, Plaintiffs had no choice but to repose a "special confidence" in Allstate that it would not use its superior power to exploit their vulnerability and unfairly deprive them of the value of their investments and livelihoods.  By virtue of that special confidence reposed in Allstate by

Plaintiffs, Allstate owed those Plaintiffs a fiduciary duty of good faith and fair dealing and was required to act with due regard to their interests.

924.    In terminating the employment status of each of the Plaintiffs without "good cause" and for purposes of denying them the value of their investments and livelihoods, Allstate has exploited its relationship with Plaintiffs in violation of its fiduciary duty of good faith and fair dealing.

925.    The conduct of Allstate, as set forth in this Count, is intentional, deliberate, oppressive and/or in reckless and callous disregard for the rights of Plaintiffs.

926.    As a result of Allstate's breach of its aforementioned fiduciary duties, Plaintiffs have suffered losses, including but not limited to, termination of employment, loss of investment capital, loss of income and loss of benefits.

## COUNT VII

### CUTBACK OF "BEEFED-UP" EARLY RETIREMENT BENEFITS IN VIOLATION OF 29 U.S.C. § 1054(g)(2) (On Behalf Of ERISA § 204(g)(2) Plaintiffs Against Allstate)

927.    The ERISA § 204(g)(2) Plaintiffs restate and reallege the allegations contained in paragraphs 1 to 926 of this Complaint as though set forth here in full.

928.    Under the Pension Plan (prior to the unlawful and invalid November 1991 amendments), any employee agent who completes twenty (20) years of continuous "service" with Allstate is entitled to receive "beefed-up" early retirement benefits upon reaching age 55.

929.    In purporting to adopt the November 1991 amendments, and in "readopting" such amendments in December 1994 (retroactively to November 1991), Allstate purported to phase out and ultimately eliminate these "beefed-up" early retirement benefits by December 31, 1999.

930.    By amending the Pension Plan to phase out and eliminate "beefed-up" early retirement benefits for agents who have met (after the Beef-Up Amendment) or may in the future

meet the pre-amendment eligibility requirements for early retirement, Allstate caused the Pension Plan to violate the "anti-cutback" rule embodied in 29 U.S.C. § 1054(g)(2).

## COUNT VIII

### CUTBACK OF EARLY RETIREMENT BENEFITS
### IN VIOLATION OF 29 U.S.C. § 1054(g)
### (On Behalf Of The ERISA Converted Agent Plaintiffs Against Allstate)

931.    The ERISA Converted Agent Plaintiffs restate and reallege the allegations contained in paragraphs 1 to 930 of this Complaint as though set forth here in full.

932.    Each of the ERISA Converted Agent Plaintiffs provided compensated service to Allstate as an "employee agent" under an R830 or R1500 contract prior to July 1, 2000.

933.    Upon the termination of their employment contracts as part of the Program, each of the ERISA Converted Agent Plaintiffs continued to provide compensated service to Allstate as an "exclusive agent independent contractor" pursuant to an R3001S contract.

934.    Under the Pension Plan, any employee agent who completes twenty (20) years of "service" with Allstate and who attains the age of 55 is entitled to receive early retirement benefits in the event he or she retires before reaching normal retirement age.

935.    Under Allstate's own interpretation of the Pension Plan (as well as its interpretation of the November 1991 amendments to that plan), and under section 402(e) of the Internal Revenue Code, any converted agent of Allstate who provides any kind of compensated service to Allstate following the termination of his or her employment contract with Allstate remains "in the service of Allstate" for purposes of determining eligibility for early retirement benefits.

936.    The express terms of the Pension Plan (prior to the unlawful and invalid amendments discussed in above (the "Amendments")) state that "[a]ll service" with Allstate "shall count as Credited Service."  Accordingly, under the Pension Plan, any employee agent of

Allstate who converted to Exclusive Agent, and thus continues to provide compensated "service" to the company under a contract creating an "exclusive agent independent contractor" relationship, continues to accumulate "service" under the Pension Plan for purposes of determining eligibility for early retirement benefits.

937.    Under the Amendments to the Pension Plan, Allstate purported to alter the eligibility requirements for obtaining early retirement benefits by only counting "service" that agents performed in their capacity as Allstate-classified "employees" toward the fulfillment of those requirements and excluding any "service" they provided to the company as a so-called "exclusive agent independent contractor."

938.    In imposing requirements that made it more difficult for participants to meet the eligibility requirements for obtaining early retirement benefits under the Pension Plan, the Amendments violated the "anti-cutback" rule embodied in 29 U.S.C. § 1054(g)(2).

939.    Alternatively, even if "service" provided to Allstate as an "exclusive agent independent contractor" never counted as "service" for purposes of determining eligibility for early retirement benefits under the Pension Plan, the ERISA Converted Agent Plaintiffs are not truly "independent contractors."  Since those plaintiffs began providing service to Allstate under the R3001S contract, Allstate has retained the right to control the manner and means through which they perform their jobs as "captive" agents.  Moreover, since the time they converted to the R3001S contract, Allstate has actually exercised at least as much control over the ERISA Converted Agent Plaintiffs as it did prior to the purported termination of their employment status and R830 or R1500 contracts.  Accordingly, at all pertinent times, all of the ERISA Converted Agent Plaintiffs have been "employees" of Allstate within the meaning of 29 U.S.C. § 1002(6).

940.    By amending the Pension Plan to no longer count all "service" which the ERISA Converted Agent Plaintiffs provide, for purposes of determining eligibility for early retirement,

Allstate has caused the Pension Plan to violate the "anti-cutback" rule embodied in section 204(g) of ERISA.

## COUNT IX

### BREACH OF FIDUCIARY DUTY IN VIOLATION OF 29 U.S.C. § 1104(a)
(On Behalf Of The ERISA Retired Agent Plaintiffs Against Allstate and The Administrator)

941.    The ERISA Retired Agent Plaintiffs restate and reallege the allegations contained in paragraphs 1 to 940 of this Complaint as though set forth here in full.

942.    At all pertinent times, the Administrator had the authority to determine all questions arising under the provisions of the Pension Plan, including the authority to determine the rights and eligibility of the participants and any other persons, and to remedy ambiguities, inconsistencies or omissions.   The Administrator had discretionary authority to interpret the terms of the Pension Plan and to determine eligibility for and entitlement to benefits in accordance with the terms of the Pension Plan.

943.    At all pertinent times, the Administrator was a "fiduciary" of the Pension Plan within the meaning of 29 U.S.C. § 1002(21) because it exercised discretionary authority or control over the management of the Pension Plan and/or had discretionary authority or control in the administration of the Pension Plan.

944.    At all pertinent times, Allstate was a "fiduciary" of the Pension Plan within the meaning of 29 U.S.C. § 1002(21) because it appoints and/or exercises supervision or control over the Administrator.

945.    In their respective capacities as fiduciaries of the Pension Plan, Allstate and the Administrator were obligated not to misinform plan participants concerning the availability of benefits under the Pension Plan, whether through material misrepresentations, failure to correct

misrepresentations which they knew or should have known were false and materially misleading, or through incomplete, inconsistent and contradictory disclosures.

946.    At both the time it announced and implemented the mass termination of its California "employee agents" and the time it announced and implemented its nationwide Program in November 1999, Allstate informed employee agents that it would be terminating their R830 and R1500 contracts and that it would terminate its agency relationship with them entirely unless they entered into a variant of the R3001 or R3001S contracts.

947.    At the time Allstate offered the former agent plaintiffs the "choice" of continuing to provide compensated "service" to Allstate under an R3001 or R3001S contract or of having their employment and agency relationships terminated, and with the intention of influencing that choice, Allstate and/or the Administrator represented to those ERISA Retired Agent Plaintiffs that they would be "independent contractors" under the arrangement created by the R3001 and R3001S contracts and, hence, would not be able to accumulate additional "service" for purposes of: (a) determining eligibility for early retirement benefits and "beefed-up" early retirement benefits under the Pension Plan; and (b) eligibility to receive any pension benefits to which they were not already entitled as of the date their employment contract was terminated.

948.    The representation by Allstate and/or the Administrator that former "employee agents" of Allstate who continued to provide compensated "service" to Allstate under the R3001 or R3001S contract would no longer be eligible to accumulate "service" for purposes of eligibility for early retirement benefits and "beefed-up" early retirement benefits under the Pension Plan was materially false and misleading.  Under the Pension Plan (prior to the unlawful and invalid December 1994 amendments), all "service" provided to Allstate under the R3001 contract, including service as a so-called "exclusive agent independent contractor," constitutes "service" for purposes of determining eligibility for early retirement benefits.  Alternatively,

even if only service as an "employee" counts as "service" under the Pension Plan, the ERISA Converted Agent Plaintiffs are and were "employees" of Allstate within the meaning of 29 U.S.C. § 1002(6) and, under the Pension Plan (exclusive of the unlawful and invalid Amendments), service provided to Allstate by an "employee" within the meaning 29 U.S.C. § 1002(6) constitutes "service" for purposes of determining eligibility for early retirement benefits and accruing additional pension benefits.

949.    At the time Allstate and/or the Administrator represented that former "employee agents" who continued to serve Allstate under the R3001 or R3001S contracts would no longer be able to accumulate service toward eligibility for early retirement benefits or accrue additional benefits under the Pension Plan, Allstate and/or the Administrator knew or should have known of the falsity of that representation.

950.    In the alternative, the Administrator was aware of Allstate's representation that employee agents who converted and continued to provide compensated service to Allstate under the R3001 or R3001S contracts would no longer be able to accumulate additional "service" for purposes of eligibility for early retirement benefits or otherwise accrue additional benefits under the Pension Plan, and knew or should have known of the falsity of that representation.

951.    Though the Administrator had a duty to correct the aforementioned misrepresentation, the Administrator failed to do so and, instead, took actions that were consistent with Allstate's representation that the agents were no longer able to accumulate additional "service" for purposes of eligibility for early retirement benefits under the Pension Plan or otherwise to accrue additional pension benefits.

952.    In foreseeable reliance upon the aforementioned affirmative misrepresentation by Allstate and/or the Administrator and upon the aforementioned misrepresentation by conduct and omission of the Administrator, the ERISA Retired Agent Plaintiff retired from the service of

Allstate.  Had the ERISA Retired Agent Plaintiff known that any service they provided to Allstate would count for purposes of determining eligibility for early retirement benefits, they would not have ceased providing service to Allstate.

953.    In making material misrepresentations relating to the availability of benefits under the Pension Plan and inducing the ERISA Retired Agent Plaintiff to rely on those misrepresentations, Allstate and the Administrator have violated their respective fiduciary obligations under 29 U.S.C. § 1104(a).

954.    As a result of the unlawful conduct of Allstate and the Administrator as set forth in this Count, the ERISA Retired Agent Plaintiff have suffered losses, including but not limited to, termination of their employment status, loss of income and loss of benefits.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectively pray:

A.    That a declaratory judgment be issued declaring that the Release is invalid and/or unenforceable under the ADEA, ERISA and/or the common law, pursuant to 29 U.S.C. §§ 626(f)(1) and 1132(a)(3) and 28 U.S.C. §§ 2201 and 2202, and therefore does not bar Plaintiffs from pursuing the substantive claims asserted on their behalf in *Romero* as putative class or collective action members, or alternatively asserted herein;

B.    That the Court treat Plaintiffs as members of any class or collective action certified in the *Romero* cases as to the claims in Counts II through IX once the Release is declared invalid;

C.    That all equitable relief as may be appropriate be issued, including a permanent injunction compelling Allstate to (i) disgorge all savings realized and/or revenue received as a result of the Program, (ii) reform the terms of the Plan to provide

COMPLAINT                                    - 192 -

benefits to which the Plaintiffs should be entitled, and/or (iii) offer all named plaintiffs, other than those solely suing as personal representatives for a deceased former agent's Estate, the opportunity to be reinstated under the same terms and conditions which existed prior to the termination of their employment status and restoration to participant status under the Plans, pursuant to 29 U.S.C. §§ 626(b) and 1132(a)(3).

D.   That judgment be entered in favor of Plaintiffs and against Allstate and Liddy restoring to them all benefits and other forms of compensation lost between the dates of the termination of their employment and the date of judgment, together with interest or an appropriate inflation factor, pursuant to 29 U.S.C. § 1132(a)(3);

E.   That judgment be entered in favor of Plaintiffs and against Allstate for lost benefits, future benefits, back pay (including interest or an appropriate inflation factor), front pay, lost investment capital, and liquidated damages, pursuant to 29 U.S.C. § 626(b);

F.   That judgment be entered in favor of Plaintiffs and against Allstate for all direct, incidental, and consequential damages arising out of Allstate's breaches of contract;

G.   That judgment be entered in favor of Plaintiffs and against Allstate for all direct, incidental, and consequential damages, including non-financial injuries, arising out of Allstate's breaches of fiduciary duty, and for punitive damages in amounts to be determined at trial;

H.   That a constructive trust or equitable lien in restitution be imposed over Allstate's assets sufficient to cover all losses suffered by Plaintiffs as a result of the violations of ERISA;

COMPLAINT

I.    That the practices of Allstate and the Administrator complained of in Counts VII-IX herein be determined and adjudged to be in violation of the rights of Plaintiffs under ERISA, pursuant to 29 U.S.C. § 1132(a)(3);

J.    That the Court issue a permanent injunction under ERISA, pursuant to 29 U.S.C. § 1132(a)(3) and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, compelling Allstate and the Administrator to:

(1)    count any periods of service that converted and retired agents have provided to Allstate under the R3001 contract as "service" for purposes of determining their eligibility for early retirement benefits; and

(2)    repeal or set aside the November 1991 and December 1994 plan amendments relating to early retirement and the "beef-up" retroactively to the dates those amendments were adopted, as a remedy for the statutory violations described in COUNTS VII and VIII;

K.    That the Court enter judgment in favor of Plaintiffs against:

(1)    the Pension Plan and the Administrator pursuant to 29 U.S.C. § 1132(a)(3) for "make whole" or other equitable relief; and

(2)    Allstate pursuant to 29 U.S.C. § 1132(a)(3) for "make whole" or other equitable relief, as a remedy for the violations of fiduciary obligations described in COUNT IX.

L.    That the Court enter judgment in favor of Plaintiffs against the Pension Plan pursuant to 29 U.S.C. § 1132(a)(1)(B) after the Court has provided the relief set forth in paragraph I above.

M.    That Plaintiffs be awarded such other and further relief as may be found just and appropriate;

COMPLAINT                                    - 194 -

N.      That Plaintiffs be granted their attorneys' fees, experts' fees and the costs and

expenses of this litigation, pursuant to applicable law; and

O.      That the Court retain jurisdiction over Allstate, the Pension Plan and the

Administrator until such time as it is satisfied that the practices complained of are

remedied and are determined to be in full compliance with the law.

### <u>JURY TRIAL DEMANDED</u>

Plaintiffs request a jury trial on all questions of fact raised by this Complaint, as well as

on all claims so triable.

Respectfully submitted,

Michael D. Lieder (*admitted pro hac*)          <u>/s/ Coleen M. Meehan</u>
SPRENGER & LANG, PLLC                            Coleen M. Meehan (ID No. 39765)
1400 Eye Street, N.W.                            John V. Gorman (ID No. 80631)
Washington D.C.  20005                           Brian M. Ercole (ID No. 91591)
Telephone:  (202) 265-8010                       K. Catherine Roney (ID No. 94312)
Facsimile:  (202) 332-6652                       Marisel Acosta (ID No. 89696)
                                                 Jacqueline C. Gorbey (ID No. 312041)
                                                 MORGAN, LEWIS & BOCKIUS LLP
                                                 1701 Market Street
                                                 Philadelphia, PA  19103
                                                 Telephone: (215) 963-5000
                                                 Facsimile:  (215) 963-5001

Paul Anton Zevnik (ID No. 140986)                Mary Ellen Signorille (admitted *pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP                      AARP Foundation Litigation
1111 Pennsylvania Ave., N.W.                     601 E Street, N.W.
Washington, D.C.  20004                          Washington, D.C.  20049
Telephone:  (202) 739-3000                       Telephone:  (202) 434-2060
Facsimile:  (202) 739-3001                       Facsimile:  (202) 824-0955

*Counsel for Plaintiffs*

COMPLAINT                                - 195 -